Roksana D. Moradi-Brovia (Bar No. 266572)
Matthew D. Resnik (Bar No. 182562)
**RHM LAW LLP**
17609 Ventura Blvd., Suite 314
Encino, CA 91316
**Telephone:** (818) 285-0100
**Facsimile:** (818) 855-7013
roksana@RHMFirm.com
matt@RHMFirm.com

*Proposed Attorneys for Debtor*
Alireza Moheb

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>ALIREZA MOHEB,<br><br>Debtor. | Case No.: 24-40713-CN 11<br><br>Chapter 11<br><br>Date: July 12, 2024<br>Time: 10:00 a.m.<br>Place: Courtroom 215<br>　　　1300 Clay Street, Suite 300<br>　　　Oakland, CA 94612<br><br>Judge: Hon. Charles Novack |

## OPPOSITION TO UNION STREET HOLDINGS, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Alireza Moheb, the "Debtor" and "Debtor-in-Possession" ("DIP") in the above-stated case, hereby opposes the *Motion for Relief from the Automatic Stay* filed by Union Street Holdings, LLC ("Union Street") on June 28, 2024 (the "Motion for Relief") [Docket No. 35], as follows.

///

///

///

I. *The automatic stay pursuant to 11 U.S.C. §362(a) was in effect prior to the Superior Court entering the Order Granting Plaintiff Union Street Holdings, LLC's Motion for Summary Judgment.*

Pursuant to 11 U.S.C. §362(a)(a)(3), the filing of a petition under 11 U.S.C. §301 operates as a stay to all entities to obtain possession of property of the estate.

Union Street asserts that, "As Union Street's counsel received a copy of the First UD Order from the Alameda Court at 10:40 a.m. by email, the First UD Order had been entered sometime in the morning of May 14, 2024." *See* Motion for Relief, Memorandum of Points and Authorities in Support of Union Street Holdings, LLC's Motion for Relief from the Automatic Stay, pg. 15, Docket No. 35-1, ¶II.B.7, lines 17-19. This pertains to the unlawful detainer action, *Union Street Holdings, LLC v. Media DDS, LLC, et al.*, Case No. 24CV067837 (the "UD Action").

The "First UD Order" is attached to the *Request for Judicial Notice* as Exhibit 40 [Docket No. 35-6, pgs. 300-304]. The "First UD Order" is titled as "ORDER re: Hearing on Motion for Summary Judgment filed by UNION STREET HOLDINGS, LLC, a Washington limited liability company (Plaintiff) filed by UNION STREET HOLDINGS, LLC, a Washington limited liability company (Plaintiff) on 05/03/2024." *See* Request for Judicial Notice, Docket No. 35-6, Exhibit 40, pgs. 300-303. However, the "First UD Order" does not appear as what Union Street purports it to be as it looks like a tentative ruling and/or a finding of facts and conclusions of law in support of the order.

Notwithstanding this "First UD Order," the Superior Court thereafter entered another order, *Order Granting Plaintiff Union Street Holdings, LLC's Motion for Summary Judgment* on May 15, 2024. *See* Request for Judicial Notice, Docket No. 35-6, Exhibit 42, pgs. 308-311.

Setting aside the duplicative nature of entering two orders on the same matter, there are entirely different purposes for each "order." The "First UD Order" explains the pertinent facts and the legal authority that support the decision to grant Union Street's

motion for summary judgment, i.e., a finding of facts and conclusions of law in support of the order. Pursuant to the *Declaration of Rachel Sanders*, the "First UD Order" was emailed to the parties the morning of May 14, 2024 (prior to the filing of the bankruptcy case), but the declarant is silent as to whether it was concurrently entered on the docket as well. *See* Declaration of Rachel Sanders, Docket No. 35-3, pg. 2, ¶4, lines 16-22. On the other hand, the "Second UD Order" sets forth the relief provided to Union Street as the prevailing party, i.e., a final order. The "Second UD Order" appears to have been entered on the docket on May 15, 2024 (after the filing of the bankruptcy case). Union Street did not attach the docket from the unlawful detainer case.

Further, Union Street submits multiple declarations in support of the Motion for Relief, including three from Union Street's counsel. However, those declarants are silent as to the procedures of the Superior Court judge for entering orders. Specifically, Union Street provides no evidence that the "First UD Order" is actually the final order. Again, the "First UD Order" shows all the hallmarks of a finding of facts and conclusions of law in support of the order.

This distinction is critical due to the timing as the "First UD Order" was emailed to the parties prior to the Debtor filing his bankruptcy and the "Second UD Order" appeared to be entered on the unlawful detainer docket the day following the filing of the case. In other words, the "Second UD Order" was postpetition.

