CHRISTOPHER D. SULLIVAN (148083)
ROXANNE BAHADURJI (290117)
**SULLIVAN PRATT LLP**
601 Montgomery Street, Suite 525
San Francisco, CA 94111
Phone: (415) 691-4518
Email: csullivan@sullivanblackburn.com
       rbahadurji@sullivanblackburn.com

Attorneys for Debtor and Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>ALIREZA MOHEB<br><br>    Debtor and Debtor-in-Possession. | Case No.: 24-bk-40713-CN<br><br>Chapter 11<br><br>**STATUS CONFERENCE REPORT**<br><br>Date: July 16, 2025<br>Time: 11:00 a.m. |

Alireza Moheb, Debtor-in-Possession herein ("Debtor") submits this Status Conference Report:

1. The within case commenced by filing a voluntary chapter 11 petition on May 14, 2024. The Debtor is in possession of the estate.

2. Present bankruptcy counsel came into this matter at a time of stagnation, largely because of a breakdown in the attorney-client relationship between the Debtor and his former bankruptcy counsel, RHM Law, LLP. It was the Debtor's hope that in filing this bankruptcy, his disputes with HomeStreet Bank, N.A. ("HomeStreet") would be handled by competent counsel and finally resolved. However, no movement was made with respect to HomeStreet's claim. The Debtor is

-1-

cognizant of the fact that one of the largest roadblocks in confirming a plan is HomeStreet's Proof of Claim in the amount of $1,393,966.42 stemming from a judgment that was entered because of the Debtor's former state court attorney's admitted failure to oppose a summary judgment motion due to personal mental health issues.

3. The Debtor believes that the estate has valid claims and defenses against HomeStreet as well as malpractice claims against his former attorneys. Asserting these claims and defenses represents a critical path to offsetting claims against the estate, recovering money for the estate, and consequently achieving reorganization. As is detailed further below, the Debtor is in the process of filing an application to employ special litigation counsel and to implement the litigation strategy.

**Background.**

4. Pre-petition, the Debtor was the founder of three businesses, Media DDS, LLC, Doctor Realty, and Moheb DMD, Inc. Media DDS, LLC and Doctor Realty, LLC were created as real estate investment companies and Moheb DMD was created to operate a dental office. The entities combined had a portfolio of seven loans with Silvergate Bank.

5. The Debtor's financial troubles began when HomeStreet purchased Silvergate Bank's health care division loans in 2019, and the seven loans were transferred to HomeStreet. Around October 2019, without warning or explanation, HomeStreet moved the portfolio of loans to distressed assets or its Special Assets Group, even though the loans were current. On October 18, 2019, the Special Assets Group of HomeStreet Bank made its first contact with the Debtor, claiming that internal loan folders were incomplete and that newly conducted DSCR calculations showed insufficient coverage for the periods ending December 2018 and March 2019. This was a reversal from communication between the Bank and the Debtor's CPA just three months earlier.

6. Despite being current on the loans, in November 2019, HomeStreet served the Debtor with what the Debtor contends was a bad faith notice of default. The Bank cited alleged reporting violations and used this notice to pressure the Debtor into cross-collateralizing all holdings across the three entities and into entering into a loan modification agreement in January

2020, extracting a new junior deed of trust (one of the Debtor's key assets) in its favor. The Debtor contends that HomeStreet actively solicited and pressured the Debtor into this arrangement. The omnibus loan arrangement cross-collateralized previously segregated loan obligations, creating a cascading risk to the Debtor and the borrowing entities.

7. Four months after the loan modification, in May 2020 – two months after California declared a state of emergency due to the COVID 19 pandemic – HomeStreet asserted defaults under the loan arrangement, for one month of missed payments on certain of the loans. On May 27, 2020, the Debtor transferred the past due monthly payments to HomeStreet, but HomeStreet declined to accept the money, asserting that the payments were insufficient to reinstate the loans as by this point HomeStreet had accelerated the loans.

8. The Debtor has uncovered substantially more facts that show aggressive and improper lending behavior by HomeStreet towards him and his entities. The Debtor and proposed special litigation counsel contend that this was a loan to own scheme, and the application to employ special litigation counsel which will be filed shortly contains more facts in support of this assertion.

9. On June 24, 2020, HomeStreet initiated an action against Media DDS, Moheb DMD, and the Debtor in the Superior Court of California, County of Alameda, *HomeStreet Bank v. Moheb DMD, Inc., et. al*. Case No. RG20066154 ("Alameda Litigation").

