SULLIVAN PRATT LLP
Christopher D. Sullivan (SBN 148083)
csullivan@sullivanblackburn.com
Roxanne Bahadurji (SBN 290117)
rbahadurji@sullivanblackburn.com
601 Montgomery Street, Suite 525
San Francisco, California 94111
Tel: 415.691.4518 | Fax: 415.966.2955

*Attorneys for Debtor-in-Possession*
ALIREZA MOHEB

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| In re<br><br>ALIREZA MOHEB,<br><br>Debtor and Debtor-in-Possession | Case No. 24-bk-40713-CN<br><br>Chapter 11<br><br>APPLICATION TO EMPLOY BOVINO & ASSOCIATES. PC AS SPECIAL LITIGATION COUNSEL FOR THE DEBTOR-IN-POSSESSION |

Debtor-in-Possession Alireza Moheb ("Debtor"), respectfully applies for entry of an order authorizing the employment of Bovino & Associates, P.C. ("Bovino Law") as special litigation counsel pursuant to 11 U.S.C. §§ 327(a) and Bankruptcy Rules 2014 and 2016. In support of this Application, the Debtor represents:

**BACKGROUND**

1. The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Case") on May 14, 2024 (the "Petition Date"). No trustee has been appointed, and the Debtor is in possession.

2. This Application follows a period of procedural errors, stagnation, and legal disruption triggered by systemic attorney misconduct. The engagement of Bovino Law is intended to further stabilize the estate's litigation posture, preserve recovery avenues, and considerably better align the case with the fiduciary, equitable, and statutory objectives under Chapter 11.

3. The Debtor is the founder of Doctor Realty LLC, Media DDS, LLC and Moheb DMD, Inc. Doctor Realty LLC, and Media DDS, LLC were created as real estate investment companies and Moheb DMD, Inc. was created to operate a dental office. Pre-petition, Doctor Realty, LLC, Media DDS, LLC and Moheb DMD, Inc. entered into loans with Silvergate Bank. [1]

4. The genesis of Debtor's bankruptcy filing and the injustices suffered by Debtor began around October 2019 when HomeStreet Bank purchased Silvergate Bank's health care division loans. Debtor had a portfolio of seven loans covering three entities and upon information and belief, never missed a payment in a thirteen-year relationship with Evan Barker and Dale Tice, who moved Debtors loans to each bank they transferred to, including Silvergate Bank and later HomeStreet Bank. Unlike other banks, Homestreet Bank, after hiring Evan Barker SVP Healthcare and Dale Tice VP of Underwriter Healthcare Lending around March 2019, terminated them around October 2019 and required them to enter into two year non-compete and non-contact provisions

---

[1] The following seven loans were initiated with Silvergate Bank: The market value and balances are from HomeStreet Financial Reporting Documents and Payoff Statements.

**Real Estate Commercial (Key Tenant Moheb DMD Inc) Total Value: $11,090,000 End Balance: $3,243,552.72**

1. **Doctor Realty Loan #0045**: Market Value: $890,000 Ending Principal Balance: $280,086.64 .Executed 1/15/2014, $319,000; secured by Maricopa County DOT #20140065928 and AOR #20140065929.
2. **Doctor Realty Loan #0053**: Market Value: $1,200,000 Ending Principal Balance: $381,453.27Executed 12/12/2013, $435,000; secured by Napa County DOT #2013-0035138 and AOR #2013-0035139.
3. **Media DDS Loan #5795**: Market Value: $5,500,000 Ending Principal Balance: $1,462,807.27 Executed 5/30/2017, $1,550,000; secured by Alameda County DOT #2017129597, AOR #2017129598, UCC #61871850002.
4. **Media DDS Loan #5910**:Market Value: $3,500,000 Ending Principal Balance: $593,478.13 Executed 8/15/2017, $736,608; secured by Solano County DOT #201700099151 and AOR #201700099152.
5. **Media DDS Loan #0037**: Market Value: See Loan 5910 Ending Principal Balance: $525,727.41 Executed 1/14/2014, $600,000; secured by Solano County DOT #201400006597 and AOR #201400006598.

**Multi Location Dental Business Loans Total Value: $7,000,000 End Balance: $2,005,880.98**

6**. Moheb DMD Loan #6105**: Market Value: $1,500,000 Principal Balance: $731,460.77 Executed 3/12/2018, $852,500; secured by commercial security.

