SULLIVAN PRATT LLP
Christopher D. Sullivan (SBN 148083)
csullivan@sullivanblackburn.com
Roxanne Bahadurji (SBN 290117)
rbahadurji@sullivanblackburn.com
601 Montgomery Street, Suite 525
San Francisco, California 94111
Tel: 415.691.4518 | Fax: 415.966.2955

*Attorneys for Debtor-in-Possession*
ALIREZA MOHEB

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| In re<br>ALIREZA MOHEB,<br>    Debtor and Debtor-in-Possession. | Case No. 24-bk-40713-CN<br><br>Chapter 11<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR-IN-POSESSION'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>Date: November 12, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 215<br>       1300 Clay Street<br>       Oakland, CA 94612 |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................... 1

    A. Alameda Action ........................................................................................... 4

III. ARGUMENT ......................................................................................................... 6

    A. Relief from Automatic Stay Under 11 U.S.C. § 362. ............................... 6

    B. Relief From Stay is Warranted Under § 362(d)(1) For Cause ............. 7

    C. The Court Should Waive the 14 Days Stay Under Federal Rule of Bankruptcy Procedure 4001(a)(4). .......................................................... 13

IV. CONCLUSION ................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*American Spectrum Realty Inc.*
 540 B.R. 730 (Bankr. C.D. Cal. 2015) ................................................................................ 9
*Assoc. St. Croix Condominium Owners v. St. Croix Hotel Corp.*
 682 F.2d 446 (3rd Cir. 1982) ............................................................................................... 6
*Carroll v. Abbot Laboratories, Inc.*
 32 Cal. 3d 892 (1982) ........................................................................................................ 11
*Christen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*
 912 F.2d 1162 (9th Cir. 1990) ......................................................................................... 7, 8
*In re Ayoub*
 643 B.R. 518 (Bankr. M.D. Fl. 2022) ............................................................................... 10
*In re Capgro Leasing Associates*
 169 B.R. 305 (Bankr. E. D. N.Y. 1994) ........................................................................... 10
*In re Curtis*
 40 B.R. 795 (Bankr. D. Utah 1984) ................................................................................... 8
*In re Hakim*
 212 B.R. 632 (Bankr. N.D. Cal. 1997) ............................................................................... 8
*In re Macdonald*
 755 F.2d 715 (9th Cir. 1985) .............................................................................................. 7
*In re Plumberex Specialty Products Inc.*
 311 B.R. 551 (Bankr. C.D. Cal. 2004) ........................................................................... 7, 8
*In re Rexene Prods. Co.*
 141 B.R. 574 (Bankr. D. Del. 1992) ................................................................................ 11
*In re Roger*
 539 B.R. 837 (Bankr. C.D. Cal. 2015) ............................................................................. 11
*In re Sciortino*
 114 B.R. 423 (E. D. Pa. 1990) ..................................................................................... 6, 10
*In re Singh Brothers Express, LLC*
 667 B.R. 885 (Bankr. W.D. Washington 2025) ............................................................. 8, 9
*In re Sonnax Industries, Inc.*
 907 F.2d 1280, 1286 (2nd Cir. 1990) ................................................................................. 7
*In re Warren*
 125 B.R. 128 (Bankr. E. D. Pa 1991) ............................................................................... 10
*Johnson v. Righetti (In re Johnson)*
 756 F.2d 738 (9th Cir. 1985), *cert. denied*, 474 U.S. 828 (1985) ..................................... 7
*Kronemyer v. American Contractors Indemnity Co., (In re Kronemyer)*
 405 B.R. 915, 921 (9th Cir. BAP 2009) ......................................................................... 7, 8
*Orange Empire Nat. Bank v. Kirk*
 259 Cal. App. 2d 347, 353 (1968) .................................................................................... 12
*Parker v. Bain*
 68 F.3d 1131 (9th Cir. 1995) .............................................................................................. 6
*Secall Development Ltd. v. Santa Monica Rent Control Board*
 73 Cal. App.4th 201, 205 (1999 ....................................................................................... 12