Therefore, the Debtor believes that the "Second UD Order" was void, or at a minimum, the Debtor requests an evidentiary hearing to determine whether the automatic stay was in effect when the Superior Court entered a final order in the unlawful detainer action.

///
///
///
///

RHM LAW LLP

Case: 24-40713  Doc# 42  Filed: 07/11/24  Entered: 07/11/24 21:22:25  Page 3 of 10

## II. The Debtor has a possessory interest in the real property located at 1716 Broadway, Oakland, CA 94612.

Union Street asserts that the Debtor has no legal or equitable interest in the real property located at 1716 Broadway, Oakland, CA 94612 (the "Property"). Specifically, the Debtor never held actual title to the Property prepetition and he never asserted a right to possess the Property. *See* Motion for Relief, Memorandum of Points and Authorities in Support of Union Street Holdings, LLC's Motion for Relief from the Automatic Stay, pg. 19, Docket No. 35-1, ¶III.B.1, lines 8-13.

Pursuant to 11 U.S.C. §541(a)(1), property of the estate consists of all legal or equitable interests of the debtor in property at the petition date.

Section 541 is broadly construed to include all property interests, whether reachable by state-law creditors or not, and whether vested or contingent. *United States v. Rauer*, 963 F.2d 1322, 1337 (10th Cir. 1992); *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) (virtually all property of the debtor becomes property of the estate; in fact, every conceivable interest of debtor, including future, non-possessory, contingent, speculative, and derivative, is within the scope of Section 541); *see also generally United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 and fn. 8 and 9. Moreover, the Supreme Court has determined that property of the estate includes property in which the debtor had no possessory rights at the time the bankruptcy petition was filed. *United States v. Whiting Pools, Inc.*, 462 U.S. at 205.

"We look to state law to determine property interests in bankruptcy proceedings." *See Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

Pursuant to Cal. Civ. Code §1006, "Occupancy for any period confers a title sufficient against all except the state and those who have title by prescription, accession, transfer, will, or succession…."

Under California law, the entry of judgment *and* a writ of possession following unlawful detainer proceedings extinguishes all other legal and equitable possessory

interests in the real property. *Eden Place, LLC v. Perl* (*In re Perl*), 811 F.3d 1120, 1127-28 (9th Cir. 2016); *see Vella v. Hudgins*, 20 Cal.3d 251, 142 Cal.Rptr. 414, 572 P.2d 28, 30 (1977).

As noted by the Ninth Circuit, "the unlawful detainer proceedings under § 1161a are expressly designed to determine who has superior title to the property, including the right to immediate possession. *See Vella*, 142 Cal.Rptr. 414, 572 P.2d at 30. As a result, the prevailing party in the unlawful detainer proceeding under § 1161a has 'better title' than the evicted resident. *In re Butler*, 271 B.R. at 871. The conclusion that the occupying resident retains an equitable possessory interest is inconsistent with § 1161a, <u>which contemplates a final and binding adjudication of legal title and rights of immediate possession</u>. *See Mortg. Guarantee Co.*, 50 P.2d at 836; *see also Vella*, 142 Cal.Rptr. 414, 572 P.2d at 30." (Emphasis added). *In re Perl*, 811 F.3d at 1130.

Here, the Debtor has an equitable possessory interest in the Property based on the fact that he is occupying Property at the petition date as the successor-in-interest to Media DDS, LLC ("Media DDS") pursuant to an Asset Purchase Agreement entered between the sellers, Moheb DMD, Inc., Media DDS, LLC, and Doctor Realty LLC and the buyer, the Debtor, entered into on May 1, 2024. Under the agreement, the Debtor assumed all the assets and liabilities associated with the Property. *See* Declaration of Matthew D. Pham, Docket No. 35-5, Exhibit 5, pgs. 5-14. Further, the Debtor was the managing and sole member of Media DDS. The Debtor discloses his interest in Media DDS and the Property in Schedule A/B, as follows:

> Media DDS, LLC - entity was created on August 19, 2010 as a real estate investment company. Standalone building at 1716 Broadway, Oakland, CA 94612 was forclosed [sic] on November 29, 2023 by Homestreet Bank. Office building at 2501 Nut Tree Road, Vacaville, CA 95687 was forclosed [sic] on June 7, 2022 by Homestreet Bank. First Republic checking account has approx. $49,912 and these funds will be deposited into the DIP general account once opened; entity has no other assets. Media DDS, LLC transferred its assets and assigned its debts to Debtor prepetition, in May of 2024.

*See* Schedule A/B. Docket No. 31, pg. 8, Part 4, #19.