10. On March 8, 2022, Media DDS filed a chapter 11 petition in the Bankruptcy Court for the Northern District of California. Media DDS was represented by RHM Law. The Debtor was referred to RHM Law by Richard L. Antognini ("Mr. Antognini"), the attorney representing the Debtor and his business entities in the Alameda Litigation and various state court proceedings that the entities had brought against HomeStreet. The evidence demonstrates that Mr. Antognini advised the Debtor to file bankruptcy on behalf of Media DDS to stop a foreclosure initiated by HomeStreet scheduled for March 9, 2022, and to dismiss the actions filed against HomeStreet in various state courts. Little analysis was conducted by either Mr. Antognini or RHM Law on the merits or drawbacks of filing bankruptcy and dismissing the state court actions. Within three

months that bankruptcy was dismissed. The Debtor contends that not knowing the ins and outs of bankruptcy, the filing of the Media DDS's bankruptcy was ill advised.

11. On July 22, 2022, HomeStreet moved for summary judgment. The summary judgment hearing was set for October 7, 2022, requiring any opposition to be filed by September 23, 2022. Mr. Antognini did not file an opposition to the summary judgment motion. Instead at 1:00 a.m. on the day of the summary judgment hearing, he filed a request for a two-week continuance, stating that he was unable to file an opposition because of a medical issue that prevented him from working for the last month. The court did not continue the hearing and the October 7, 2022, hearing was held. The court's minutes reflect that the "unopposed Motion for Summary Judgment was granted" and that the "facts" were "undisputed[.]" The court "construe[d] Defendants' failure to oppose this motion as conceding the validity of the arguments and the evidence presented therein."

12. As a result of Mr. Antognini's failure to file a timely opposition, or any opposition for that matter, on December 20, 2022, judgment was entered against the Debtor for $3,069,563.28. The matter was never heard on the merits, and the judgment remains unchallenged due to Mr. Antognini's absolute dereliction of duty.

13. Six months after judgment was entered against the Debtor, Mr. Antognini filed a motion to vacate the judgment. In support of that motion, Mr. Antognini submitted a declaration in which he admitted that the failure to file an opposition was purely his fault. He stated: "[b]etween my severe depression and long-COVID, I could not work from July 1 to early October, 2022. As a result, I could not finish the opposition to the summary judgment motion." Mr. Antognini further declared that: "I have taken several medications to treat depression and anxiety for several years… [b]eginning in July 2022, however, I had severe reactions to the combination of medications, which caused symptoms from extreme sleep loss to depression…But because I experienced severe symptoms, I could not work, let alone on opposition to the Homestreet motion for summary judgment." He continued: "[m]y depression did not lift until early October, shortly before the hearing on the summary judgment motion."

14. The Debtor asserts that he and Mr. Antognini had conversations prior to the summary judgment opposition due date, and Mr. Antognini reassured him that he was prepared to oppose it. However, Mr. Antognini did not oppose the motion, and the Debtor was left with judgment against him for more than $3 million. The Debtor contends that Mr. Antognini did not inform him of the judgment, and he only found out about it in November 2023. Then Mr. Antognini advised the Debtor that personal bankruptcy was his only option.

15. Mr. Antognini appealed the judgment in the Alameda Litigation. However, after five extensions he failed to file an opening brief on behalf of the Debtor.

**Estate Claims & Application to Employ Special Litigation Counsel.**

16. The Debtor intends to shortly file the Application to Employ Bovino & Associates, PC as Special Litigation Counsel. The Debtor seeks to employ Bovino & Associates, P.C. ("Bovino Law") with respect to two areas of concern: claims against HomeStreet and malpractice claims against the Debtor's former attorneys.

17. With respect to HomeStreet Bank, Bovino Law has identified evidence that the Bank exercised foreclosure rights based on a technical default tied to a disputed junior deed provision. The Debtor with Bovino Law's assistance believes there is a strong and good faith basis to assert claims for wrongful foreclosure, bad faith interference, and unfair business practices. Bovino Law also believes that there are good grounds to set aside HomeStreet's judgment. These claims would offset HomeStreet's claim against the estate and generate recoveries for the estate.

18. With respect to claims against prior counsel, the record evidences critical failures by Mr. Antognini. Mr. Antognini's push for Media DDS to file for bankruptcy without any analysis, his failure to oppose the summary judgment motion, his delay in bringing the motion to vacate the judgment, and his inadequate handling of the appeal, all evidence falling below the required standard of care. The Debtor contend that he was clearly damaged by Mr. Antognini's conduct.