7. **Moheb DMD Loan #1346**: Market Value: $5,500,000 Principal Balance: $1,274,420.21 Executed 3/11/2016, $2,685,000; secured by multiple commercial security instruments.

barring them from communicating with borrowers.

5. A protracted and escalating conflict between the Debtor and HomeStreet Bank began in October 2019 when HomeStreet inexplicably and without warning moved Debtor's portfolio to its distressed assets or Special Assets Group. On October 18, 2019, the Special Assets Group of HomeStreet Bank made its first contact with the Debtor, claiming that internal loan folders were incomplete and that newly conducted DSCR calculations showed insufficient coverage for the periods ending December 2018 and March 2019. This marked a sharp and unexplained reversal from the Bank's own position just three months earlier. On July 30, 2019, during a discussion regarding required documentation, HomeStreet Bank's Senior VP of Healthcare Lending reviewed the 2018 year-end financial report—timely submitted by the Debtor's CPA in January 2019—and requested only the 2018 tax return. Upon receiving clarification from the CPA, the SVP responded by email: "We're good – thank you Dave." At no point was the Debtor notified of any missing reports or DSCR deficiencies for that period. HomeStreet Bank's affirmative confirmation of compliance as of July 30, 2019 directly contradicts the subsequent default assertions made by the Special Assets Group, undermining the legitimacy of the default and demonstrating a manufactured basis for the loan's reclassification.

6. HomeStreet Bank's Special Assets Group then manufactured and served what the Debtor contends is a bad faith Notice of Default to force modification for all the loan numbers. In the Notice of Default dated November 4, 2019, HomeStreet Bank cited "past-due" reporting violations that had never been enforced—or even claimed—during the parties' prior course of dealing. The purported defaults related to the 2018 year-end financials, which the Debtor had timely submitted in January 2019, and which the Bank's SVP reviewed on July 30, 2019, expressly confirming in writing, "We're good." By re-labeling those previously accepted documents as delinquencies, Debtor contends that HomeStreet misrepresented the loan's status to coerce the Debtor into a disputed modification and to extract a new junior deed of trust, thereby expanding its collateral without any corresponding consideration. This bad-faith maneuver

inflicted material harm on the estate and fatally undermined the legitimacy of the alleged default. To be clear, Debtor had not missed one payment. (*See* Bovino Decl., Exh. A.)

7. HomeStreet then used this "manufactured" Notice of Default to pressure Debtor into cross collateralizing all holdings across three entities with a personal guarantee from Debtor in an Omnibus Loan Modification Agreement dated January 2020 ("Omnibus Agreement"). Debtor believes this was a classic loan to own scheme. The public record demonstrates that this is not HomeStreet's first instance of coercive lending and collection practices.[2]

8. HomeStreet actively solicited the Debtor into this arrangement, repeatedly assuring Debtor that the Omnibus Agreement would "save"" the 1716 Broadway property, one of the Debtor's key assets. Over 130 emails between HomeStreet and the Debtor demonstrate a pattern of strategic pressure, half-promises, and selective information withholding, designed to push the Debtor into executing the Omnibus Agreement in January 2020.

9. The Omnibus Agreement effectively cross-collateralized previously segregated loan obligations. Loans secured by specific real estate were now linked across multiple properties and entities, causing cascading risk for the Debtor. These sweeping liens impaired the Debtor's ability to refinance, restructure, or sell off properties if the need arose (as it did during the pandemic).

10. To dispute HomeStreet Bank's changes to terms, Debtor hired "Attorney" David Wiseblood. Unbeknownst to Debtor, Wiseblood had a history of professional misconduct and disciplinary action with the California state bar. He was suspended in March 2019, ordered inactive in April 2019, and disbarred in March 2020.

---

[2] HomeStreet Bank has a demonstrated history of aggressive and often improper lending practices. Regulatory agencies, including the FDIC and the Washington Department of Financial Institutions, have cited the bank for unsafe or unsound banking operations, violations of the Real Estate Settlement Procedures Act (RESPA), and deceptive marketing practices. Notably, HomeStreet entered into a $1.35 million settlement with the FDIC in 2019 for violating RESPA through unlawful referral arrangements with brokers and builders. In 2019, the bank consented to a cease-and-desist order over poor lending oversight and regulatory noncompliance. These actions reflect an institutional pattern of behavior that includes leveraging its lending position to coerce borrowers into disadvantageous agreements—such as forced cross-collateralization or technical default structures—in pursuit of asset seizure and control. This history provides important context for the lender's conduct here, which bears the hallmarks of a classic loan-to-own scheme.