*Sonnax Industries, Inc. v. Tri Component Products Corp.*
  *(In re Sonnax Industries Inc.)*
    907 F.2d 1280, 1285 (2nd Cir. 1990) ........................................................................... 7

**Statutes**

11 U.S.C. § 362 .................................................................................................................... 6
11 U.S.C. § 362(a) ........................................................................................................... 6, 7
11 U.S.C. § 362(a) (1) ......................................................................................................... 6
28 U.S.C. § 1334(c)(1) ........................................................................................................ 8

**Other Authorities**

H.R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977) ..................................................... 11

**Rules**

Fed. Rule B. Proc. 4001(a)(4) .......................................................................................... 12

## I. INTRODUCTION

Debtor-in-Possession Alireza Moheb ("Debtor"), respectfully moves this Court pursuant to 11 U.S.C. § 362(d)(1) for relief from the automatic stay to permit the Debtor to move the Alameda Superior Court in the case *HomeStreet Bank v. Moheb DMD, Inc, Media DDS, LLC, Alireza Moheb*, Case No. RG20066154 ("Alameda Action") for an order setting aside and vacating the judgment entered in that action on December 22, 2022 in favor of HomeStreet Bank.

The judgment at issue was the result of admitted positive misconduct constituting attorney abandonment on the part of the Debtor's former attorney without knowledge or fault of the Debtor. Prior counsel never filed a response to a motion for summary judgment filed by Plaintiff HomeStreet Bank in the Alameda Action. Debtor intends to file a motion to vacate and set aside the Judgment asking the court in the Alameda Action to use its inherent equitable powers to allow the Debtor to obtain review on the merits.

## II. FACTUAL BACKGROUND

The Debtor is the founder of Doctor Realty LLC ("Doctor Realty"), Media DDS, LLC ("Media DDS") and Moheb DMD, Inc ("Moheb DMD"). Doctor Realty and Media DDS were created as real estate investment companies and Moheb DMD was created to operate a dental office. These businesses had a portfolio of loans with Silvergate Bank, which was later moved to HomeStreet.[1] In March 2019, HomeStreet completed its purchase of Silvergate Bank's retail branch in San Marcos,

---

[1] The following represent the seven loans:

**Real Estate Commercial (Key Tenant Moheb DMD Inc)**
**Doctor Realty Loan #0045**: Executed 1/15/2014, $319,000; secured by Maricopa County, Arizona Deed of Trust

**Doctor Realty Loan #0053**: Executed 12/12/2013, $435,000; secured by Napa County, California Deed of Trust

**Media DDS Loan #5795**: Executed 5/30/2017, $1,550,000; secured by Deed of Trust for 1716 Broadway, Oakland Deed of Trust.

**Media DDS Loan #5910**: Executed 8/15/2017, $736,608; secured by Vacaville, Solano County Deed of Trust.

**Media DDS Loan #0037**: Executed 1/14/2014, $600,000; secured by Vacaville, Solano County Deed of Trust.

**Multi Location Dental Business Loans**
**Moheb DMD Loan #6105** Executed 3/12/2018, $852,500; secured by commercial security.

**Moheb DMD Loan #1346**: Executed 3/11/2016, $2,685,000; secured by multiple commercial security instruments.

California – along with approximately $123 million in deposits and commercial loans. This transaction included Silvergate's healthcare lending portfolio, which included the Debtor's loans. The Debtor had a longstanding relationship with Silvergate Bank loan officers Evan Barker (SVP Healthcare) and Dale Tice (VP of Underwriter Healthcare Lending) who transferred the Debtor's loans to each bank they moved to, including Silvergate Bank and later HomeStreet Bank. HomeStreet Bank terminated both Mr. Barker and Mr. Tice in October 2019. (Declaration of Alireza Moheb In Support of Debtor's Motion for Relief from the Automatic Stay ("Moheb Decl.") ¶ 2.)