As shown in the previous section, whether Union Street obtained a final order prepetition is ambiguous, but it makes no assertions that it obtained a writ of possession to remove the Debtor from the Property. The Ninth Circuit requires both an entry of a judgment and a writ of possession following an unlawful detainer to extinguish the Debtor's interest in the Property. *See In re Perl*, 811 F.3d at 1127-28.

Therefore, the Debtor believes that it has an interest in the Property, or at a minimum, the Debtor requests an evidentiary hearing to determine what interest the Debtor has in the Property at the petition date.

### III. The Debtor filed the case in good faith.

Union Street asserts that the Debtor filed his case in bad faith because Media DDS previously filed a Chapter 11 bankruptcy that was dismissed and that the Asset Purchase Agreement was really a scheme to delay or hinder its ability to take possession of the Property. *See* Motion for Relief, Memorandum of Points and Authorities in Support of Union Street Holdings, LLC's Motion for Relief from the Automatic Stay, pg. 20, Docket No. 35-1, ¶III.B.2, lines 11-17.

In the Ninth Circuit, a bankruptcy filing will only be deemed to be lacking in "good faith" where the evidence establishes that the debtor's actions constitute a "clear abuse of the bankruptcy process." *Idaho Dep't of Lands v. Arnold* (*In re Arnold*), 806 F.2d 937, 939 (9th Cir. 1986) (emphasis added); *see In re Yanik*, 8 F.3d 34 (9th Cir. 1993). In ruling upon a good faith challenge, the courts weigh "an amalgam of factors", and "no single fact or factor will be dispositive." *In re Arnold*, 806 F.2d at 939.

"The term 'good faith' is somewhat misleading. Though it suggests that the debtor's subjective intent is determinative, this is not the case. Instead, the 'good faith' filing requirement encompasses several, distinct equitable limitations that courts have placed on Chapter 11 filings. *See N.R. Guaranteed*, 112 B.R. at 271-72. Courts have implied such limitations to deter filings that seek to achieve objectives outside the legitimate scope of

the bankruptcy laws. *See Furness v. Lilienfield*, 35 B.R. 1006, 1011 (D.Md. 1983); Lawrence Ponoroff F. Stephen Knippenberg, *The Implied Good Faith Filing Requirement: Sentinel of an Evolving Bankruptcy Policy*, 85 Nw.U.L.Rev. 919, 946-47 (1991)." *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994).

The good faith inquiry "is essentially directed to two questions: (1) whether the debtor is trying to abuse the bankruptcy process and invoke the automatic stay for improper purposes; and (2) whether the debtor is really in need of reorganization." *In re Marshall*, 298 B.R. 670, 680-81 (Bankr. C.D. Cal. 2003).

The Bankruptcy Appellate Panel for the Ninth Circuit stated in *In re Thirtieth Place, Inc.*, 30 B.R. 503, 505 (9th Cir. BAP 1983) (quoting *In re Loeb Apartments, Inc.*, 89 F.2d 461, 463 (7th Cir, 1937)):

> If it is obvious that a debtor is attempting unreasonably to deter and harass creditors in their bona fide efforts to realize upon their securities, good faith does not exist. But if it is apparent that the purpose is not to delay or defeat creditors but rather to put an end to long delays, administration expenses ... to mortgage foreclosures, and to invoke the operation of the [bankruptcy law] in the spirit indicated by Congress in the legislation, namely, to attempt to effect a speedy efficient reorganization, on a feasible basis ... good faith cannot be denied.

Here, the Debtor has secured debt of approximately $3,029,975.97, priority tax debt of approximately $14,811.83, and general unsecured debt of approximately $1,800,121.49. *See* Schedule D, E/F, Docket No. 34, pgs. 2-20. Not only did he assume the liabilities of his entities, Moheb DMD, Inc., Media DDS, LLC, and Doctor Realty LLC, but he is also personally liable for a large amount of the secured debt incurred by those entities. *See* Schedule D, Docket No. 34, pg. 4, #2.4, pg. 8, #2.12, #2.13, #2.14.

The Court will have complete disclosure of all of the Debtor's assets and liabilities without questioning the transparency of his holdings in third party companies. This case was filed so that the Debtor could reorganize his financial affairs and <u>maximize</u> the value of his total assets for the benefit of the estate. As such, this is a complete reorganization of the Debtor and his financial affairs consistent with the spirit and purpose of the Bankruptcy Code.

Union Street makes multiple accusations against the Debtor for alleged bad faith conduct towards it, but it omits any discussion as to the Debtor attempting to abuse the bankruptcy process and whether the Debtor needs to reorganize. Nonetheless, the Debtor notes that Media DDS's bankruptcy case was filed on March 8, 2022 and dismissed on June 1, 2022. *See* Request for Judicial Notice, Docket No. 35-6, Exhibit 25, pg. 149. Union Street does not assert that there were any other bankruptcy filings associated with the Property, except for the Media DDS bankruptcy case and this current case, which were essentially two years apart.