19. The Debtor will also investigate potential claims against RHM Law. It is notable that RHM Law served as bankruptcy counsel both in the Media DDS bankruptcy and in this

bankruptcy. RHM Law was aware of Mr. Antognini's failings. For instance, in a status conference statement filed in September 2024, RHM Law notes that the Debtor's appeal of the HomeStreet judgment was dismissed because of Mr. Antognini's failure to file an opening brief due to a calendaring error. Nevertheless, RHM discussed retaining Mr. Antognini in this bankruptcy with the Debtor; never advising him that the estate has claims against Mr. Antognini that could lead to meaningful recovery.

20. These claims are critical to the prospect of offsetting claims against the estate and recovering money for the estate and making payment to unsecured creditors.

**SBA Non-Dischargeability Adversary Proceeding.**

21. In February 2025, the U.S. Small Business Administration ("SBA") filed a complaint against the Debtor alleging that two loans it provided to Moheb DMD and Media DDS guaranteed by the Debtor are non-dischargeable.

22. On June 10, 2025, the Debtor filed an answer to the complaint.

23. On July 1, 2025, counsel for the parties held a discovery conference. At the discovery conference, the parties discussed participating in a mediation and even exchanged the name of a particular mediator that both parties are amenable to. While the Debtor believes that he has valid defenses to the SBA's claims against him, he is hopeful that the parties can come to a resolution.

24. The parties have exchanged initial disclosures. A scheduling conference is scheduled for July 25, 2025.

**Properties and Secured Creditors.**

25. The Debtor owns the following properties:

<u>831 Alcanes Road, Lafayette, CA.</u> (Residence)

Estimated FMV: $2,200,000 to $2,400,000

Liens:
- US Bank/Select Portfolio - $843,397 (POC No. 13)
- HomeStreet judgment lien (cross collateralized with the Oakland property and the Walnut Creek property below) - $1,393,966.42 (POC No. 12)

<u>155 Sharene Lane # 116, Walnut Creek, CA 94596</u>

Listing Price: $425,000

- US Bank/PNC - $126,000 (POC No. 4)
- HomeStreet judgment lien - 1,393,966.42 (POC No. 12)
- Condo arrears - $10,447.29

<u>7007 Arthur Street, Oakland, CA 94605</u>

Estimated FMV: $593,000

- Franklin Funding Corp: $250,000
- HomeStreet judgment lien - 1,393,966.42 (POC No. 12)

<u>7157 E. Rancho Vista Drive # 1004, Scottsdale, AZ 85251</u>

Listing Price: $775,000

- Nationstar - $310,416.13 (POC No. 10)
- HOA arrears - $2,261.03

<u>362 Richardson Way, Mill Valley, CA 94941</u>

Listing Price: $1,250,000

The Debtor has 50% interest with the Moheb Family Trust. He is on title only, not on the loan to Chase Bank that secures the property.

26. On April 21, 2025, the Court entered orders authorizing the Debtors to employ three real estate brokers and to enter into applicable listing agreements. The Debtor will accelerate his work with the brokers to reach sale agreements.

27. The Debtor is current on all payments to the secured creditors.

**<u>Monthly Operating Reports.</u>**

28. The Debtor is current on all monthly operating reports.

**<u>Path forward.</u>**

29. The Debtor is cognizant of the fact that this bankruptcy has been pending for little more than a year. The Debtor's proposed counsel is also aware of the need to move this case forward. One of the largest roadblocks is the HomeStreet claim, on which previous bankruptcy counsel

-7-

Case: 24-40713    Doc# 138    Filed: 07/14/25    Entered: 07/14/25 21:26:36    Page 7 of 8

took no action. Debtor's employment of special litigation counsel will move the ball forward with respect to disputing HomeStreet's Proof of Claim and asserting Debtor's claims against the Bank. Cognizant that the Debtor's dispute with HomeStreet has spanned several years, Debtor will engage with HomeStreet's counsel to arrange a mediation process. Another roadblock is the SBA action, which progress has already been made on. The Debtor's bankruptcy counsel will continue to engage with counsel for the SBA to schedule the mediation.

Dated: July 14, 2025  SULLIVAN PRATT LLP

/s/ Christopher D. Sullivan
Christopher D. Sullivan
Attorneys for Debtor-in-Possession

-8-

Case: 24-40713    Doc# 138    Filed: 07/14/25    Entered: 07/14/25 21:26:36    Page 8 of 8