11. The Omnibus Agreement called for only payments from February 2020 to July 2020. It also said the agreement was unenforceable until all conditions precedent were completed by both HomeStreet Bank and Debtor.

> NOW THEREFORE, for good and valuable consideration, the receipt and adequacy of which being hereby acknowledged, and in consideration of the mutual promises set forth in this Agreement, the Parties agree as follows:
>
> 1. ADOPTION OF RECITALS. The recitals set forth above are adopted as the agreement of the Parties, and the facts set forth therein are acknowledged and agreed to be true, accurate and complete.
>
> 2. CONDITIONS PRECEDENT. The following are conditions precedent to Lender's obligations under this Agreement, and Lender will not execute this Agreement until each condition has been satisfied, as determined by Lender in its sole, absolute, and unreviewable discretion. Such conditions shall be satisfied by Borrower on or before the Effective Date.

13. Home Street was required to perform an appraisal on the 1716 Broadway property, but it failed to perform the appraisal for over three months. Central to the inducement into the Omnibus Agreement was the Broadway property – repeatedly presented as savable under the new terms. However, evidence now shows the Bank had initiated internal processes to down the value of the property:

- **On 17 December 2019**, HomeStreet's draft modification demanded a new $2.04 million junior deed of trust on Broadway property. After negotiation, the Bank simply added $500,000 to its existing $1.5 million first-position lien, bringing the single deed of trust to roughly $2 million. Term 6.8(b) of the signed Omnibus Agreement contains no reference to any junior lien, confirming the Bank's original request was unnecessary and overreaching.
- **Early Jan 2020**: Internal discussions began at HomeStreet regarding reappraisal.
- **Mid-Jan 2020**: Debtor executes Omnibus Agreement.
- **Feb 2020**: Appraisal ordered.
- **March 2020**: Appraisal received with materially lower valuation (due to COVID).

This sequence reveals a bait-and-switch tactic. The Debtor executed the agreement based on prior valuations and verbal assurances. Afterward, HomeStreet used the newly deflated

appraisal to justify a foreclosure posture, all while claiming compliance with the Omnibus Agreement terms.

14. Then when HomeStreet finally did perform the appraisal, the Omnibus Agreement required that Debtor execute a junior deed of trust on the Broadway property within 7 days in a form "acceptable to the lender in its sole discretion." After eight days passed, with no evidence that HomeStreet provided a junior deed of trust draft within that period, HomeStreet issued a notice of default and initiated suit shortly thereafter. This is a classic loan to own scheme.

15. On June 24, 2020, HomeStreet initiated an action against Media DDS, LLC, Moheb DMD Inc., and the Debtor in the Superior Court of California, County of Alameda, *HomeStreet Bank v. Moheb DMD, Inc., et. al.* Case No. RG20066154 ("Alameda Litigation"). As bad luck often follows bad luck, Debtor later in the litigation, hired Attorney Richard Antognini to represent him in the Alameda Litigation and matters relating to the Debtor's problems with HomeStreet Bank. Attorney Antognini was later disbarred in part for his abandonment of Debtor's case.

16. On March 8, 2022, Media DDS, LLC filed a chapter 11 petition in the Bankruptcy Court for the Northern District of California. The Debtor contends that it was on Attorney Antognini's urging and advise that the bankruptcy was filed and various state court cases filed by the business entities against HomeStreet Bank were dismissed. In Media DDS, LLC's bankruptcy, the debtor there filed an application to employ Mr. Antognini to represent it as special counsel for the estate. Mr. Antognini asserted that filing the bankruptcy and dismissing the state court cases would force HomeStreet Bank to renegotiate the loan terms. The Debtor contends that not knowing the ins and outs of bankruptcy, the filing of the Media DDS, LLC's bankruptcy was ill advised. The bankruptcy was dismissed three months after in June 2022. The Media DDS, LLC bankruptcy was filed by RHM Law, LLP on a referral from Mr. Antognini to attorney Matthew Resnik. It appears that no options were considered by RHM Law, LLP and Mr. Antognini other than bankruptcy.