Despite the fact that none of the entities had missed any payments on the loans in over thirteen years, HomeStreet Bank inexplicably and without warning moved the Debtor's portfolio of loans to its Special Assets Group (distressed assets) in October of 2019. A protracted and escalating conflict between the Debtor and HomeStreet Bank ensued. Prior to October, on July 30, 2019, during a discussion regarding required documentation, HomeStreet's Senior VP of Healthcare Lending reviewed the 2018 year-end financial report, submitted by the Debtor's CPA and requested only the 2018 tax return. Upon receiving clarification from the CPA, the SVP responded by email: "We're all good – thank you…[."] At no point was the Debtor notified of any missing reports or DSCR deficiencies for that period. Nevertheless, the loans were moved to the distressed assets group without justification. (Moheb Decl. ¶ 6.)

Within weeks of HomeStreet Bank reclassifying the loans as distressed, on November 4, 2019, it issued a Notice of Default citing as a pretext "past-due" reporting violations that had never been discussed or previously requested by HomeStreet or Silvergate Bank. The Notice of Default did not complain of any missed payments. (Moheb Decl. ¶ 7, Ex. A.) HomeStreet Bank then used the alleged "default" to pressure the Debtor into into a sweeping agreement that would cover all seven loans -- the Omnibus Loan Modification Agreement ("Omnibus Agreement"). (Moheb Decl. ¶ 8, Ex. B.)

The Omnibus Agreement effectively cross-collateralized previously segregated loan obligations. Loans secured by specific real estate assets were now linked across multiple properties and entities. Provision 8 of the Omnibus Loan Agreement provides that: "Any default or event of

default under this Agreement, or under the terms of any of the Loan Documents, shall be a default and event of default under this Agreement and all of the Loan Documents".

The Omnibus Agreement also provided HomeStreet Bank with additional security by requiring Media DDS to execute a junior deed of trust in favor of HomeStreet against 1716 Broadway, Oakland ("Oakland Property"). Loan 5795 was already secured by the Oakland Property. (Moheb Decl. ¶ 9.) HomeStreet Bank itself stated in its relief from stay motion that it filed in this bankruptcy that, "the primary purpose of the Promised DOT was to secure the indebtedness on the two DMD Loans (i.e., Loan No. 6105 and Loan No. 1346), which were not secured by any real property collateral." (Dkt. No. 35-1 at p. 9, lines 10-11).

Provision 6.8 of the Omnibus Agreement provided that: "Media DDS shall pay for an appraisal of property located at 1716 Broadway Street, Oakland, California to be performed by an appraiser acceptable to Lender in Lender's sole discretion (the "Broadway Street Appraisal"). The Broadway Street Appraisal must be initiated within seven (7) days of this Agreement." The Omnibus Loan Agreement was executed in mid-January 2020, but HomeStreet dragged its feet, and the appraisal was not completed until March 19, 2020, well after the date that the Omnibus Agreement required it to be completed. During the height of the COVID epidemic (which effectively closed the dental industry), the depreciated real estate returned a materially lower valuation. The Debtor had executed the agreement in reliance on prior valuations of the Oakland Property. (Moheb Decl. ¶ 9.)

Shortly after executing the Omnibus Agreement and at the height of the COVID pandemic, HomeStreet Bank denied the Debtor's access to Paycheck Protection Program ("PPP") funds in violation of SBA policy. During the ensuing COVID shutdowns, the PPP funds were critical to meeting debt service obligations. Debtor requested that the bank remove an autopay deduction from his account so that he could pay his employees and contractors. Despite the risk this posed to Debtor, he chose to do the correct thing to ensure his employees and contractors were taken care of. (Moheb Decl. ¶ 10.)

On May 7, 2020, two months after California declared a state of emergency, HomeStreet

Bank notified the borrowers that loans 5910, 0037, 0045, 0053, and 01346 were in default for missing the May 1st 2020 payment. Debtor qualified and requested the PPP funds to be able to continue both payments to employees and contractors as well as service debt payments to HomeStreet Bank. The notice also stated that HomeStreet had not received the deed of trust for the Oakland Property from Media DDS within the "required timeframe" which purportedly constituted a material default. The notice continued that because the borrowers had allegedly defaulted, HomeStreet had cancelled the application for PPP funds. (Moheb Decl. ¶ 11, Ex. C.)