The Debtor has filed his schedules and statement of financial affairs, which disclosed all his assets, liabilities, and required financial information. *See* Docket Nos. 31 and 34. The Debtor has submitted documents to the U.S. Trustee pursuant to its guidelines and he believes he is in substantial compliance at this time (except for filing the May Monthly Operating Report). The Debtor filed a timely status report [Docket Nos. 22 and 23]. The Debtor has obtained consent to use cash collateral from the lienholders on two of his rental properties[1] and is in the process of finalizing motions to approve stipulations to use cash collateral; the motions will be filed shortly.

Lastly, the Debtor intends to file a Chapter 11 plan of reorganization within a reasonable period. As stated previously, the Debtor has a significant amount of debt. Thus, there is nothing in the record that supports the assertion that the Debtor filed the case in bad faith.

IV. *The annulment of the stay is inappropriate.*

In the Ninth Circuit, violations of the automatic stay are void. *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992).

---

[1] 155 Sharene Lane, #116, Walnut Creek, CA 94596, and 7007 Arthur Street, Oakland, CA 94605.

| | |
|---|---|
| 1 | Union Street is also seeking to annul the stay. *See* Motion for Relief, Memorandum |
| 2 | of Points and Authorities in Support of Union Street Holdings, LLC's Motion for Relief |
| 3 | from the Automatic Stay, pg. 21, Docket No. 35-1, ¶III.C., line 10. |
| 4 | Union Streets states that, "[t]he Debtor's lack of a legitimate interest in the Property |
| 5 | alone sufficiently warrants annulling the stay, but the conduct of the parties also |
| 6 | establishes that retroactive annulment is appropriate here." *See* Motion for Relief, |
| 7 | Memorandum of Points and Authorities in Support of Union Street Holdings, LLC's |
| 8 | Motion for Relief from the Automatic Stay, pg. 22, Docket No. 35-1, ¶III.C., line 1-3. |
| 9 | However, the stay either applies or it does not apply, and there remain factual issues |
| 10 | that are genuinely in dispute. Specifically, whether the Superior Court entered an order |
| 11 | prepetition and/or whether the Debtor has an interest in the Property. |
| 12 | As such, the Court must determine whether the Debtor has an interest in the |
| 13 | Property first before it can decide whether to annul the stay. Once these issues have been |
| 14 | settled, the parties should have an opportunity to brief whether annulling the stay is |
| 15 | appropriate. |

V.   *In rem relief is inappropriate.*

Union Street is also seeking in rem relief under 11 U.S.C. §105(a). *See* Motion for Relief, Memorandum of Points and Authorities in Support of Union Street Holdings, LLC's Motion for Relief from the Automatic Stay, pg. 22, Docket No. 35-1, ¶III.D., line 17. However, the cases that Union Street have cited in support may no longer be good law pursuant to *Law v. Siegel*, 571 U.S. 415 (2014).

"We have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code." *Law v. Siegel*, 571 U.S. at 421 (2014).

Here, the automatic stay only applies if the Debtor's interest in the Property is property of the estate. If there is no interest, there is no stay, and Union Street is free to

remove the Debtor from the Property and take possession. As such, the Court must determine whether the Debtor has an interest in the Property first before it can decide whether to entertain in rem relief. Once these issues have been settled, the parties should have an opportunity to brief whether in rem relief is appropriate.

Nonetheless, Union Street gives less than compelling reasons why in rem relief is appropriate as the "extraordinary circumstances" appear to be further inconvenience to Union Street ("Given the Debtor's unwillingness to acknowledge defeat and his continuing efforts to delay or hinder HomeStreet and Union Street, it is unclear when Union Street can finally take possession of the Property.") at the expense of the remaining creditor body and estate. *See* Motion for Relief, Memorandum of Points and Authorities in Support of Union Street Holdings, LLC's Motion for Relief from the Automatic Stay, pg. 23, Docket No. 35-1, ¶III.D., lines 18-20.

Again, Union Street does not assert that there were any other bankruptcy filings associated with the Property, except for the Media DDS bankruptcy case and this current case, which were essentially two years apart.

WHEREFORE, the Debtor respectfully requests that the Court deny the Motion for Relief, or in the alternative, set an evidentiary hearing for the issues raised herein, and granting such other and further relief as is just and proper under the circumstances.

Dated: July 11, 2024      **RHM LAW LLP**

**By:** /s/ Roksana D. Moradi-Brovia
**Roksana D. Moradi-Brovia**
**Matthew D. Resnik**
*Proposed Attorneys for Debtor*
Alireza Moheb