17. On July 22, 2022, HomeStreet moved for summary judgment. The summary

Case: 24-40713 Doc# 142 Filed: 08/15/25 Entered: 08/15/25 14:47:42 Page 6 of 13

judgment hearing was set for October 7, 2022, requiring any opposition to be filed by September 23, 2022. Mr. Antognini did not file an opposition to the summary judgment motion. Instead at 1:00 a.m. on the day of the summary judgment hearing, he filed a request for a two-week continuance, stating that he was unable to file an opposition because of a medical issue that prevented him from working. The court did not continue the hearing. The October 7, 2022 hearing was held. The court's minutes reflect that the "unopposed Motion for Summary Judgment was granted" and that the "facts" were "undisputed[.]" The court "construe[d] Defendants' failure to oppose this motion as conceding the validity of the arguments and the evidence presented therein." (See Bovino Decl., Ex. B.)

18. After Attorney Antongnini's functional incapacity in the underlying Alameda Litigation failed to oppose the summary judgment, HomeStreet Bank secured a judgment of $3,069,563.28. The court also ordered that Media DDS, LLC, provide a deed of trust in favor of HomeStreet Bank for the 1716 Broadway property. (See Bovino Decl., Ex. C.) That judgment remains unchallenged due to continued malpractice by Mr. Antognini, who also failed to file an appellate brief after five extensions. The matter was never heard on the merits. The underlying actions on the merits were fraught with wrongdoing by HomeStreet Bank.

19. Six months after judgment was entered against the Debtor, Mr. Antognini filed a motion to vacate the judgment. In support of that motion, Mr. Antognini submitted a declaration in which he admitted that the failure to file an opposition was purely his fault. (See Bovino Decl., Ex. D.) He stated: "[b]etween my severe depression and long-COVID, I could not work from July 1 to early October, 2022. As a result, I could not finish the opposition to the summary judgment motion." Mr. Antognini further declared that: "I have taken several medications to treat depression and anxiety for several years… [b]eginning in July 2022, however, I had severe reactions to the combination of medications, which caused symptoms from extreme sleep loss to depression…But because I experienced severe symptoms, I could not work, let alone on opposition to the HomeStreet motion for summary judgment." He continued: "[m]y depression did not lift until early October, shortly before the hearing on the summary judgment motion."

20. Mr. Antognini appealed the judgment in the Alameda Litigation. However, after five extensions he failed to file an opening brief on behalf of the Debtor. Mr. Antognini effectively abandoned the client by ending all meaningful representation without notice and by concealing that he had missed critical deadlines, including the opposition to summary judgment and the notice of appeal. The Debtor contends that Mr. Antognini did not disclose to him that judgment was entered until November 2023. At that time, Mr. Antognini claimed bankruptcy was the only remaining remedy and referred the Debtor to Mr. Resnik again – this time for his personal bankruptcy. Despite knowing that Mr. Antognini had missed critical deadlines and committed grave errors, Mr. Resnick's firm apparently failed to consider Attorney Antognini's malpractice as an estate claim or consider options other than bankruptcy for the Debtor. HomeStreet Bank has filed Proof of Claim No. 12 in the amount of $1,393,966.42 arising out of Mr. Antognini's abandonment – "I forgot about my client" failure to file any opposition to the summary judgment.

## REASON FOR SELECTION

21. The Debtor believes that he has claims against HomeStreet as well as his former counsel, and that these claims represent a critical path to recovering money for the estate and achieving a successful reorganization. These claims are not merely recoverable assets; they are central to the Debtor's path to reorganization. Absent correction of the systemic failures and misrepresentations that triggered this bankruptcy, it will be very difficult for the Debtor to propose a confirmable plan and will deprive the Debtor's estate from receiving the maximum possible recoveries. Accordingly, the pursuit of these claims is not merely an avenue for recovery—it is the most viable structural predicate for advancing a confirmable reorganization plan and for restoring procedural legitimacy following the dereliction of past counsel.