HomeStreet Bank accelerated the loans on May 21, 2020, and asserted that unpaid principal and accrued interest on each of the five loans was immediately due. Just a few days later, on May 27, 2020, the Debtor transferred the past due monthly payments to HomeStreet, but Homestreet *declined to accept the money*, asserting that the payments were insufficient to reinstate the loans. (Moheb Decl. ¶ 12.)

### A. Alameda Action

Stymied by Debtor's refusal to sign the junior deed of trust under the circumstances, HomeStreet Bank immediately filed suit in Alameda County Superior Court on June 24, 2020. HomeStreet Bank filed its Complaint for (1) Breach of Promissory Note and Loan Agreement (Loan 6105) – against Moheb DMD; (2) Breach of Guaranty (Loan 6015) – against me; (3) Breach of Promissory Note and Loan Agreement (Loan 1346) against Moheb DMD; (4) Breach of Guaranty (Loan 1346) – against me; and (5) Specific Performance on the Omnibus Agreement in Connection with the Oakland Property against Media DDS. (Moheb Decl. ¶ 14, Ex. D.)

The Debtor retained Richard L. Antognini, Esq., to represent him and his business entities in that action. Mr. Antognini, however, failed to conduct discovery, assert any affirmative defenses, or file counterclaims on the Debtor and his businesses' behalf. (Moheb Decl. ¶ 15.) Most critically, on July 22, 2022, HomeStreet moved for summary judgment and Mr. Antognini failed to oppose such motion despite telling the Debtor that he was working hard on opposing it. (Moheb Decl. ¶ 16.) The summary judgment hearing was set for October 7, 2022, requiring any opposition to be filed by September 23, 2022.

On October 7, 2022 at 1:00 a.m. in the morning Mr. Antognini filed a request for a two-week continuance, stating that he was unable to file an opposition because of medical issues that prevented him from working. (Moheb Decl. ¶17.) The court did not continue the hearing. The October 7, 2022 hearing was held. The court's minutes reflect that the "unopposed Motion for Summary Judgment was granted" and that the "facts" were "undisputed[.]" The court "construe[d] Defendants' failure to oppose this motion as conceding the validity of the arguments and the evidence presented therein." (Moheb Decl. ¶ 17, Ex. E.)

The trial court granted summary judgment on October 7, 2022. Judgment was entered against Media DDS, Moheb DMD, and the Debtor on December 20, 2022 for $3,069,563.28 ("Judgment"). The court also ordered Media DDS to provide a deed of trust to HomeStreet for the Oakland property. (Moheb Decl. ¶18.) As a result, this matter has never been heard on the merits.

Six months after Judgment was entered against the Debtor, Mr. Antognini filed a motion to vacate the Judgment in which he submitted a declaration. He stated: "[b]etween my severe depression and long-COVID, I could not work from July 1 to early October, 2022. As a result, I could not finish the opposition to the summary judgment motion." Mr. Antognini further declared that: "I have taken several medications to treat depression and anxiety for several years… [b]eginning in July 2022, however, I had severe reactions to the combination of medications, which caused symptoms from extreme sleep loss to depression…But because I experienced severe symptoms, I could not work, let alone on an opposition to the HomeStreet motion for summary judgment." He continued: "[m]y depression did not lift until early October, shortly before the hearing on the summary judgment motion." (Moheb Decl. ¶ 20, Ex. F.)

Although Mr. Antognini filed a notice of appeal on February 16, 2023, he failed to file an opening brief -- *after obtaining seven extensions*. (Moheb Decl. ¶ 22.) The appeal was dismissed. Mr. Antognini never informed the Debtor that he failed to file an opposition or that Judgment was entered against him and his entities. The first time that he became aware of the Judgment was on November 29, 2023, when a realtor that he had engaged to potentially sell one of my properties discovered an abstract of judgment on the preliminary title report. (Moheb Decl. ¶ 18.)