22. With that in mind, the Debtor seeks to employ Bovino Law to handle claims respecting two areas of concern:

a. <u>Claims against HomeStreet Bank</u>: Bovino Law has identified evidence that HomeStreet Bank exercised foreclosure rights based on a technical default tied to a disputed junior deed provision. In addition to these facts, as the pandemic spread its

economic venom, crippled dental revenues as result of Covid-19 closures, the Debtor qualified for a Paycheck Protection Program ("PPP") loan fully guaranteed by the SBA. HomeStreet Bank faced a choice: (i) process the PPP funds—earning its SBA processing fee and adding no credit risk—or (ii) weaponize a technical "omnibus" default and force the Debtor to sign a junior deed of trust that would greatly expand the Bank's collateral for its own benefit. HomeStreet Bank chose the latter. It falsely told the Debtor he was ineligible for PPP unless he first granted the disputed junior lien, then withheld the SBA-approval and funding to bank without notice, ensuring the Debtor would miss payment and trigger yet another manufactured default that accelerated foreclosure. This bad-faith stratagem set off a cascading liquidity crisis, deprived other creditors of payment, and directly precipitated the Debtor's present Chapter 11 filing. Debtor with Bovino Law's assistance will seek permission from this Court to lift the stay in the underlying Homestreet Bank foreclosure action to file a Motion to Open the Judgment. This is the first step in creating an avenue for claims that could substantially offset HomeStreet Bank's claim against the estate and generate meaningful recoveries in the millions of dollars.

b. <u>Claims against prior counsel</u>: The record also evidences critical failures by Mr. Wiseblood, Mr. Antognini and possibly Mr. Resnik. Wiseblood's failure to properly advise Debtor regarding the implications of signing the HomeStreet Bank engineered Omnibus Modification Loan Agreement. Mr. Antognini's failure to oppose the summary judgment motion, his delay in bringing the motion to vacate the judgment, and his inadequate handling of the appeal, all evidence falling below the required standard of care. His actions materially compromised the estate. It is notable that Mr. Resnik's firm served as bankruptcy counsel for both the Debtor and for one of Debtor's entities during its Chapter 11 filing in 2022, which was orchestrated by disbarred appellate counsel Richard Antognini. This continuity of

counsel highlights the need for clean separation of litigation strategy under independent review. Recovery on the legal malpractice claims would significantly benefit the estate and contribute to plan funding.

23. Bovino Law's engagement is designed to facilitate structural fairness and to ensure the estate's legal narrative accurately reflects the extrinsic misconduct that derailed its prior representation. The firm's involvement marks a procedural turning point—one that repositions the Debtor's posture from reactionary to strategic.

24. Bovino Law is a boutique litigation firm specializing in high stakes commercial and fiduciary disputes. The firm assists debtors and fiduciaries in identifying and prosecuting legal claims on behalf of estates. The Debtor has requested the services of Bovino Law. This representation will be principally handled by David Bovino, who is licensed in the state of California.

**COMPENSATION**

25. Debtor's proposed engagement of Bovino Law arose in a context of legal instability. The Attorney-client relationship between Attorney Resnik and his firm and the Debtor was irretrievably broken when Debtor asked Bovino Law for assistance. At the time, the Debtor's bankruptcy counsel had advised that dismissal was imminent, and Bovino's retention was directed toward evaluating strategic exits and legal triage. The firm's flexibility to either proceed in bankruptcy or pivot to state or federal court litigation was a core component of the retainer arrangement. Bovino assisted the Debtor in locating current bankruptcy counsel and was critical in advancing the current relationship benefiting both creditors and the Debtor.

26. Bovino Law received the amount of $200,000 pursuant to an earned-on receipt agreement executed post-petition, when Debtor's relationship with his former bankruptcy counsel had broken down, and was structured to reserve Bovino Law's strategic availability, litigation resources, and high-level litigation oversight at a moment of acute procedural disarray in the case.

27. Bovino Law's engagement was formalized under a post-petition 'earned-on-receipt' true retainer agreement, consistent with governing case law. The retainer secures the firm's

Case: 24-40713 Doc# 142 Filed: 08/15/25 Entered: 08/15/25 14:47:42 Page 10 of 13

availability and litigation readiness considering the complex posture of this case. No pre-petition services were performed by Bovino Law. No estate funds were used in funding the retainer. Both installments of the retainer have been received from a third-party non-creditor (Ahmad Moheb, the Debtor's father) and are disclosed here to maintain complete transparency.

28. Ahmad Moheb ("Mr. Moheb") is listed as a general unsecured creditor with a $400,000 claim on the Debtor's Schedule E/F. (Dkt. No. 16). Mr. Moheb has waived all claims – pre-and post-petition against the Debtor's estate. Mr. Moheb has provided the funds to Bovino Law in exchange for no consideration or obligation.

29. Bovino Law has received neither demands nor obligations from Mr. Moheb in exchange for the receipt of the retainer. Bovino Law, the Debtor, and Mr. Moheb fully understand that Bovino Law is not counsel for Mr. Moheb. Both Bovino Law and Mr. Moheb fully understand that Bovino Law does not represent Mr. Moheb and is not guided by his interests.