When the Debtor contacted Mr. Antognini, his counsel informed him that he had filed an appeal and advised the Debtor to file bankruptcy with Attorney Mathew Resnick's assistance. (Moheb Decl. ¶ 21.)

HomeStreet Bank foreclosed on the Arizona, Napa, and Vacaville properties. (Moheb Decl. ¶ 13.) HomeStreet Bank has filed Proof of Claim No. 12 in the amount of $1,393,966.42 arising out of the Judgment. HomeStreet states in its Proof of Claim that in calculating the outstanding amount owed, it has applied the amount that HomeStreet Bank's affiliate, Union Street Holdings, LLC, paid via credit bid to acquire the Oakland Property at a trustee's sale. Per the Proof of Claim, HomeStreet Bank has recorded abstracts of judgment in Contra Costa, Solano, Napa, and Alameda Counties. The Debtor's principal residence is located in Contra Costa County. He also owns another property in Contra Costa County, and a rental property in Alameda County.

## III. ARGUMENT

### A. Relief from Automatic Stay Under 11 U.S.C. § 362.

Section 362(a) of the Bankruptcy Code provides that a bankruptcy petition "operates as a stay, applicable to all entities," of the "(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case…" 11 U.S.C. § 362(a)(1). "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a)…by terminating, annulling, modifying, or conditioning such stay…" § 362(d).

Debtor is in an unusual position because he is seeking relief from the automatic stay. Debtor seeks relief from the automatic stay from this Court to move the Court in the Alameda Litigation to vacate the Judgement. *See In re Sciortino*, 114 B.R. 423, 426 (E. D. Pa. 1990) (holding that automatic stay applied to a proceeding in bankruptcy court brought by the debtor to vacate a default judgment entered in a state court foreclosure action because the state court action was originally brought against the debtor); *Assoc. St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 449 (3rd Cir. 1982) ("whether a case is subject to the automatic stay must be determined at its inception. That

determination should not change depending on the particular stage of the litigation at which the filing of the petition in bankruptcy occurs"); *Parker v. Bain*, 68 F.3d 1131, 1135-36 (9th Cir. 1995) ("Section 362 should be read to stay all appeals in proceedings that were originally brought against the debtor, regardless of whether the debtor is the appellant or the appellee.").

This Motion is not intended to terminate the automatic stay with respect to enforcement of the Judgment against the Debtor and his estate, which currently remains in effect. Any act to collect or recover on the Judgment must remain stayed. The Debtor only seeks relief to file his motion to vacate and set aside the Judgment with the Alameda Court to show that Mr. Antongini's conduct was so egregious that it amounts to positive misconduct and that under California law, the Alameda Court should use its inherent equitable powers to reinstate that matter to the active docket and allow an opposition to HomeStreet's summary judgment motion to finally be heard on the merits. Merits that, if considered, will heavily favor Debtor and expose HomeStreet's predatory lending practices.

**B.      Relief From Stay is Warranted Under § 362(d)(1) For Cause**

Motions for relief from stay relief are summary proceedings. *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740 (9th Cir. 1985), *cert. denied*, 474 U.S. 828 (1985). "Stay litigation is confined to the issues of lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization of the debtor or the existence of other cause for relief from the stay." *Plumberex Specialty Products Inc.*, 311 B.R. 551, 557-58 (Bankr. C.D. Cal. 2004) (citation and internal quotation marks omitted).

A bankruptcy filing imposes an automatic stay of all litigation against the debtor. *Christen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) (*citing* 11 U.S.C. § 362(a)). Because this case concerns a stay of a judicial proceeding, only section 362(d)(1) is applicable. *See Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries Inc.)*, 907 F.2d 1280, 1285 (2nd Cir. 1990). A bankruptcy court may lift the automatic stay for "cause." 11 U.S.C. § 362(d)(1). "'Cause' has no clear definition and is determined on a case-by-case basis. *In re Tucson Estates, Inc.*, 912 F.2d at 1166 (*quoting In re Macdonald*, 755 F.2d 715, 717 (9th Cir. 1985)); *In re Sonnax Industries, Inc.*, 907 F.2d at 1286 (legislative history indicates that the facts