30. Since Mr. Moheb has waived all claims against the estate, the receipt of the retainer does not present any conflict of interest but is disclosed here in the interests of full disclosure and transparency.

31. Bovino Law's engagement is presently supported by the $200,000 earned on receipt true retainer funded by a third-party payor. No additional funds are being requested from the estate or any party at this time. Bovino Law's current retainer covers its past work in developing a very complicated and document review intensive timeline and analysis of potential avenues of relief with regard to Homestreet and former counsel. Bovino Law's current retainer also includes drafting a motion to open based on attorney abandonment and likely success on the merits. Should future litigation demands exceed the current scope of the retainer, Bovino Law will, subject to Court approval, seek supplemental third party funding or seek further expansion of this Application. Should future conditions warrant, and subject to proper Court approval, Bovino Law remains open to discussing a contingency or hybrid structure to enhance leverage and conserve estate liquidity. No such shift is presently sought.

32. Bovino Law's standard hourly rates are disclosed for reference. However, all matters

presently contemplated are covered under the true retainer agreement and no estate compensation is sought.

| Name | Title | Hourly Rate |
| --- | --- | --- |
| David Bovino | Partner | $ 600 |
| Julie D. Blake[3] | Of Counsel | $ 550 |
| | Paralegals | $200 |

33. There are four current issues facing the Debtor's estate. First, maintenance of the bankruptcy estate by current approved bankruptcy counsel. Second, the defense of the SBA adversary action which will be handled by bankruptcy counsel with limited assistance by Bovino Law only to the extent that the HomeStreet Bank wrongful actions provide a defense to the adversary proceeding. Third, vacating the underlying Homestreet judgment in California Superior Court with leave of this Court. Finally, analysis and development of malpractice claims against Attorneys Wiseblood, Antognini and possibly Resnik.

34. Bovino Law has not shared and will not agree to share any compensation paid or payable by the Debtor with any other entity.

**DISCLOSURES**

35. Except as set forth in the Bovino Declaration and disclosed in the compensation terms above regarding receipt of a true retainer from the Debtor's father, to the best of Mr. Bovino's knowledge, (i) neither Bovino Law, nor any of its partners or employees, have any connection with the Debtor, its creditors, or with any parties in interest, or with their attorneys and accountants, or with the office of the United States Trustee, or with any person employed in the office of the United States Trustee, and (ii) neither Bovino Law, nor any of its partners or employees, hold or represent any interest adverse to the Debtor or to the estate. None of the connections set forth in the Bovino Law Declaration are disqualifying connections. Bovino Law is a "disinterested person" qualified to

[3] Attorney Blake is not admitted in California and if needed to file an appearance will do so under a Motion Pro hac vice.

Case: 24-40713 Doc# 142 Filed: 08/15/25 Entered: 08/15/25 14:47:42 Page 12 of 13

represent the Debtor. Bovino Law is qualified to represent the Debtor in this case as special litigation counsel and the Debtor submits that Bovino Law's employment is in the best interest of the Debtor, the estate, and his creditors. The Bovino Declaration filed concurrently herewith has been executed on behalf of Bovino Law in accordance with Federal Rule of Bankruptcy Procedure 2014.

36. Approval of this application will materially advance the estate's prospects for recovery and reorganization by leveraging Bovino Law's litigation expertise, investigative bandwidth, and demonstrated ability to stabilize adversarial exposure. Bovino Law's involvement has already facilitated a shift toward procedural integrity and plan confirmation viability and will continue to serve those objectives. The law firm recognizes the duty to disclose connections pursuant to Bankruptcy Rule 2014 is a continuing obligation.

**CONCLUSION**

The Debtor has reviewed and approved the filing of this Application. The Debtor believes it is essential that Bovino Law be employed to provide the services described above.

WHEREFORE, based upon the foregoing, the Debtor requests that the Court enter an order authorizing the Debtor to employ Bovino Law as special litigation counsel under the terms and conditions set forth in this Application.

Respectfully submitted,

*/s/ Alireza Moheb*
Alireza Moheb

DATED: August 15, 2025

SULLIVAN PRATT, LLP

By: */s/ Christopher D. Sullivan*
Christopher Sullivan
*Attorneys for the Debtor-in-Possession*