of each request will determine whether relief is appropriate under the circumstances) (citation omitted). "Factors appropriate to consider in determining whether relief from the automatic stay should be granted to allow state court proceedings to continue are considerations of judicial economy and the expertise of the state court…as well as prejudice to the parties and whether exclusively bankruptcy issues are involved." *Kronemyer v. American Contractors Indemnity Co. (In re Kronemyer)*, 405 B.R. 915, 921 (9th Cir. BAP 2009) (citations omitted). The "decision of whether to lift the stay is committed to the discretion of the bankruptcy judge." *In re Sonnax Industries, Inc.*, 907 F.2d at 1286 (internal quotation marks and citations omitted).

Bankruptcy courts apply the twelve non-exclusive factors discussed in *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984), in determining whether to lift the stay to permit litigation to continue in another forum. *See In re Kronemyer*, 405 B.R. at 921 ("We agree that the *Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum."); *In re Plumberex*, 311 B.R. at 559 (applying *Curtis* factors in denying a judgment creditor from moving for relief from stay to initiate contempt proceedings against debtor); *In re Singh Brothers Express, LLC*, 667 B.R. 885, 902-904 (Bankr. W.D. Washington 2025) (applying *Curtis* factors in granting debtors' motion for relief from stay to proceed with appeals of state court rulings in favor of a creditor). The following are the 12 non-exclusive *Curtis* factors that courts weigh to determine whether cause exists to grant relief to allow a party to continue pending litigation in a non-bankruptcy forum:

1. Whether the relief will result in a partial or complete resolution of the issues;
2. The lack of any connection with or interference with the bankruptcy case;
3. Whether the foreign proceeding involves the debtor as a fiduciary;
4. Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;
5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;
7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;
8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);
9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable

   by the debtor under Section 522(f);
10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties;
11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and
12. The impact of the stay on the parties and the "balance of hurt."

*In re Plumberex*, 311 B.R. at 559.

  These factors "are closely related to those factors a bankruptcy court considers in evaluating whether to abstain from hearing a civil proceeding that has commenced in state court." *In re Hakim*, 212 B.R. 632, 640 (Bankr. N.D. Cal. 1997) (*citing* 28 U.S.C. § 1334(c)(1) and *In re Tucson Estates, Inc.*, 912 F.2d at 1168). Not all the Curtis factors will be relevant, and some will carry more weight than others. *American Spectrum Realty Inc.*, 540 B.R. 730, 737 (Bankr. C.D. Cal. 2015). Here, factors 1, 2, 4, 7, 10, and 12 are the relevant factors, and all weigh in favor of granting the relief requested.

  The first and second *Curtis* factors weigh in favor of granting Motion. Allowing the Debtor to proceed in state court to vacate the Judgment will necessarily begin resolving some, if not all, of the issues between the Debtor and the bank. Moreover, the outcome of the Debtor's efforts in the Alameda Action are directly related to this bankruptcy and the prospect of a successful reorganization. The genesis of Debtor's financial problems were his issues with HomeStreet Bank. The extraordinary malpractice of Mr. Antognini – in the Alameda Action caused the Judgment to be entered against Debtor in HomeStreet Bank's favor. HomeStreet Bank's purported secured claim for $1.3 million arises out of the unopposed summary judgment motion and the fact that Judgment was entered against the Debtor essentially by default. Allowing the Debtor to file his motion to vacate the Judgment would assist resolution of the issues between the Debtor and HomeStreet Bank. If the Judgment was vacated, it would eliminate HomeStreet's secured claim, which is a significant impediment to the Debtor's reorganization. Absent correction of the systematic failures that triggered this bankruptcy, it will be difficult for the Debtor to propose a confirmable plan. *See In re Singh Bros. Express, LLC*, 667 B.R. at 902 (finding *Curtis* factors 1 and 2 to weigh in favor of granting debtor's relief from stay motion to continue with state court appeal because the dispute involved state law and any confirmed plan would not be fully implemented without resolving appeal – the proposed plan was directly tied to outcome of appeal).

1    A factor that courts consider in determining whether to permit non-bankruptcy forum
2    litigation to continue is the cost to the estate. *See American Spectrum Realty Inc.*, 540 B.R. at 739
3    (litigating state law causes of action in bankruptcy court may drive up the cost of litigation in
4    bankruptcy court; debtor in opposing relief from stay had not provided evidence as to what savings
5    the debtor would experience by delaying a state court trial). The Debtor's estate will not incur any
6    additional fees or costs from the Debtor moving to vacate the Judgment. As the Debtor stated in his
7    Application to Employ Bovino & Associates as Special Litigation Counsel (Dkt No. 142)
8    ("Application"), Bovino & Associate's ("Bovino Law") retainer - paid by a third party – encompasses
9    drafting and litigating efforts to vacate the Judgment. *See* Application at ¶¶ 7, 22a, 31 ("Debtor with
10   Bovino Law's assistance will seek permission from this Court to lift the stay in the underlying
11   Homestreet Bank foreclosure action to file a Motion to Open the Judgment" and "Bovino Law's
12   current retainer also includes drafting a motion to open based on attorney abandonment and likely
13   success on the merits.") Thus, granting relief from stay does not result in additional litigation fees
14   and costs.

15   The fourth Curtis factor also weighs in favor of granting relief from stay. The causes of action
16   in the Alameda Action all arise under state law and the Debtor seeks to exercise his rights under state
17   law to vacate the Judgment in that litigation. A bankruptcy court may not be used to relitigate issues
18   resolved by final judgment. *In re Capgro Leasing Associates*, 169 B.R. 305, 317 (Bankr. E. D. N.Y.
19   1994) (directing debtor to file relief from stay motion if it desired to appeal state court decision in
20   order to prevent bankruptcy court from being rendered an appellate court for state court proceedings.).
21   The Alameda Court is the appropriate forum for reviewing its own Judgment. *See In re Warren*, 125
22   B.R. 128, 132 (Bankr. E. D. Pa 1991) (exercising discretionary abstention and remanding to state
23   court debtor's petition to strike state court judgment because attack on the judgment was based solely
24   on state law and it "flies in the face of comity for us to uproot this action now, and decline to allow
25   the state court to resolve the matter of the validity of its own judgment."); *In re Sciortino*, 114 B.R.
26   at 427 ("we believe that, as a rule, the court which has originally entered a particular judgment should
27   be accorded, as a matter of comity, the right to determine whether relief from its own judgment should
28

be granted."); *In re Ayoub*, 643 B.R. 518, 520 (Bankr. M.D. Fl. 2022) (granting debtor's relief from automatic stay to proceed with appeal because "state court is the better forum for reviewing the state court judgment"). The Alameda Court has knowledge of the underlying litigation between the parties, and it has the expertise to hear and decide whether to vacate the Judgment that it entered.

Debtor should be allowed to proceed in the Alameda Court to file and litigate his motion to vacate the Judgment. The legislative history of the Bankruptcy Code makes clear that: "It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere." *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977)).

The remaining relevant Curtis factors (seven, ten, and twelve) all weigh in favor of granting relief to the Debtor. With respect to the seventh factor, granting relief from the automatic stay would benefit the estate and all of its legitimate creditors – not prejudice them. As indicated above, the estate will not incur any attorney fees or costs for the Debtor's efforts to vacate the Judgment. Moreover, if the Debtor wins his motion to set aside the Judgment, the victory would eliminate HomeStreet's judgment for $1.3 million and render voidable its abstract of judgment. Granting the Debtor's motion is also in the interests of judicial economy.

With respect to the tenth factor, given the advanced stage of the Alameda Action, which has been pending since 2020 and its familiarity with the issues in that case and the Judgment that it entered, judicial economy will be best served by permitting the Alameda Court to reach resolution on purely California law. "[T]here can be no question that it would be more appropriate for the non-bankruptcy court to first determine the non-bankruptcy issues, i.e., whether a claim exists and the damages therein if any." *In re Roger*, 539 B.R. 837, 851 (Bankr. C.D. Cal. 2015) (citation and internal quotation marks omitted).

Additionally, the "balance of hurt" under the twelfth Curtis factor weighs strongly in favor of the Debtor. Denying the relief requested imposes substantial hardship on the Debtor. By moving this Court and subsequently the Alameda Court to set aside the Judgment, the Debtor is attempting to

11
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR-IN-
POSESSION'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Case: 24-40713    Doc# 147    Filed: 10/29/25    Entered: 10/29/25 10:17:00    Page 15 of 17

remedy the significant damage caused to him by no fault of his own. In the Alameda Action, the Debtor will present facts evidencing that the judgment was entered because of his former counsel's total failure to represent his clients. Because of Mr. Antognini's "positive misconduct" the Debtor was "effectually and unknowingly deprived of representation." *Carroll v. Abbot Laboratories, Inc.*, 32 Cal. 3d 892, 899 (1982) (when attorney's "neglect is of that extreme degree amounting to positive misconduct, and the person seeking relief is relatively free from negligence" then it "*obliterates the existence of the attorney-client relationship*, and for this reason his negligence should not be imputed to the client.") (emphasis in original). "Imputation of the attorney's neglect to the client ceases at the point where abandonment of the client appears." *Secall Development Ltd. v. Santa Monica Rent Control Board*, 73 Cal. App.4th 201, 205 (1999) (internal quotation marks omitted). Mr. Antognini's declaration under oath reveals that he abandoned his clients and covered it up. Debtor did not know that Mr. Antognini failed to file an opposition to the summary judgment motion. Debtor did not learn until November 2023 of this failure.

Additionally, the harm that will result to HomeStreet Bank from giving the Debtor the opportunity to file a motion in state court, is not as severe as the harm that would result from the Debtor being denied that opportunity. Debtor only requests that this Court allow him the opportunity to present the facts to the Alameda Court. HomeStreet Bank will be provided with the opportunity to file a reply to the opposition in state court, as warranted. The Alameda Court will then weigh the facts in determining whether to set aside the Judgment. As the Court in *Orange Empire Nat. Bank v. Kirk*, 259 Cal. App. 2d 347, 353 (1968) stated: "Thus, where a client is unknowingly deprived of effective representation…the client will not be charged with responsibility for the misconduct of nominal counsel of record, providing the client acts with due diligence in moving for relief after discovery of the attorney's neglect, and the opposing party's rights will not be prejudiced nor suffer injustice as a result of the granting of relief." By filing this request for relief from the automatic stay, the Debtor is acting with due diligence to correct a miscarriage of justice.

Thus, in weighing all the relevant Curtis factors, the Court should grant relief from stay to allow the Debtor to file and litigate his motion to vacate the Judgment in the Alameda Action.

**C. The Court Should Waive the 14 Days Stay Under Federal Rule of Bankruptcy Procedure 4001(a)(4).**

The Debtor requests that the Court waive the 14 days stay imposed by Fed. Rule B. Proc. 4001(a)(4) and that the order granting relief become effective immediately. If the 14-day stay is not lifted, it would delay Debtor's ability to file his motion to vacate the Judgment, which he intends to do immediately should this Court grant this Motion.

## IV. CONCLUSION

WHEREFORE, based upon the foregoing, the Debtor requests that the Court enter an order granting relief from the automatic stay to allow him to move to set aside the Judgment, and waiving the 14 days stay imposed by Fed. Rule B. Proc. 4001(a)(4).

DATED: October 29, 2025          SULLIVAN PRATT LLP

By:   */s/ Christopher D. Sullivan*
Christopher D. Sullivan
*Attorneys for the Debtor-in-Possession*

13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR AND DEBTOR-IN-POSESSION'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Case: 24-40713    Doc# 147    Filed: 10/29/25    Entered: 10/29/25 10:17:00    Page 17 of 17