SULLIVAN PRATT LLP
Christopher D. Sullivan (SBN 148083)
csullivan@sullivanblackburn.com
Roxanne Bahadurji (SBN 290117)
rbahadurji@sullivanblackburn.com
601 Montgomery Street, Suite 525
San Francisco, California 94111
Tel: 415.691.4518 | Fax: 415.966.2955

*Attorneys for Debtor-in-Possession*
ALIREZA MOHEB

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>ALIREZA MOHEB,<br><br>      Debtor and Debtor-in-Possession | Case No. 24-bk-40713-CN<br><br>Chapter 11<br><br>**DECLARATION OF ALIREZA MOHEB IN SUPPORT OF DEBTOR-IN-POSESSION'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY** |

I, Alireza Moheb, declare as follows:

1.      I am the Debtor in this bankruptcy case. I make this declaration in support of the Debtor-in-Possession's Motion for Relief from the Automatic Stay ("Motion"). The facts set forth in this declaration are personally known to me based on personal knowledge, and if called as a witness I would and could competently testify thereto. To the extent that any information disclosed herein requires modification or amendment, I will supplement this declaration.

2.      I am the founder of Doctor Realty, LLC ("Doctor Realty"), Media DDS, LLC ("Media DDS") and Moheb DMD, Inc. ("Moheb DMD"). I created Doctor Realty and Media DDS as real estate investment companies and Moheb DMD was created to operate my dental practice.

DEBTOR'S DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

These businesses prior to 2019, had a portfolio of seven loans with Silvergate Bank. On information and belief, HomeStreet Bank is a successor in interest to Silvergate Bank. Once HomeStreet Bank completed its purchase of Silvergate Bank, the seven loans were transferred to HomeStreet Bank. I had a longstanding relationship Silvergate Bank loan officers Evan Barker (SVP of Healthcare) and Dale Tice (VP of Underwriting Healthcare Lending), who moved the loans to each bank they moved to, including Silvergate Bank and later HomeStreet Bank.

3. The following were the loans to Doctor Realty:

   a. Loan 0045 for $319,000 made on or about January 15, 2014, and secured by a deed of trust against real property in Maricopa County, Arizona.

   b. Loan 0053 for $381, 453.24 made on or about December 12, 2013, and secured by a deed of trust against real property in Napa County, California.

4. The following were the loans to Media DDS:

   a. Loan 5795 for $1,550,000 made on or about May 30, 2017, and secured by a deed of trust for 1716 Broadway, Oakland, California ("Oakland Property").

   b. Loan 0037 for $600,000 made on or about January 14, 2014, and secured by a first deed of trust against real property in Vacaville, Solano County.

   c. Loan 5910 for $736,608 made on or about August 15, 2017, and secured by a second deed of trust against the Vacaville real property.

5. The following were the loans to Moheb DMD:

   a. Loan 6105 for $852,500 made on or about March 12, 2018, not secured by any real property.

   b. Loan 1346 for $2,685,000 made on or about March 11, 2016, not secured by any real Property.

6. My problems with HomeStreet Bank began around October 2019 when it without warning moved the portfolio of seven loans to its Special Assets (distressed assets) Group. HomeStreet Bank did this even though none of the entities had ever missed any payments on the loans in over thirteen years. Prior to October 2019, on July 30, 2019, during discussions regarding documentation provided to HomeStreet, its Senior VP of Healthcare Lending reviewed the requested

DEBTOR'S DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

2018 year-end financial report submitted by my CPA. The SVP then only requested the 2018 tax return. Upon receiving clarification from the CPA, the SVP responded by email stating "[w]e're all good – thank you." At no point was I notified of having failed to provide any documentation or reports to HomeStreet Bank or that there were DSCR deficiencies for that period. Nevertheless, the loans were moved to distressed assets.

7.     Within weeks of HomeStreet reclassifying the loans as distressed, on November 4, 2019, it issued a Notice of Default citing allegedly past-due reporting violations that had never been discussed with me or previously requested by HomeStreet Bank or Silvergate Bank.  Attached as Exhibit "A" hereto is a true and correct copy of the Notices of Default that I received. The Notice of Default did not complaint of any missed payments.

8.     Then using this purported default as an excuse, HomeStreet Bank began its campaign to push my entities into a sweeping agreement that would cover all seven loans. There are approximately over 130 emails between HomeStreet and me which demonstrate a pattern of strategic pressure, half-promises, and selective information withholding to push me into executing the Omnibus Agreement. There were no negotiations in any meaningful sense. Terms were dictated to me and not discussed. Attached as Exhibit "B" is a true and correct copy of the Omnibus Agreement. This Omnibus Agreement cross-collateralized previously segregated loan obligations. *See* Ex. B, 8 "Universal Cross Default" ("Any default or event of default under this Agreement, or under the terms of any of the Loan Documents, shall be a default and event of default under this Agreement and all of the Loan Documents"). Loans secured by specific real estate assets were now linked across multiple properties and entities.

9.     The Omnibus Agreement also provided HomeStreet with additional security by requiring Media DDS to execute a junior deed of trust in favor of HomeStreet against the Oakland Property. Loan 5795 was already secured by the Oakland Property. Provision 6.8 of the Omnibus Agreement stated that "Media DDS shall pay for an appraisal of property located at 1716 Broadway Street, Oakland, California [] to be performed by an appraiser acceptable to Lender in Lender's sole discretion (the "Broadway Street Appraisal"). The Broadway Street Appraisal must be initiated within seven (7) days of this Agreement." The Omnibus Agreement was executed in mid-January

DEBTOR'S DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

2020, but the appraisal was not conducted until March 19, 2020. I had executed the Omnibus Agreement based on prior valuations of the Oakland Property. During the height of the COVID epidemic (which effectively closed the dental industry), the depreciated real estate returned a materially lower valuation. I had executed the agreement in reliance on prior valuations of the Oakland Property.

10. Shortly after signing the Omnibus Agreement, and at the height of the pandemic, HomeStreet Bank denied me access to Paycheck Protection Program ("PPP") funds in violation of SBA policy. During the ensuing shutdowns, the PPP funds were critical to meeting debt service obligations. I requested that the bank remove an autopay deduction from my account so that I could pay employees and contractors. Despite the risk this posed to me, I chose to do the correct thing to ensure employees and contractors were taken care of.

11. Then on May 7, 2020, two months after California declared a state of emergency, HomeStreet issued a Notice of Default. That notice alleged that the May 1st payment was not made for the following loans: 5910, 0037, 0045, 0053, 01346. I had qualified and requested the PPP funds to be able to continue both payments to employees and contractors as well as to service debt payments to HomeStreet Bank. The Notice of Default continued that HomeStreet Bank had not received the deed of trust for the Oakland Property within the "required timeframe", which purportedly constituted a material default. The Notice of Default also stated that because the borrowers allegedly defaulted, HomeStreet Bank had cancelled the application for PPP funds. Attached as Exhibit "C" hereto is a true and correct copy of that Notice of Default.

12. On May 21, I received a Notice of Acceleration, in which HomeStreet Bank asserted that unpaid principal and accrued interest on each of the five loans was immediately due. On or about May 27, 2020, I made the past due monthly payments, but the bank declined to accept the money, asserting that the payments were insufficient to reinstate the loans.

13. HomeStreet has foreclosed on the Maricopa Property, the Napa Property, and the Vacaville Property.

14. On June 24, 2020, HomeStreet Bank filed its Complaint for (1) Breach of Promissory Note and Loan Agreement (Loan 6105) – against Moheb DMD; (2) Breach of Guaranty (Loan 6015)

DEBTOR'S DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

1  – against me; (3) Breach of Promissory Note and Loan Agreement (Loan 1346) against Moheb

2  DMD; (4) Breach of Guaranty (Loan 1346) – against me; and (5) Specific Performance on the

3  Omnibus Agreement in Connection with the Broadway Street DOT ("Oakland Property") against

4  Media DDS ("Alameda Litigation").  Attached as Exhibit "D" is a true and correct copy of the

5  Complaint. The exhibits have been omitted due to their volume.

6       15.    In the lawsuit, I retained Richard L. Antognini, Esq., to represent me and my business

7  entities in that action. Mr. Antognini, however, failed to conduct discovery, assert any affirmative

8  defenses, or file counterclaims on our behalf.

9       16.    Most critically, on July 22, 2022, HomeStreet moved for summary judgment and the

10  hearing was set for October 7, 2022. Mr. Antognini failed to oppose the motion despite telling me

11  on August 17, 2022, that he was working hard on opposing it. At that time, he also told me that he

12  was drafting a complaint against HomeStreet.

13       17.    Mr. Antognini did not however file an opposition to the summary judgment motion.

14  Instead, at 1:00 a.m., he filed a request for a two-week continuance, stating that he was unable to

15  file an opposition because of medical issues that prevented him from working. The court did not

16  continue the hearing. The October 7, 2022 hearing was held and summary judgment was granted.

17  Attached as Exhibit "E" hereto is a true and correct copy of the minutes of that hearing. In those

18  minutes, the Judge states that the motion was "unopposed" and repeatedly states that the facts were

19  "undisputed[.]" The facts were disputed but they were not presented to the Alameda Court because

20  of Mr. Antognini's negligence and complete failure to perform his obligations on behalf of his

21  clients.

22       18.    Judgment was entered against Media DDS, Moheb DMD, and me on December 20,

23  2022 in the amount of $3,069,563. I did not know at this time that judgment was entered against me

24  and nor did I know that Mr. Antognini had failed to file an opposition to the summary judgment

25  motion. The first time that I became aware of a judgment having been entered was on November

26  29, 2023, when a realtor that I had engaged to potentially sell one of my properties discovered an

27  abstract of judgment on the preliminary title report.

28

DEBTOR'S DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

19. I recall receiving a call in May 2023 from Mr. Antognini in which he said that everything in the Alameda Litigation was under control and that the Judge had continued the trial date.

20. On June 20, 2023, unbeknownst to me, Mr. Antognini filed a motion to vacate the judgment. Attached as Exhibit "F" is a true and correct copy of Mr. Antognini's declaration in support of the motion to vacate. In that, he fully admits that not filing the opposition was all his fault. The declaration is a complete admission of guilt.

21. After I came to know of the judgment, I managed to get hold of Mr. Antognini, he explained to me his mental health issues and that he had appealed the judgment. He referred me to RHM Law, specifically Mr. Resnick.

22. Although Mr. Antognini filed a notice of appeal on February 16, 2023, he failed to file an opening brief -- after obtaining seven extensions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on the 28th day of October 2025, in Lafayette, California.

*/s/ Alireza Moheb*

Alireza Moheb

DEBTOR'S DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

# EXHIBIT A



HomeStreet Bank
Credit Administration
601 Union Street, Ste. 2100
Seattle, WA 98101
Mark Johnson
mark.johnson@homestreet.com

**SENT VIA FIRST CLASS U.S. MAIL, RETURN RECEIPT REQUESTED**

November 4, 2019

Doctor Realty, LLC
c/o Alireza Moheb
1844 San Miguel Drive, Suite 208
Walnut Creek, CA 94596
(Borrower)

Alireza Moheb
831 Acalanes
Lafayette, CA 94549
(Individual Guarantor)

Moheb, DMD, Inc.
c/o Alireza Moheb
1844 San Miguel Drive, Suite 208
Walnut Creek, CA 94596
(Corporate Guarantor)

## NOTICE OF DEFAULT AND RESERVATION OF RIGHTS

Re:     Loan Nos. 3020100045 and 3020100053 (the "**Loan**").

Dear Dr. Moheb,

We are writing to you in your respective capacities as principal of Doctor Realty, LLC ("**Borrower**"), as principal of Moheb, DMD, Inc. ("**Corporate Guarantor**"), and as Individual Guarantor of Borrower's obligations to HomeStreet Bank ("**Lender**") successor in interest to Silvergate Bank with respect to the Loan. The purpose of this letter is to provide formal written notice of certain defaults under the Loans, and to reserve the rights of Lender. All documents and instruments pertaining to the Loans, including all amendments, modifications, extensions, renewals and restatements, are collectively referred to herein as the "**Loan Documents**."

**IDENTIFICATION OF LOAN DEFAULTS**:

As of the date of this letter, Borrower and Guarantor are in default under the Loan Documents based upon the following:

(1) The Loan Documents require Borrower to provide Lender with the following:

- For Borrower, within thirty (30) days after each quarter ending, a company prepared financial statement. Borrower is currently past due for the 3/31/18, 6/30/18, 9/30/18, 3/31/19, 6/30/19, and 9/30/19 quarterly financial statements.
- For Borrower, within 90 days after fiscal yearend, a CPA Compiled financial statement.  Borrower is currently past due for the 12/31/18 CPA Compiled financial statement.
- For Borrower, within 15 days after filing, a business tax return.  Borrower is past-due for its 2017 tax return.
- For Guarantors, see NOD addressed to Corporate Guarantor included herewith.

(2) The Loan Documents require Borrower to provide to Lender a Compliance Certificate, each quarter, certifying that as of the date of the Certificate, no Events of Default exists under the loan agreement(s). Borrower has failed to provide such certificates.

Borrower and Guarantor failed to timely submit the materials identified above and failed to maintain the minimum required Ratios.  This constitutes multiple defaults under the Loan Documents.  This letter is Lender's demand that you cure the above-referenced defaults.  If the Loan Documents provide for a cure period, you must cure the defaults prior to the expiration of any applicable cure period.  If you fail to timely cure the defaults, Lender may pursue its contractual and legal remedies.

FDIC 

**RESERVATION OF RIGHTS**

Nothing contained in this letter shall be deemed to: (1) prejudice Lender's rights and remedies against any borrower or any guarantor with respect to the Loan; (2) constitute a waiver of or an election of remedies pertaining to any breaches or defaults under the Loan Documents, including the event(s) of default identified above; (3) constitute a waiver of or an election of remedies pertaining to any of Lender's rights and remedies against any borrower or any guarantor with respect to the Loan; or (4) constitute an agreement on the part of Lender to extend the time for payment or performance under such documents, or to forbear from exercising any of its rights under such documents, or to forbear from taking any other action permitted by law or otherwise, all of which Lender hereby expressly reserves. Lender's acceptance of partial or future payments other than payment in full is without wavier.

**We may report information about your account to credit bureaus. Any insolvency, delinquency, late payment, or default on your account may be included in your credit report.**

CALIFORNIA TRANSACTIONS: A CONTRACT, PROMISE, UNDERTAKING OR COMMITMENT TO LOAN MONEY, TO GRANT, OR EXTEND CREDIT, IN AN AMOUNT GREATER THAN $100,000.00, NOT PRIMARILY FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES MADE BY A PERSON ENGAGED IN THE BUSINESS OF LENDING OR ARRANGING FOR THE LENDING OF MONEY OR EXTENDING CREDIT IS INVALID, UNLESS IT, OR SOME NOTE OR MEMORANDUM THEREOF, IS IN WRITING AND SUBSCRIBED BY THE PARTY TO BE CHARGED OR BY THE PARTY'S AGENT. IF THE LOAN IS SECURED SOLELY BY RESIDENTIAL PROPERTY CONSISTING OF ONE TO FOUR DWELLING UNITS IT SHALL BE DEEMED FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES.

If you have any questions regarding this matter, or if you would like to discuss your current status or Loan, please contact me at your earliest convenience at 206-753-2078.

Sincerely,

Mark Johnson, VP
Credit Administration



**HomeStreet Bank**
Credit Administration
601 Union Street, Ste. 2100
Seattle, WA 98101
Mark Johnson
mark.johnson@homestreet.com

**SENT VIA FIRST CLASS U.S. MAIL, RETURN RECEIPT REQUESTED**

November 4, 2019

| | | |
|---|---|---|
| Media DDS, LLC | Alireza Moheb | Moheb, DMD, Inc. |
| c/o Alireza Moheb | 831 Acalanes | c/o Alireza Moheb |
| 1844 San Miguel Drive, Suite 208 | Lafayette, CA 94549 | 1844 San Miguel Drive, Suite |
| Walnut Creek, CA 94596 | (Individual Guarantor) | 208 |
| (Borrower) | | Walnut Creek, CA 94596 |
| | | (Corporate Guarantor) |

## NOTICE OF DEFAULT AND RESERVATION OF RIGHTS

Re:  Loan Nos. 3000005795, 3000005910 and 3020100037 (the "**Loan**").

Dear Dr. Moheb,

We are writing to you in your respective capacities as principal of Media DDS, LLC ("**Borrower**"), as principal of Moheb, DMD, Inc. ("**Corporate Guarantor**"), and as Individual Guarantor of Borrower's obligations to HomeStreet Bank ("**Lender**") successor in interest to Silvergate Bank with respect to the Loan. The purpose of this letter is to provide formal written notice of certain defaults under the Loans, and to reserve the rights of Lender. All documents and instruments pertaining to the Loans, including all amendments, modifications, extensions, renewals and restatements, are collectively referred to herein as the "**Loan Documents**."

**IDENTIFICATION OF LOAN DEFAULTS:**

As of the date of this letter, Borrower and Guarantor are in default under the Loan Documents based upon the following:

(1) The Loan Documents require Borrower to provide Lender with the following:

- For Borrower, within thirty (30) days after each quarter ending, a company prepared financial statement. Borrower is currently past due for the 3/31/18, 6/30/18, 9/30/18, 3/31/19, 6/30/19, and 9/30/19 quarterly financial statements.
- For Borrower, within 90 days after fiscal yearend, a CPA Compiled financial statement.  Borrower is currently past due for the 12/31/18 CPA Compiled financial statement.
- For Borrower, within 10 days after filing, a business tax return.  Borrower is past-due for its tax returns for each year since loan inception.  (It is noted that Individual Guarantor discloses Borrower's profit and losses in Schedule E of his personal tax returns.)
- For Guarantors, see NOD addressed to Corporate Guarantor included herewith.

(2) The Loan Documents require Borrower to maintain two Debt Service Coverage Ratios ("Ratio") as indicated below:

    a.  The Ratio for loan nos. ending 0037 and 5910 is to be not less than 1.50 to 1.00 measured quarterly.  It is unknown for FYE 12/31/18 and for the three quarters to date due to lack of financial reporting.

    b.  Loan ending 5795 is to have a Ratio of not less than 1.25, measured annually, for the property located at 1716 Broadway, Oakland, CA.  As of 12/31/18, this Ratio was .29.

**FDIC** 

(3) The Loan Documents require Borrower to provide to Lender a Compliance Certificate, for each covenant period, certifying that as of the date of the Certificate, no Events of Default exists under the loan agreement(s).  Borrower has failed to provide such certificates.

Borrower and Guarantor failed to timely submit the materials identified above and failed to maintain the minimum required Ratios.  This constitutes multiple defaults under the Loan Documents.  This letter is Lender's demand that you cure the above-referenced defaults.  If the Loan Documents provide for a cure period, you must cure the defaults prior to the expiration of any applicable cure period.  If you fail to timely cure the defaults, Lender may pursue its contractual and legal remedies.

**RESERVATION OF RIGHTS**

Nothing contained in this letter shall be deemed to: (1) prejudice Lender's rights and remedies against any borrower or any guarantor with respect to the Loan; (2) constitute a waiver of or an election of remedies pertaining to any breaches or defaults under the Loan Documents, including the event(s) of default identified above; (3) constitute a waiver of or an election of remedies pertaining to any of Lender's rights and remedies against any borrower or any guarantor with respect to the Loan; or (4) constitute an agreement on the part of Lender to extend the time for payment or performance under such documents, or to forbear from exercising any of its rights under such documents, or to forbear from taking any other action permitted by law or otherwise, all of which Lender hereby expressly reserves. Lender's acceptance of partial or future payments other than payment in full is without wavier.

**We may report information about your account to credit bureaus. Any insolvency, delinquency, late payment, or default on your account may be included in your credit report.**

CALIFORNIA TRANSACTIONS: A CONTRACT, PROMISE, UNDERTAKING OR COMMITMENT TO LOAN MONEY, TO GRANT, OR EXTEND CREDIT, IN AN AMOUNT GREATER THAN $100,000.00, NOT PRIMARILY FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES MADE BY A PERSON ENGAGED IN THE BUSINESS OF LENDING OR ARRANGING FOR THE LENDING OF MONEY OR EXTENDING CREDIT IS INVALID, UNLESS IT, OR SOME NOTE OR MEMORANDUM THEREOF, IS IN WRITING AND SUBSCRIBED BY THE PARTY TO BE CHARGED OR BY THE PARTY'S AGENT.  IF THE LOAN IS SECURED SOLELY BY RESIDENTIAL PROPERTY CONSISTING OF ONE TO FOUR DWELLING UNITS IT SHALL BE DEEMED FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES.

If you have any questions regarding this matter, or if you would like to discuss your current status or Loan, please contact me at your earliest convenience at 206-753-2078.

Sincerely,

Mark Johnson, VP
Credit Administration

# EXHIBIT B



## OMNIBUS LOAN MODIFICATION AGREEMENT

This OMNIBUS LOAN MODIFICATION AGREEMENT (the "**Agreement**"), dated as of this ___ day of January, 2020 (the "**Effective Date**"), is by and between HOMESTREET BANK, a Washington state chartered commercial bank, successor in interest to Silvergate Bank with respect to the loans that are the subject of this Agreement ("**Lender**"); and Doctor Realty LLC, a California limited liability company ("**Doctor Realty**"), Media DDS, LLC, a California limited liability company ("**Media DDS**"), and Moheb, DMD, Inc., a California corporation ("**Moheb DMD**"). Doctor Realty, Media DDS, and Moheb DMD are also each referred to herein individually as "**Borrower**" and collectively as "**Borrowers**". Lender and Borrowers are also referred to herein individually as a "Party" and collectively as the "Parties."

RECITALS

A. Doctor Realty is indebted to Lender in connection with two loans. These loans are identified by numbers "**\*0045**" and "**\*0053**" respectively.

B. Loan \*0045 is evidenced by various documents and instruments including, but not limited to: (i) that certain Promissory Note dated January 15, 2014, in the original principal amount of $319,000.00, executed by Doctor Realty in favor of Lender (the "**Loan \*0045 Note**"); (ii) that certain Business Loan Agreement dated January 15, 2014 (the "**Loan \*0045 BLA**"); (iii) that certain Commercial Security Agreement dated January 15, 2014, identifying Doctor Realty as "Grantor" (the "**Loan \*0045 CSA #1**"); (iv) that certain Commercial Security Agreement dated January 15, 2014, identifying Unlimited Smiles LLC as "Grantor" (the "**Loan \*0045 CSA #2**"); (v) that certain Commercial Guaranty dated August 9, 2017, executed by Moheb DMD and pertaining to all of Doctor Realty's obligations to Lender (the "**Loan \*0045 Moheb DMD Guaranty**"); (vi) that certain Commercial Guaranty dated January 15, 2014, executed by Unlimited Smiles and pertaining to all of Doctor Realty's obligations to Lender (the "**Loan \*0045 Unlimited Smiles Guaranty**"); (vii) that certain Commercial Guaranty dated January 15, 2014, executed by Alireza Moheb and pertaining to all of Doctor Realty's obligations to Lender (the "**Loan \*0045 Alireza Moheb Guaranty**"); (viii) that certain Deed of Trust dated January 15, 2014, identifying Doctor Realty as "Trustor", recorded on January 30, 2014, in the real property records of Maricopa County, Arizona, as Instrument #20140065928 (the "**Loan \*0045 DOT**"); (ix) that certain Assignment of Rents dated January 15, 2014, identifying Doctor Realty as "Grantor", recorded on January 30, 2014, in the real property records of Maricopa County, Arizona, as Instrument #20140065929 ("**Loan \*0045 AOR**"); (x) that certain Hazardous Substances Certificate and Indemnity Agreement dated August 9, 2017, executed by Doctor Realty, Alireza Moheb, and Moheb DMD in favor of Lender (the "**Loan \*0045 HSA")**; (xi) that certain Modification of Deed of Trust and Assignment of Rents dated August 9, 2017, recorded on November 30, 2017, in the real property records of Maricopa County, Arizona, as Instrument #20170888283 (the "**Loan \*0045 DOT Modification**"); and (xii) that certain Loan Extension and Modification Agreement dated August 9, 2017 (the "**Loan \*0045 Modification Agreement**"). The foregoing documents and instruments, along with all other documents and instruments evidencing Loan \*0045, and all amendments, modifications, restatements, renewals, and extensions of the foregoing, are collectively referred to herein as the "**Loan \*0045 Loan Documents**".

Case: 24-40713    Doc# 147-2    Filed: 10/29/25    Entered: 10/29/25 10:17:00    Page 13 of 64

C.      Loan *0053 is evidenced by various documents and instruments including, but not limited to: (i) that certain Promissory Note dated December 12, 2013, in the original principal amount of $435,000.00, executed by Doctor Realty in favor of Lender (the "**Loan 80053 Note**"); (ii) that certain Business Loan Agreement dated December 12, 2013 (the "**Loan *0053 BLA**"); (iii) that certain Commercial Security Agreement dated December 12, 2013, identifying Doctor Realty as the "Grantor") (the "**Loan *0053 CSA**"); (iv) that certain Commercial Guaranty dated December 12, 2013, executed by Alireza Moheb, DMD, Inc., pertaining to all of Doctor Realty's obligations to Lender (the "**Loan *0053 Alireza Moheb, DMD, Inc. Guaranty**"); (v) that certain Commercial Guaranty dated August 9, 2017, executed by Moheb DMD, pertaining to all of Doctor Realty's obligations to Lender (the "**Loan *0053 Moheb DMD, Guaranty**"); (vi) that certain Commercial Guaranty dated December 12, 2013, executed by Alireza Moheb and pertaining to all of Doctor Realty's obligations to Lender (the "**Loan *0053 Alireza Moheb Guaranty**"); (vii) that certain Deed of Trust dated December 12, 2013, identifying Doctor Realty as "Trustor", recorded on December 26, 2013, in the real property records of Napa County, California, as Instrument #2013-0035138 (the "**Loan *0053 DOT**"); (viii) that certain Assignment of Rents dated December 12, 2013, identifying Doctor Realty as "Grantor", recorded on December 26, 2013, in the real property records of Napa County, California, as Instrument #2013-0035139 (the "**Loan *0053 AOR**"); (ix) that certain Hazardous Substances Certificate and Indemnity dated August 9, 2017, executed by Doctor Realty, Alireza Moheb, and Moheb DMD in favor of Lender (the "**Loan *0053 HSA**"); (x) that certain Modification of Deed of Trust and Assignment of Rents dated August 9, 2017, recorded on December 1, 2017, in the real property records of Napa County, California, as Instrument #2017-0026562 (the "**Loan *0053 DOT Modification**"); and (xi) that certain Loan Extension and Modification Agreement dated August 9, 2017 (the "**Loan *0053 Modification Agreement**"). The foregoing documents and instruments, along with all other documents and instruments evidencing Loan *0053, and all amendments, modifications, restatements, renewals, and extensions of the foregoing, are collectively referred to herein as the "**Loan *0053 Loan Documents**".

D.      Media DDS is indebted to Lender in connection with three loans. These loans are identified by numbers "**\*5795**", "**\*5910**", and "**\*0037**" respectively.

E.      Loan *5795 is evidenced by various documents and instruments including, but not limited to: (i) that certain Promissory Note dated May 30, 2017, in the original principal amount of $1,550,000.00, executed by Media DDS in favor of Lender (the "**Loan *5795 Note**"); (ii) that certain Business Loan Agreement dated May 30, 2017, and amended and restated by that certain Business Loan Agreement dated August 9, 2017 (collectively, the "**Loan *5795 BLA**"); (iii) that certain Commercial Guaranty dated May 30, 2017, executed by Alireza Moheb in favor of Lender, pertaining to all of Media DDS's obligations to Lender (the "**Loan *5795 Alireza Moheb Guaranty**"); (iv) that certain Commercial Guaranty dated May 30, 2017, executed by Moheb DMD in favor of Lender, pertaining to all of Media DDS's obligations to Lender (the "**Loan *5795 Moheb DMD Guaranty**"); (v) that certain Commercial Security Agreement dated May 30, 2017, identifying Media DDS as "Grantor" (the "**Loan *5795 CSA**"); (vi) that certain Deed of Trust dated May 30, 2017, identifying Media DDS as "Trustor", recorded on June 14, 2017, in the real property records of Alameda County, California, as Instrument #2017129597 (the "**Loan *5795 DOT**"); (vii) that certain Assignment of Rents May 30, 2017, identifying Media DDS as "Grantor", recorded on June 14, 2017, in the real property records of Alameda County, California, as Instrument #2017129598 (the "**Loan *5795 AOR**"); and (viii) that certain Hazardous Substances Certificate and Indemnity Agreement dated May 30, 2017, executed by Media DDS, Alireza Moheb, and Moheb DMD (the "**Loan *5795 HSA**"). The foregoing documents and instruments, along with all other documents and instruments evidencing Loan *5795, and all amendments, modifications, restatements, renewals, and extensions of the foregoing, are collectively referred to herein as the "**Loan *5795 Loan Documents**".

OMNIBUS LOAN MODIFICATION AGREEMENT - 2

F.    Loan *5910 is evidenced by various documents and instruments including, but not limited to: (i) that certain Promissory Note dated August 15, 2017, in the original principal amount of $736,608.00, executed by Media DDS in favor of Lender (the "**Loan *5910 Note**"); (ii) that certain Business Loan Agreement dated August 15, 2017 (the "**Loan *5910 BLA**"); (iii) that certain Commercial Guaranty dated August 15, 2017, executed by Moheb DMD in favor of Lender, pertaining to all of Media DDS's obligations to Lender (the "**Loan *5910 Moheb DMD Guaranty**") (iv) that certain Commercial Guaranty dated August 15, 2017, executed by Alireza Moheb in favor of Lender, pertaining to all of Media DDS's obligations to Lender (the "**Loan *5910 Alireza Moheb Guaranty**"); (v) that certain Commercial Security Agreement dated August 15, 2017, identifying Media DDS as "Grantor" (the "**Loan *5910 CSA #1**"); (vi) that certain Commercial Security Agreement dated August 15, 2017, identifying Moheb DMD as "Grantor" (the "**Loan *5910 CSA #2**"); (vii) that certain Deed of Trust dated August 15, 2017, identifying Media DDS as "Trustor", recorded on November 16, 2017, in the real property records of Solano County, California, as Instrument #201700099151 (the "**Loan *5910 DOT**"); (viii) that certain Assignment of Rents dated August 15, 2017, identifying Media DDS as "Grantor", recorded on November 16, 2017, in the real property records of Solano County, California, as Instrument #201700099152 (the "**Loan *5910 AOR**"); (ix) that certain Hazardous Substances Certificate and Indemnity Agreement dated August 9, 2017, executed by Media DDS, Alireza Moheb, and Moheb DMD (the "**Loan *5910 HSA #1**"); and (x) that certain Hazardous Substances Certificate and Indemnity Agreement dated August 15, 2017, executed by Media DDS, Alireza Moheb, and Moheb DMD (the "**Loan *5910 HSA #2**"). The foregoing documents and instruments, along with all other documents and instruments evidencing Loan *5910, and all amendments, modifications, restatements, renewals, and extensions of the foregoing, are collectively referred to herein as the "**Loan *5910 Loan Documents**".

G.    Loan *0037 is evidenced by various documents and instruments including, but not limited to: (i) that certain Promissory Note dated January 14, 2014, in the original principal amount of $600,000.00, executed by Media DDS in favor of Lender (the "**Loan *0037 Note**"); (ii) that certain Business Loan Agreement date January 14, 2014 (the "**Loan *0037 BLA**"); (iii) that certain Commercial Guaranty dated August 9, 2017, executed by Moheb DMD and pertaining to all of Media DDS's obligations to Lender (the "**Loan *0037 Moheb DMD Guaranty**"); (iv) that certain Commercial Guaranty dated January 14, 2014, executed by A. Moheb DMD, pertaining to all of Media DDS's obligations to Lender (the "**Loan *0037 A. Moheb DMD Guaranty**"); (v) that certain Commercial Guaranty dated January 14, 2014, executed by Alireza Moheb, DMD Inc., pertaining to all of Media DDS's obligations to Lender (the "**Loan *0037 Alireza Moheb, DMD, Inc. Guaranty**"); (vi) that certain Commercial Guaranty dated January 14, 2014, executed by Alireza Moheb and pertaining to all of Media DDS's obligations to Lender (the "**Loan *0037 Alireza Moheb Guaranty**"); (vii) that certain Commercial Security Agreement dated January 14, 2014, identifying Media DDS as the "Grantor" ("**Loan *0037 CSA**"); (viii) that certain Deed of Trust dated January 15, 2014, identifying Media DDS as "Trustor", recorded on January 31, 2014, in the real property records of Solano County, California, as Instrument #201400006597 (the "**Loan *0037 DOT**"); (ix) that certain Assignment of Rents dated January 14, 2014, identifying Media DDS as "Grantor", recorded on January 31, 2014, in the real property records of Solano County, California, as Instrument #201400006598 ("**Loan *0037 AOR**"); (x) that certain Modification of Deed of Trust and Assignment of Rents dated August 9, 2017, recorded on December 1, 2017, in the real property records of Solano County, California, as Instrument #201700103518 (the "**Loan *0037 DOT Modification**"); and (xi) that certain Loan Extension and Modification Agreement dated August 9, 2017 (the "**Loan *0037 Modification Agreement**"). The foregoing documents and instruments, along with all other documents and instruments evidencing Loan *0037, and all amendments, modifications, restatements, renewals, and extensions of the foregoing, are collectively referred to herein as the "**Loan *0037 Loan Documents**".

OMNIBUS LOAN MODIFICATION AGREEMENT - 3

H.     Moheb DMD is indebted to Lender in connection with two loans.  The loans are identified by numbers "**6105**" and "**1346**".

I.     Loan *6105 is evidenced by various documents and instruments including, but not limited to: (i) that certain Promissory Note dated March 12, 2018, in the original principal amount of $852,500.00, executed by Moheb DMD in favor of Lender (the "**Loan *6105 Note**"); (ii) that certain Business Loan Agreement dated March 12, 2018 (the "**Loan *6105 BLA**"); (iii) that certain Commercial Security Agreement dated March 12, 2018, identifying Moheb DMD as "Grantor" (the "**Loan *6105 CSA**"); and (iv) that certain Commercial Guaranty dated March 12, 2018, executed by Alireza Moheb in favor of Lender, pertaining to all of Moheb DMD's obligations to Lender (the "**Loan *6105 Alireza Moheb Guaranty**").  The foregoing documents and instruments, along with all other documents and instruments evidencing Loan *6105, and all amendments, modifications, restatements, renewals, and extensions of the foregoing, are collectively referred to herein as the "**Loan *6105 Loan Documents**".

J.     Loan *1346 is evidenced by various documents and instruments including, but not limited to: (i) that certain Promissory Note dated March 11, 2016, in the original principal amount of $2,685,000.00, executed by Moheb DMD and other entities subsequently merged into Moheb DMD (the "**Loan *1346 Note**"); (ii) that certain Business Loan Agreement dated March 11, 2016 (the "**Loan *1346 BLA**"); (iii) that certain Commercial Security Agreement dated March 11, 2016, identifying Unlimited Smiles as "Grantor" (the "**Loan *1346 CSA #1**"); (iv) that certain Commercial Security Agreement dated March 11, 2016, identifying A. Moheb DMD, Moheb DMD, Alireza Moheb DMD Inc., and Dental Health Solutions, Inc. as "Grantor" (the "**Loan *1346 CSA #2**"); (v) that certain Commercial Guaranty dated March 11, 2016, executed by Dental Health Solutions, Inc. in favor of Lender, pertaining to all of A. Moheb DMD's, Unlimited Smiles', Moheb DMD's , and Alireza Moheb DMD Inc.'s obligation to Lender (the "**Loan *1346 Dental Solutions Guaranty**"); (vi) that certain Commercial Guaranty dated March 11, 2016, executed by Alireza Moheb in favor of Lender, pertaining to all of A. Moheb DMD's, Unlimited Smiles', Moheb DMD's , and Alireza Moheb DMD Inc.'s obligation to Lender (the "**Loan *1346 Alireza Moheb Guaranty**"); and (vii) that certain Loan Extension and Modification Agreement dated August 9, 2017 (the "Loan *1346 Modification").  The foregoing documents and instruments, along with all other documents and instruments evidencing Loan *1346, and all amendments, modifications, restatements, renewals, and extensions of the foregoing, are collectively referred to herein as the "**Loan *1346 Loan Documents**".

K.     The Loan *0045 Loan Documents, Loan *0053 Loan Documents, Loan *5795 Loan Documents, Loan *5910 Loan Documents, Loan *0037 Loan Documents, Loan *6105 Loan Documents, and Loan *1346 Loan Documents are collectively referred to herein as the "**Loan Documents**".

L.     Borrowers have requested that Lender provide Borrower with certain financial accommodations, including a period of interest-only payments, that will enable Borrower to address certain business issues.

M.     In response to Borrower's request, and in reliance upon Borrower's representations made to Lender in support thereof, Lender has agreed to modify the Loan Documents, upon and subject to the terms and conditions, and for the purposes, all as more particularly set forth and described in this Agreement herein below.

**AGREEMENT**

OMNIBUS LOAN MODIFICATION AGREEMENT - 4

NOW THEREFORE, for good and valuable consideration, the receipt and adequacy of which being hereby acknowledged, and in consideration of the mutual promises set forth in this Agreement, the Parties agree as follows:

1.    ADOPTION OF RECITALS.  The recitals set forth above are adopted as the agreement of the Parties, and the facts set forth therein are acknowledged and agreed to be true, accurate and complete.

2.    CONDITIONS PRECEDENT.  The following are conditions precedent to Lender's obligations under this Agreement, and Lender will not execute this Agreement until each condition has been satisfied, as determined by Lender in its sole, absolute, and unreviewable discretion.  Such conditions shall be satisfied by Borrower on or before the Effective Date.

2.1    DOCUMENTATION.  Lender shall have received in form and substance satisfactory to Lender, each of the following:

(a)    an original of this Agreement duly executed by Borrowers and any guarantor of Borrowers' obligations to Lender; and

(b)    fully executed copies of any and all other resolutions, documents, and agreements as Lender may require under this Agreement or to effectuate the objectives of this Agreement; and

(c)    copies of all insurance policies applicable to Lender's collateral identified in the Loan Documents, and, to the extent such insurance policies currently in place are inadequate, as determined by the exercise of Lender's reasonable discretion pursuant to the Loan Documents, copies of such further and additional insurance policies as requested by Lender.

2.2    REPRESENTATIONS AND WARRANTIES TRUE AND CORRECT.  The representations and warranties contained herein shall be true and correct on and as of the execution of this Agreement by all Parties hereto.

2.3    APPROVAL OF LENDER'S COUNSEL AND MANAGEMENT.  All business and legal matters relating or incidental to this Agreement shall be satisfactory to Lender's counsel and Lender's management.

3.    REPRESENTATIONS, WARRANTIES, AND COVENANTS.  Each Borrower hereby represents, warrants, acknowledges, and covenants that each of the following is, and shall be, true and correct, and that each of the following are valid and continuing and shall survive the execution of this Agreement and any termination or expiration of the forbearance period provided for herein:

3.1    NO DEFAULTS.  No default, event of default, breach or failure of condition has occurred or exists, or would exist with notice or lapse of time, or both, under any of the Loan Documents.

3.2    NO PENDING OR THREATENED CLAIMS, SUITS, ACTIONS, OR INVESTIGATIONS.  There are no pending, or to the best of each Borrower's knowledge threatened actions, claims, investigations, suits, or proceedings that could have a material adverse effect on the financial condition or operation of any

OMNIBUS LOAN MODIFICATION AGREEMENT - 5

Borrower, other than those disclosed by Borrowers to Lender in writing prior to the date hereof, by or before any governmental authority, arbitrator, court, or administrative agency.

3.3    NO FURTHER, UNAUTHORIZED LIENS.  Borrower has not since its execution of the Loan Documents, and following its execution of this Agreement will not absent Lender's prior written consent, mortgage, pledge, grant or permit to be created a security interest in, or lien upon, all or any portion of Borrower's assets now owned or hereafter acquired, except any of the foregoing in favor of Lender.

3.4    REPRESENTATIONS, WARRANTIES, & COVENANTS TRUE AND CORRECT.  All representations, warranties, and covenants of Borrower in this Agreement and the other Loan Documents are true and correct and shall survive the execution of this Agreement and shall continue in full force and effect until the full and final payment, and satisfaction and discharge, of all obligations of Borrower to Lender subject to this Agreement.

3.5    VALIDITY OF LENDER'S LIENS.  This Agreement and the Loan Documents are valid and enforceable obligations of each Borrower (as applicable), and Lender has valid, enforceable, and duly perfected security interests in the collateral described herein and in the Loan Documents, and the security interests created by the Loan Documents are of the type and priority required under the Loan Documents.

3.6    [Reserved.]

3.7    RECITALS TRUE AND CORRECT.  The recitals set forth above are in all respects true and correct, and there is no material omission pertaining thereto.

3.8    NO CLAIMS, COUNTERCLAIMS, SETOFFS, OR DEFENSES.  Borrower and any guarantor of Borrower's obligations to Lender hold no claims, counterclaims, demands, setoffs or defenses of any kind whatsoever, against Lender, its subsidiaries and affiliates, and their predecessors and successors in interest, and their respective directors, officers, employees, shareholders, attorneys, representatives and agents.

3.9    [Reserved.]

3.10    GOOD STANDING AND AUTHORITY TO ACT.  Borrower is a duly organized entity, in good standing, organized under the laws of the state of its formation.  Borrower has full legal power and authority to execute and deliver this Agreement; the officer of Borrower and such other parties signing below have been duly authorized to execute and deliver this Agreement; this Agreement constitutes valid and binding obligations of Borrower in accordance with its terms; and neither the execution and delivery of this Agreement, nor the performance and observation of its terms, constitute a violation or conflict with the organizational documents or requirements of Borrower or such party, or any law or regulation applicable to them, or will result in a breach or contravention of any provision, or constitute a default under any agreement, instrument, article of incorporation (or similar document), shareholder or member agreement, bylaw, other document, law, or regulation binding upon or enforceable against Borrower or such party.

3.11    LENDER'S GOOD FAITH; NON-RELIANCE BY BORROWER.  Lender, any predecessor in interest to Lender, and their subsidiaries and affiliates, and their respective directors, officers, employees, shareholders, attorneys, representatives and agents have acted at all times in good faith in connection

OMNIBUS LOAN MODIFICATION AGREEMENT - 6

with their administration, performance, and enforcement of the Loan Documents and in their negotiations in connection with this Agreement. Borrower has had a full and complete opportunity to consult with independent legal counsel of its choice concerning this Agreement. The negotiation and execution of this Agreement by Borrower was and is its free, voluntary, and knowing act, done without any misapprehension as to the effect hereof, without any coercion, duress, overreaching or any other misconduct by Lender or any agent of Lender, and without any reliance upon any data, information, representation, statement, or other information provided by Lender or any representative of Lender, except as expressly set forth in this Agreement.

3.12    LENDER'S RESERVATION OF RIGHTS.  Upon Borrower's breach of this Agreement or the Loan Documents, Lender is entitled to demand immediate payment of the amounts owing and collectible under the Loan Documents and to immediately enforce against Borrower and its property each and every one of the remedies provided herein and in the Loan Documents and available under applicable law, at Lender's election, including but not limited to recovery and sale of any collateral or leased property and collection of the entire balances owing under the Loan Documents, which are valid and fully enforceable in accordance with their terms. Borrower acknowledges that except to the extent the Loan Documents have been expressly modified herein, the Loan Documents remain fully enforceable according to their terms and Lender has reserved all of its rights and remedies with respect thereto.

3.13    LIMITS ON LENDER'S OBLIGATIONS.  Lender has not made any other funding commitments or other agreements to forbear, nor any other commitment, agreement, or understanding of any other kind to Borrower or any guarantor of Borrower's obligations to Lender, other than as expressly set forth in this Agreement. Neither this Agreement nor Lender's participation in any negotiations, either prior to the date hereof or hereafter shall: (i) create any obligation of Lender to modify, renew, compromise, extend, reinstate, or otherwise amend this Agreement or the Loan Documents; (ii) create any express or implied obligations on the part of Lender other than those expressly set forth in this Agreement, the Loan Documents, and any future written agreement signed by Lender's authorized representative, as applicable; (iii) constitute an express or implied waiver of any right or remedy provided under this Agreement or the Loan Documents, all of which rights and remedies are expressly reserved by Lender; (iv) constitute an agreement by Lender to refrain from taking any action that it may be entitled to take pursuant to this Agreement, the Loan Documents, or applicable law (except as expressly provided herein); or (v) constitute a waiver or cure of any default not expressly identified herein as a permitted default, whether or not such default is material, now existing or hereafter arising under this Agreement, the Loan Documents, or applicable law.

3.14    BORROWER'S AND GUARANTOR'S NAMES.  The names of Borrowers and any guarantors of the Borrowers' obligations to Lender, as they appear in this Agreement or any Loan Documents, are their true, correct, and complete legal name(s) and they each have not used any other names within the five (5) year period prior to the Effective Date.

3.15    CORRECTNESS OF FINANCIAL AND OTHER INFORMATION.  The financial statements and other information provided to Lender in the past or in the future pursuant to this Agreement or the Loan Documents has been and shall be: (i) complete, correct, and fairly present the financial condition of the subject party(ies); (ii) fully disclosing of all known liabilities of the subject party(ies) that are required to be reflected or reserved against under generally accepted accounting principles, whether liquidated or unliquidated, fixed or contingent; and (iii) prepared in accordance with generally accepted accounting principles.

OMNIBUS LOAN MODIFICATION AGREEMENT - 7

3.16    BORROWER'S SOLVENCY.  Each Borrower is solvent in that the booked value of its assets exceeds the booked value of its liabilities.

3.17    [Reserved.]

3.18    [Reserved.]

3.19    [Reserved.]

3.20    FURTHER ACTS AND BORROWER COOPERATION.  Borrower and any guarantor of Borrower's obligations to Lender shall cooperate with Lender, at their own expense, with respect to the matters addressed in this Agreement.  Upon Lender's request, Borrower shall duly execute and deliver, or cause to be duly executed and delivered, to Lender such further instruments, agreements, and documents, and do or cause to be done such further acts as may be necessary or proper in the reasonable opinion of Lender to carry out more effectively the provisions of this Agreement or the Loan Documents, including without limitation by granting Lender or its representatives access to Borrower's facilities, books, and records, and allowing Lender or its representatives to monitor Borrower's operations, cash flow, and financial performance for all purposes, including its performance relative to budgeted and/or forecasted performance.

3.21    FINANCIAL REPORTING AND ACCESS TO INFORMATION.  Borrower shall provide Lender with all financial information, reports, disclosures, or other similar information reasonably requested by Lender or required by the Loan Documents, and to do so within the timeframes established by the applicable Loan Documents, or within a reasonable time after Lender makes a request for such information if no specific timeframe is identified by the Loan Documents.  Borrower shall continue to comply with the financial status, reporting, and disclosure requirements set forth in this Agreement and the other Loan Documents, except for those defined as defaults herein, if any.

4.    SHORT TERM PAYMENT RELIEF.  Notwithstanding any term of the Loan Documents to the contrary:

4.1    With respect to Loan *0045, Borrower shall make interest only payments for the months of February through July, 2020.  The interest payment for each of these months shall be reflected in a monthly statement.  Beginning with August 2020, the monthly payments due for Loan *0045 shall return fully amortizing payments of principal and interest based on the remaining term of Loan *0045.

4.2    With respect to Loan *0053, Borrower shall make interest only payments for the months of February through July, 2020.  The interest payment for each of these months shall be reflected in a monthly statement.  Beginning with August 2020, the monthly payments due for Loan *0053 shall return fully amortizing payments of principal and interest based on the remaining term of Loan *0053.

4.3    With respect to Loan *5795, Borrower shall make interest only payments for the

4.4     With respect to Loan *5910, Borrower shall make interest only payments for the months of February through July, 2020. The interest payment for each of these months shall be reflected in a monthly statement. Beginning with August 2020, the monthly payments due for Loan *5910 shall return fully amortizing payments of principal and interest based on the remaining term of Loan *5910.

4.5     With respect to Loan *0037, Borrower shall make interest only payments for the months of February through July, 2020. The interest payment for each of these months shall be reflected in a monthly statement. Beginning with August 2020, the monthly payments due for Loan *0037 shall return fully amortizing payments of principal and interest based on the remaining term of Loan *0037.

4.6     With respect to Loan *6105, Borrower shall make interest only payments for the months of February through July, 2020. The interest payment for each of these months shall be reflected in a monthly statement. Beginning with August 2020, the monthly payments due for Loan *6105 shall return fully amortizing payments of principal and interest based on the remaining term of Loan *6105.

4.7     With respect to Loan *1346, Borrower shall make interest only payments for the months of February through July, 2020. The interest payment for each of these months shall be reflected in a monthly statement. Beginning with August 2020, the monthly payments due for Loan *1346 shall return fully amortizing payments of principal and interest based on the remaining term of Loan *1346.

5.     CONSENT TO ADDITIONAL DEBT.   Lender consents to Borrower Moheb DMD incurring additional debt in an amount not to exceed $500,000.00, subject to the following conditions: (i) the debt must be in the form of a seller note; (ii) any security interest for the seller note must be subordinated to obligations owed to Lender, and be documented in a subordination agreement acceptable to Lender in Lender's sole discretion; (iii) the debt may be incurred solely for the purpose of acquiring a new dental practice, which new dental practice shall be within five (5) miles of Borrower Moheb DMD's current location at 4040 Alhambra Ave., Martinez, CA, and shall be merged with Moheb DMD's Alhambra Ave. practice; and (iv) the total purchase price of the acquired practice shall not exceed $550,000.00.

6.     MODIFICATION OF LOAN DOCUMENTS.

6.1     LOAN *0045.

a.     The debt service coverage ratio in the Loan *0045 BLA is hereby amended and restated in its entirety as follows:

> **Debt Service Coverage Ratio.** Borrower and Affiliated Parties shall maintain, on a combined basis for any fiscal year a minimum ratio of Cash Flow to Debt Service Requirement (the "Debt Service Coverage Ratio") of 1.30 to 1.00. "Cash Flow" is defined as the sum of: (A) Borrower's (1) net income (after tax), before interest expense, depreciation expenses, amortization expense, one-time expenses approved at the sole discretion of Lender, and rent expense paid to Affiliated Parties; minus (2) distributions or dividends for the measurement period, and (B) Affiliated Parties' rent income from sources other than Borrower. "Debt Service Requirement" is defined as: the sum of Borrower's and Affiliated Parties' (A) interest expense for the measurement period; and (B) the principal paid on long term debt for the measurement period, and (C) capital lease obligations paid during the measurement period.  The Debt Service Coverage Ratio shall be

measured annually from Borrower's and Affiliated Parties' annual financial statements (or tax returns) commencing with the fiscal year ending December 31, 2020. Compliance with the foregoing covenant shall be determined as set forth above and in accordance with Lender's standard underwriting practices. For purposes of this Agreement, "Affiliated Parties" means Media DDS, LLC and Moheb, DMD, Inc.

b.      The financial statement reporting requirement in the Loan *0045 BLA is hereby amended such that Borrower shall provide Lender with annual, company-prepared financial statements not later than sixty (60) days after Borrower's fiscal year end.

c.      The covenant section in the Loan *0045 BLA is hereby amended such that compliance certificates shall be required from Borrower and Affiliated Parties for all applicable financial, reporting, and other covenants. Compliance certificates shall be provided on a form acceptable to Lender, and with supporting documentation acceptable to Lender, in Lender's sole discretion. Compliance certificates shall be due no later than ninety (90) days after Borrower's and Affiliated Parties' fiscal year end.

d.      With respect to Loan *0045, neither Borrower nor Affiliated Parties shall be required to provide any quarterly financial reporting or any quarterly compliance certificates.

e.      So long an Affiliated Party (1) is reporting its earning in the tax return of an individual guarantor; and (2) such individual guarantor is providing annual tax returns to Lender in connection with a guaranty of the Loan or other indebtedness of Borrower to Lender, such Affiliated Party shall not be required to provide a separate income tax return to Lender, notwithstanding any language in the Loan Documents to the contrary.

6.1      <u>LOAN *0053</u>.

a.      The debt service coverage ratio in the Loan *0053 BLA is hereby amended and restated in its entirety as follows:

**Debt Service Coverage Ratio.** Borrower and Affiliated Parties shall maintain, on a combined basis for any fiscal year a minimum ratio of Cash Flow to Debt Service Requirement (the "Debt Service Coverage Ratio") of 1.30 to 1.00. "Cash Flow" is defined as the sum of: (A) Moheb, DMD, Inc.'s (1) net income (after tax), before interest expense, depreciation expenses, amortization expense, one-time expenses approved at the sole discretion of Lender, and rent expense paid to Borrower and/or Media DDS, LLC; minus (2) distributions or dividends for the measurement period, and (B) Borrower's and/or Media DDS, LLC's rent income from sources other than Moheb, DMD, Inc. "Debt Service Requirement" is defined as: the sum of Borrower's and Affiliated Parties' (A) interest expense for the measurement period; and (B) the principal paid on long term debt for the measurement period, and (C) capital lease obligations paid during the measurement period. The Debt Service Coverage Ratio shall be measured annually from Borrower's and Affiliated Parties' annual financial statements (or tax returns) commencing with the fiscal year ending December 31, 2020. Compliance with the foregoing covenant shall be determined as set forth above

and in accordance with Lender's standard underwriting practices.  For purposes of this Agreement, "Affiliated Parties" means Media DDS, LLC and Moheb, DMD, Inc.

b.      The financial statement reporting requirement in the Loan *0053 BLA is hereby amended such that Borrower shall provide Lender with annual, company-prepared financial statements not later than sixty (60) days after Borrower's fiscal year end.

c.      The covenant section in the Loan *0053 BLA is hereby amended such that compliance certificates shall be required from Borrower and Affiliated Parties for all applicable financial, reporting, and other covenants.  Compliance certificates shall be provided on a form acceptable to Lender, and with supporting documentation acceptable to Lender, in Lender's sole discretion.   Compliance certificates shall be due no later than ninety (90) days after Borrower's and Affiliated Parties' fiscal year end.

d.      With respect to Loan *0053, neither Borrower nor Affiliated Parties shall be required to provide any quarterly financial reporting or any quarterly compliance certificates.

e.      So long an Affiliated Party (1) is reporting its earning in the tax return of an individual guarantor; and (2) such individual guarantor is providing annual tax returns to Lender in connection with a guaranty of the Loan or other indebtedness of Borrower to Lender, such Affiliated Party shall not be required to provide a separate income tax return to Lender, notwithstanding any language in the Loan Documents to the contrary.

6.3     LOAN *5795.

a.      The debt service coverage ratio in the Loan *5795 BLA is hereby amended and restated in its entirety as follows:

> **Debt Service Coverage Ratio**.  Borrower and Affiliated Parties shall maintain, on a combined basis for any fiscal year a minimum ratio of Cash Flow to Debt Service Requirement (the "Debt Service Coverage Ratio") of 1.30 to 1.00.  "Cash Flow" is defined as the sum of: (A) Moheb, DMD, Inc.'s (1) net income (after tax), before interest expense, depreciation expenses, amortization expense, one-time expenses approved at the sole discretion of Lender, and rent expense paid to Borrower and/or Doctor Realty LLC; minus (2) distributions or dividends for the measurement period, and (B) Borrower's and/or Doctor Realty LLC's rent income from sources other than Moheb, DMD, Inc.  "Debt Service Requirement" is defined as: the sum of Borrower's and Affiliated Parties' (A) interest expense for the measurement period; and (B) the principal paid on long term debt for the measurement period, and (C) capital lease obligations paid during the measurement period.  The Debt Service Coverage Ratio shall be measured annually from Borrower's and Affiliated Parties' annual financial statements (or tax returns) commencing with the fiscal year ending December 31, 2020.  Compliance with the foregoing covenant shall be determined as set forth above and in accordance with Lender's standard underwriting practices.  For purposes of this Agreement, "Affiliated Parties" means Doctor Realty LLC and Moheb, DMD, Inc.

b.　　The financial statement reporting requirement in the Loan *5795 BLA is hereby amended such that Borrower shall provide Lender with annual, company-prepared financial statements not later than sixty (60) days after Borrower's fiscal year end.

c.　　The covenant section in the Loan *5795 BLA is hereby amended such that compliance certificates shall be required from Borrower and Affiliated Parties for all applicable financial, reporting, and other covenants.  Compliance certificates shall be provided on a form acceptable to Lender, and with supporting documentation acceptable to Lender, in Lender's sole discretion.   Compliance certificates shall be due no later than ninety (90) days after Borrower's and Affiliated Parties' fiscal year end.

d.　　With respect to Loan *5795, neither Borrower nor Affiliated Parties shall be required to provide any quarterly financial reporting or any quarterly compliance certificates.

e.　　So long an Affiliated Party (1) is reporting its earning in the tax return of an individual guarantor; and (2) such individual guarantor is providing annual tax returns to Lender in connection with a guaranty of the Loan or other indebtedness of Borrower to Lender, such Affiliated Party shall not be required to provide a separate income tax return to Lender, notwithstanding any language in the Loan Documents to the contrary.

6.4　　LOAN *5910.

a.　　The debt service coverage ratio in the Loan *5910 BLA is hereby amended and restated in its entirety as follows:

> **Debt Service Coverage Ratio**.  Borrower and Affiliated Parties shall maintain, on a combined basis for any fiscal year a minimum ratio of Cash Flow to Debt Service Requirement (the "Debt Service Coverage Ratio") of 1.30 to 1.00.  "Cash Flow" is defined as the sum of: (A) Moheb, DMD, Inc.'s (1) net income (after tax), before interest expense, depreciation expenses, amortization expense, one-time expenses approved at the sole discretion of Lender, and rent expense paid to Borrower and/or Doctor Realty LLC; minus (2) distributions or dividends for the measurement period, and (B) Borrower's and/or Doctor Realty LLC's rent income from sources other than Moheb, DMD, Inc.  "Debt Service Requirement" is defined as: the sum of Borrower's and Affiliated Parties' (A) interest expense for the measurement period; and (B) the principal paid on long term debt for the measurement period, and (C) capital lease obligations paid during the measurement period.  The Debt Service Coverage Ratio shall be measured annually from Borrower's and Affiliated Parties' annual financial statements (or tax returns) commencing with the fiscal year ending December 31, 2020. Compliance with the foregoing covenant shall be determined as set forth above and in accordance with Lender's standard underwriting practices.  For purposes of this Agreement, "Affiliated Parties" means Doctor Realty LLC and Moheb, DMD, Inc.

b.     The financial statement reporting requirement in the Loan *5910 BLA is hereby amended such that Borrower shall provide Lender with annual, company-prepared financial statements not later than sixty (60) days after Borrower's fiscal year end.

c.     The covenant section in the Loan *5910 BLA is hereby amended such that compliance certificates shall be required from Borrower and Affiliated Parties for all applicable financial, reporting, and other covenants.  Compliance certificates shall be provided on a form acceptable to Lender, and with supporting documentation acceptable to Lender, in Lender's sole discretion.   Compliance certificates shall be due no later than ninety (90) days after Borrower's and Affiliated Parties' fiscal year end.

d.     With respect to Loan *5910, neither Borrower nor Affiliated Parties shall be required to provide any quarterly financial reporting or any quarterly compliance certificates.

e.     So long an Affiliated Party (1) is reporting its earning in the tax return of an individual guarantor; and (2) such individual guarantor is providing annual tax returns to Lender in connection with a guaranty of the Loan or other indebtedness of Borrower to Lender, such Affiliated Party shall not be required to provide a separate income tax return to Lender, notwithstanding any language in the Loan Documents to the contrary.

6.5     LOAN *0037.

a.     The debt service coverage ratio in the Loan *0037 BLA is hereby amended and restated in its entirety as follows:

> **Debt Service Coverage Ratio**.  Borrower and Affiliated Parties shall maintain, on a combined basis for any fiscal year a minimum ratio of Cash Flow to Debt Service Requirement (the "Debt Service Coverage Ratio") of 1.30 to 1.00.  "Cash Flow" is defined as the sum of: (A) Moheb, DMD, Inc.'s (1) net income (after tax), before interest expense, depreciation expenses, amortization expense, one-time expenses approved at the sole discretion of Lender, and rent expense paid to Borrower and/or Doctor Realty LLC; minus (2) distributions or dividends for the measurement period, and (B) Borrower's and/or Doctor Realty LLC's rent income from sources other than Moheb, DMD, Inc.  "Debt Service Requirement" is defined as: the sum of Borrower's and Affiliated Parties' (A) interest expense for the measurement period; and (B) the principal paid on long term debt for the measurement period, and (C) capital lease obligations paid during the measurement period.  The Debt Service Coverage Ratio shall be measured annually from Borrower's and Affiliated Parties' annual financial statements (or tax returns) commencing with the fiscal year ending December 31, 2020. Compliance with the foregoing covenant shall be determined as set forth above and in accordance with Lender's standard underwriting practices.  For purposes of this Agreement, "Affiliated Parties" means Doctor Realty LLC and Moheb, DMD, Inc.

b.     The financial statement reporting requirement in the Loan *0037 BLA is hereby amended such that Borrower shall provide Lender with annual, company-prepared financial statements not later than sixty (60) days after Borrower's fiscal year end.

c. The covenant section in the Loan *0037 BLA is hereby amended such that compliance certificates shall be required from Borrower and Affiliated Parties for all applicable financial, reporting, and other covenants. Compliance certificates shall be provided on a form acceptable to Lender, and with supporting documentation acceptable to Lender, in Lender's sole discretion. Compliance certificates shall be due no later than ninety (90) days after Borrower's and Affiliated Parties' fiscal year end.

d. With respect to Loan *0037, neither Borrower nor Affiliated Parties shall be required to provide any quarterly financial reporting or any quarterly compliance certificates.

e. So long an Affiliated Party (1) is reporting its earning in the tax return of an individual guarantor; and (2) such individual guarantor is providing annual tax returns to Lender in connection with a guaranty of the Loan or other indebtedness of Borrower to Lender, such Affiliated Party shall not be required to provide a separate income tax return to Lender, notwithstanding any language in the Loan Documents to the contrary.

6.6    LOAN *6105.

a. The debt service coverage ratio in the Loan *6105 BLA is hereby amended and restated in its entirety as follows:

> **Debt Service Coverage Ratio.** Borrower and Affiliated Parties shall maintain, on a combined basis for any fiscal year a minimum ratio of Cash Flow to Debt Service Requirement (the "Debt Service Coverage Ratio") of 1.30 to 1.00. "Cash Flow" is defined as the sum of: (A) Borrower's (1) net income (after tax), before interest expense, depreciation expenses, amortization expense, one-time expenses approved at the sole discretion of Lender, and rent expense paid to Affiliated Parties; minus (2) distributions or dividends for the measurement period, and (B) Affiliated Parties' rent income from sources other than Borrower. "Debt Service Requirement" is defined as: the sum of Borrower's and Affiliated Parties' (A) interest expense for the measurement period; and (B) the principal paid on long term debt for the measurement period, and (C) capital lease obligations paid during the measurement period. The Debt Service Coverage Ratio shall be measured annually from Borrower's and Affiliated Parties' annual financial statements (or tax returns) commencing with the fiscal year ending December 31, 2020. Compliance with the foregoing covenant shall be determined as set forth above and in accordance with Lender's standard underwriting practices. For purposes of this Agreement, "Affiliated Parties" means Doctor Realty, LLC and Media DDS, LLC.

b. The covenant section in the Loan *6105 BLA is hereby amended such that compliance certificates shall be required from Borrower and Affiliated Parties for all applicable financial, reporting, and other covenants. Compliance certificates shall be provided on a form acceptable to Lender, and with supporting documentation acceptable to Lender, in Lender's sole discretion. Compliance certificates shall be due no later than ninety (90) days after Borrower's and Affiliated Parties' fiscal year end.

OMNIBUS LOAN MODIFICATION AGREEMENT - 14

c.     So long an Affiliated Party (1) is reporting its earning in the tax return of an individual guarantor; and (2) such individual guarantor is providing annual tax returns to Lender in connection with a guaranty of the Loan or other indebtedness of Borrower to Lender, such Affiliated Party shall not be required to provide a separate income tax return to Lender, notwithstanding any language in the Loan Documents to the contrary.

6.7     LOAN *1346.

a.     The debt service coverage ratio in the Loan *1346 BLA is hereby amended and restated in its entirety as follows:

> **Debt Service Coverage Ratio.** Borrower and Affiliated Parties shall maintain, on a combined basis for any fiscal year a minimum ratio of Cash Flow to Debt Service Requirement (the "Debt Service Coverage Ratio") of 1.30 to 1.00. "Cash Flow" is defined as the sum of: (A) Borrower's (1) net income (after tax), before interest expense, depreciation expenses, amortization expense, one-time expenses approved at the sole discretion of Lender, and rent expense paid to Affiliated Parties; minus (2) distributions or dividends for the measurement period, and (B) Affiliated Parties' rent income from sources other than Borrower. "Debt Service Requirement" is defined as: the sum of Borrower's and Affiliated Parties' (A) interest expense for the measurement period; and (B) the principal paid on long term debt for the measurement period, and (C) capital lease obligations paid during the measurement period. The Debt Service Coverage Ratio shall be measured annually from Borrower's and Affiliated Parties' annual financial statements (or tax returns) commencing with the fiscal year ending December 31, 2020. Compliance with the foregoing covenant shall be determined as set forth above and in accordance with Lender's standard underwriting practices. For purposes of this Agreement, "Affiliated Parties" means Doctor Realty, LLC and Media DDS, LLC.

b.     The covenant section in the Loan *1346 BLA is hereby amended such that compliance certificates shall be required from Borrower and Affiliated Parties for all applicable financial, reporting, and other covenants. Compliance certificates shall be provided on a form acceptable to Lender, and with supporting documentation acceptable to Lender, in Lender's sole discretion. Compliance certificates shall be due no later than ninety (90) days after Borrower's and Affiliated Parties' fiscal year end.

c.     So long an Affiliated Party (1) is reporting its earning in the tax return of an individual guarantor; and (2) such individual guarantor is providing annual tax returns to Lender in connection with a guaranty of the Loan or other indebtedness of Borrower to Lender, such Affiliated Party shall not be required to provide a separate income tax return to Lender, notwithstanding any language in the Loan Documents to the contrary.

6.8     ADDITIONAL TERMS.

a.     Media DDS shall pay for an appraisal of property located at 1716 Broadway Street, Oakland, California (the "**Broadway Street Property**"), to be performed by an appraiser

OMNIBUS LOAN MODIFICATION AGREEMENT - 15

acceptable to Lender in Lender's sole discretion (the "**Broadway Street Appraisal**"). The Broadway Street Appraisal must be initiated within seven (7) days of this Agreement.

        b.    Within seven (7) days of completion of the Broadway Street Appraisal (or such longer period as Lender may elect in its sole discretion), Media DDS shall execute and deliver to Lender a deed of trust encumbering the Broadway Street Property and securing all obligations of Borrowers to Lender (the "**Broadway Street DOT**"). The current, aggregate amount of the debt to be secured by the Broadway Street DOT is estimated to be $2,024,851.00. The Broadway Street DOT shall be in a form acceptable to Lender in Lender's sole discretion.

    7.    RELEASE. IN CONSIDERATION OF LENDER ENTERING INTO THIS AGREEMENT, BORROWER HEREBY RELEASES AND FOREVER DISCHARGES LENDER, ITS PREDECESSORS AND SUCCESSORS-IN-INTEREST, AND THEIR AFFILIATES, AND ALL OF THE FOREGOING'S RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, SHAREHOLDERS, REPRESENTATIVES AND AGENTS FROM ANY AND ALL CLAIMS, DEMANDS, DAMAGES, LIABILITIES, CHARGES, ACTIONS, LOSSES, CAUSES OF ACTION, COSTS, EXPENSES, COMPENSATION, AND SUITS OF ANY KIND, PAST, PRESENT OR FUTURE, ARISING FROM OR ALLEGED TO ARISE FROM THEIR BUSINESS RELATIONSHIP, INCLUDING THE RELATIONSHIP PROVIDED FOR IN THE LOAN DOCUMENTS THROUGH THE DATE OF THIS AGREEMENT, WHETHER KNOWN OR UNKNOWN. THIS RELEASE IS INTENDED TO BE COMPLETE AND COMPREHENSIVE WITH RESPECT TO ALL SUCH CLAIMS. THIS RELEASE OF CLAIMS HAS BEEN COMPLETELY READ AND FULLY UNDERSTOOD AND VOLUNTARILY ACCEPTED FOR THE PURPOSE OF MAKING A FULL AND FINAL COMPROMISE AND SETTLEMENT WITH RESPECT TO ALL CLAIMS, DISPUTED OR OTHERWISE.

    7.1    BORROWER ACKNOWLEDGES AND UNDERSTANDS THAT ALL RIGHTS UNDER SECTION 1542 OF THE CALIFORNIA CIVIL CODE (AND ANY SIMILAR LAW OF ANY STATE OR TERRITORY OF THE UNITED STATES) ARE HEREBY WAIVED AS TO CLAIMS THAT THEY DO NOT KNOW OR SUSPECT TO EXIST AT THE TIME THEY EXECUTE THIS RELEASE.

SECTION 1542 OF THE CALIFORNIA CIVIL CODE PROVIDES:

    A GENERAL RELEASE DOES NOT EXTEND TO THE CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

BORROWER ACKNOWLEDGES AND UNDERSTANDS THE SIGNIFICANCE AND CONSEQUENCE OF A WAIVER OF § 1542, AND HEREBY ASSUME FULL RESPONSIBILITY FOR ANY FUTURE INJURIES, DAMAGES OR LOSSES THAT MAY LATER ARISE.

    8.    UNIVERSAL CROSS-DEFAULT. Any default or event of default under this Agreement, or under any of the terms of any of the Loan Documents, shall be a default and an event of default under this Agreement and all of the Loan Documents.

    9.    NON-IMPAIRMENT. Except as expressly provided herein, nothing in this Agreement shall alter or affect any provision, condition, or covenant contained in the Loan Documents, or affect or impair any rights, powers, or remedies thereunder, it being the intent of the Parties hereto that the provisions of the Loan Documents shall continue in full force and effect except as expressly amended hereby.

OMNIBUS LOAN MODIFICATION AGREEMENT - 16

10.  COUNTERPARTS AND EXECUTION BY ELECTRONIC MEANS.  This Agreement may be executed by the Parties hereto in separate counterparts, each of which, when so executed and delivered, shall be an original, but all such counterparts shall together constitute one and the same instrument.  Each counterpart may consist of a number of copies hereof, each signed by less than all, but together signed by all, of the Parties hereto.  Copies of documents or signature pages bearing original signatures, and executed documents or signature pages delivered by a Party by e-mail transmission of an Adobe™ file format document (also known as a PDF file) shall, in each such instance, be deemed to be, and shall constitute and be treated as, an original signed document or counterpart, as applicable.  Any Party delivering an executed counterpart this Agreement by e-mail transmission of an Adobe™ file format document also shall deliver an original executed counterpart of this Agreement, to the other Party within five (5) business days of the date of delivery of the electronic communication, but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

11.  MISCELLANEOUS.

11.1  INTERPRETATION; JURISDICTION; VENUE.  This Agreement shall be governed by and interpreted in accordance with the laws of the state of California, except if preempted by federal law.  In any action brought or arising out of this Agreement, Borrower hereby consents to the jurisdiction of any federal or state court having proper venue within the state of California and also consents to the service of process by any means authorized by California or federal law.

11.2  HEADINGS.  The headings used in this Agreement are for convenience only and shall be disregarded in interpreting the substantive provisions of this Agreement.

11.3  DEFINED TERMS.  Except as expressly provided otherwise herein, all terms used herein shall have the meaning given to them in the Loan Documents.

11.4  TIME IS OF THE ESSENCE.  Time is of the essence of each term of the Loan Documents, including this Agreement.

11.5  SEVERANCE OF TERMS.  If any provision of this Agreement or any of the Loan Documents shall be determined by a court of competent jurisdiction to be invalid, illegal, or unenforceable, that portion shall be deemed severed therefrom, and the remaining parts shall remain in full force as though the invalid, illegal, or unenforceable portion had never been a part thereof.

11.6  INTERPRETATION OF CERTAIN TERMS.  All references to this Agreement and the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Agreement as a whole and not to any particular paragraph or other subdivision, unless the context suggests otherwise; and the words "including," "included" and "includes" mean inclusion without limitation.  All pronouns shall include the masculine, feminine, neuter, singular and plural thereof wherever the context and facts require such construction.

11.7  CONSTRUCTION OF TERMS AND PROVISIONS.  In the event of any ambiguities in the language hereof, there shall be no inference drawn in favor of or against either Party.  Each Party has reviewed this Agreement and accordingly the normal rules of construction to the effect that any ambiguities are to be resolved against the drafting Party shall not apply.

OMNIBUS LOAN MODIFICATION AGREEMENT - 17

11.8    RESERVATION OF RIGHTS; EXERCISE OF REMEDIES; NO WAIVER.  No failure on Lender's part at any time to require the performance by Borrower of any term of this Agreement shall in any way affect Lender's rights to enforce such term, nor shall any waiver by Lender of any term hereof be taken or held to be a waiver of any other term hereof or of any breach or subsequent breach hereof.  Borrower waives any defense arising by reason of any disability or other defense of any other person obligated with respect to the loans that are the subject of this Agreement, or by reason of the cessation from any cause whatsoever of the liability of Borrower or any other such person.

11.9    NO THIRD PARTY BENEFICIARIES.  This Agreement does not confer any rights or remedies upon any person or entity other than the Parties, and their respective successors and permitted assigns as limited by section 13 of this Agreement.

12.    INTEGRATION; INTERPRETATION.  The Loan Documents, including this Agreement, contain or expressly incorporate by reference the entire agreement of the Parties with respect to the matters contemplated therein, and supersede all prior negotiations.  This Agreement and the Loan Documents shall not be modified except by written instrument executed by Borrower and Lender.  Any reference to the Loan Documents includes any amendments, renewals, or extensions approved by Lender.

13.    SUCCESSORS, ASSIGNMENT.  This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, legal representatives, successors, and assigns of the Parties; provided however, that Borrower may not assign or transfer its interest hereunder without Lender's prior written consent.  Lender reserves the right to sell, assign, transfer, negotiate, or grant participations in all or any part of, or any interest in, Lender's rights and benefits under each of the Loan Documents.  In connection therewith, Lender may disclose all documents and information that Lender now has or may hereafter acquire relating to any of the Loan Documents, Borrower or its business, any Guarantor or its business, or any collateral required hereunder.

14.    ATTORNEY FEE.  In the event that Borrower files for protection under the bankruptcy laws, Borrower agrees that Lender shall be entitled to recover, as part of any claim in such bankruptcy case, its attorney fees in connection with the assertion of its rights and remedies, including, without limitation, fees and costs incurred in connection with advising Lender as to its rights and enforcement of its rights.

In addition, Borrower shall pay promptly to Lender without demand, with interest thereon from the date of expenditure at the interest rate(s) specified in the applicable note, reasonable attorney fees and all costs and other expenditures paid or incurred by Lender after an Event of Default hereunder or under any Loan Document in enforcing or exercising its rights or remedies created by, connected with or provided in this Agreement or such other Loan Document and payment thereof shall be secured by the collateral for the applicable loan.

15.    NO FURTHER COMMITMENT. EXCEPT AS SPECIFICALLY PROVIDED IN THIS AGREEMENT OR IN THE LOAN DOCUMENTS, LENDER IS NOT COMMITTED, AND IS NOT COMMITTING AT THIS TIME, TO REFINANCE ANY LOAN, MAKE ANY LOAN, EXTEND THE MATURITY DATE OF ANY LOAN OR OTHERWISE RESTRUCTURE ANY LOAN, OR FORBEAR FROM EXERCISING ANY OF ITS RIGHTS OR REMEDIES UNDER THE LOAN DOCUMENTS.  NO PRIOR COURSE OF DEALING, NO USAGE OF TRADE, AND NO ORAL STATEMENTS OR COMMENTS BY LENDER OR ITS OFFICERS, EMPLOYEES, ATTORNEYS OR OTHER AGENTS WILL BE DEEMED TO BE TO BE A COMMITMENT BY LENDER TO REFINANCE ANY LOAN, MAKE ANY LOAN, EXTEND THE MATURITY DATE OF ANY LOAN OR OTHERWISE RESTRUCTURE ANY LOAN, OR FORBEAR FROM

OMNIBUS LOAN MODIFICATION AGREEMENT - 18

EXERCISING ANY OF ITS RIGHTS OR REMEDIES, EXCEPT AS EXPRESSLY SET FORTH HEREIN, OR UNLESS THE SAME SHALL BE REDUCED IN WRITING AND SIGNED BY AN AUTHORIZED REPRESENTATIVE OF LENDER.

      16.     NOTICES. All notices, requests, and demands that any Party is required or may desire to give to any other Party under any provision of this Agreement must be in writing and delivered in accordance with the notice provisions of the Loan Documents.

**[The remainder of this page is intentionally blank.]**
**[Signatures to follow.]**

OMNIBUS LOAN MODIFICATION AGREEMENT - 19

A CONTRACT, PROMISE, UNDERTAKING OR COMMITMENT TO LOAN MONEY, TO GRANT, OR EXTEND CREDIT, IN AN AMOUNT GREATER THAN $100,000.00, NOT PRIMARILY FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES MADE BY A PERSON ENGAGED IN THE BUSINESS OF LENDING OR ARRANGING FOR THE LENDING OF MONEY OR EXTENDING CREDIT IS INVALID, UNLESS IT, OR SOME NOTE OR MEMORANDUM THEREOF, IS IN WRITING AND SUBSCRIBED BY THE PARTY TO BE CHARGED OR BY THE PARTY'S AGENT. IF THE LOAN IS SECURED SOLELY BY RESIDENTIAL PROPERTY CONSISTING OF ONE TO FOUR DWELLING UNITS IT SHALL BE DEEMED FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on the day and year first above written.

LENDER:

HOMESTREET BANK, a Washington state chartered commercial bank

By: _____
Name: MWK Johnson
Title: Vice President

BORROWER:

DOCTOR REALTY LLC, a California limited liability company

By: _____
Name: Aiton Moh
Title: Member

BORROWER:

MEDIA DDS, LLC, a California limited liability company

By: _____
Name: Aiton Moh
Title: Member

BORROWER:

Moheb, DMD, Inc., a California corporation

By: _____
Name: Aiton Moh
Title: Member

OMNIBUS LOAN MODIFICATION AGREEMENT - 20

**GUARANTOR CONSENT, REAFFIRMATION, RELEASE, AND SUBORDINATION**

The undersigned Guarantor of indebtedness of Doctor Realty LLC, a California limited liability company; Media DDS, LLC, a California limited liability company; and Moheb, DMD, Inc., a California corporation (collectively "Borrower") to HomeStreet Bank ("Lender") hereby: (i) consents to the foregoing Omnibus Loan Modification Agreement; (ii) reaffirms its obligations under its guaranties to Lender, whether or not identified in the Omnibus Loan Modification Agreement; (iii) reaffirms its waivers of each and every one of the defenses to such obligations as set forth in its guaranties to Lender, whether or not identified in the Omnibus Loan Modification Agreement; (iv) reaffirms that its obligations under its guaranties to Lender, whether or not identified in the Omnibus Loan Modification Agreement, are separate and distinct from the obligations of any other party under said Omnibus Loan Modification Agreement and the other Loan Documents described therein; and (v) agrees to join in and be bound by all of the terms and provisions set forth in said Omnibus Loan Modification Agreement, including without limitation the release in Section 7.

GUARANTOR:

ALIREZA MOHEB

By: _____
Name: Alireza Moheb

OMNIBUS LOAN MODIFICATION AGREEMENT - 21

# EXHIBIT C



SENT VIA EMAIL AND TELEFACSIMILE

**May 7, 2020**

Moheb, DMD, Inc. c/o Alireza Moheb   Alireza Moheb
1844 San Miguel Drive, Suite 208   831 Acalanes
Walnut Creek, CA 94596     Lafayette, CA 94549
(Borrower)          (Guarantor)

Doctor Realty, LLC c/o Alireza Moheb  Media DDS, LLC c/o Alireza Moheb
1844 San Miguel Drive, Suite 208   1844 San Miguel Drive, Suite 208
Walnut Creek, CA 94596     Walnut Creek, CA 94596
(Borrower)          (Borrower)

**NOTICE OF DEFAULT, DEMAND FOR CURE, AND RESERVATION OF RIGHTS**

Re:  Loan No. 3000005795, 3000005910, 3000006105, 3050101346, 3020100037, 3020100045 and 3020100053 (the "**Loans**").

Dear Mr. Moheb:

We are writing to you in your respective capacities as principal of: Moheb, DMD, Inc.; Doctor Realty, LLC; and Media DDS, LLC, (each referred to herein individually and collectively as "**Borrower**") and as guarantor of Borrower's obligations to HomeStreet Bank ("**Lender**") successor in interest to Silvergate Bank with respect to the Loans. The purpose of this letter is to provide formal written notice of certain defaults under the Loans, and to reserve the rights of Lender. All documents and instruments pertaining to the Loans, including all amendments, modifications, extensions, renewals and restatements, are collectively referred to herein as the "**Loan Documents**."

<u>**IDENTIFICATION OF LOAN DEFAULTS**</u>:

Borrower is in default for failure to pay the May 1, 2020 loan payments for the following loans:

| | |
|---|---|
| 3000005910 | $2,398.84. |
| 3020100037 | $2,124.82. |
| 3020100045 | $1,132.02. |
| 3020100053 | $1,541,70. |
| 3050101346 | $5,841.09. |

The total amount unpaid as of the date of this letter is $11,496.77.

Borrower, Guarantor and Lender entered into that Omnibus Loan Modification Agreement (the "**Agreement**") dated January 2020. Pursuant to Section 6.8 (b) of the Agreement, Borrower was to execute and deliver to Lender a deed of trust encumbering Borrower's property located at 1716 Broadway, Oakland, CA. Borrower has failed to deliver this deed of trust to Lender within the required timeframe. The above-referenced failure to deliver the deed of trust constitutes a material default under the Loan Documents, including, but not limited to, the Agreement.

You have inquired as to the status of your request that Lender apply for and make a loan to you under the Small Business Administration's Paycheck Protection Program (the "**Program**"). The Program requires the prospective borrower to not be in default under existing loans in order to qualify for a loan. Borrower has been in default under its existing Loans throughout the application process. Late last week you informed Lender that you would not cure the defaults under the Loans and the Agreement. As such, the Lender has canceled the application for the Program loan. Borrower does not qualify for a loan under this program.

## CURE PERIOD

Borrower has until May 18, 2020, 10 days from today's date, to cure the defaults under Section 6.8(b) of the Agreement, as referenced above. Failure to do so will result in Lender pursuing any and all remedies available at law or in equity.

## RESERVATION OF RIGHTS

Nothing contained in this letter shall be deemed to: (1) prejudice Lender's rights and remedies against any borrower or any guarantor with respect to the Loans; (2) constitute a waiver of or an election of remedies pertaining to any breaches or defaults under the Loan Documents, including the event(s) of default identified above; (3) constitute a waiver of or an election of remedies pertaining to any of Lender's rights and remedies against any borrower or any guarantor with respect to the Loans; or (4) constitute an agreement on the part of Lender to extend the time for payment or performance under such documents, or to forbear from exercising any of its rights under such documents, or to forbear from taking any other action permitted by law or otherwise, all of which Lender hereby expressly reserves. Lender's acceptance of partial or future payments other than payment in full is without waiver.

**We may report information about your account to credit bureaus. Any insolvency, delinquency, late payment, or default on your account may be included in your credit report.**

**CALIFORNIA: A CONTRACT, PROMISE, UNDERTAKING OR COMMITMENT TO LOAN MONEY, TO GRANT, OR EXTEND CREDIT, IN AN AMOUNT GREATER THAN $100,000.00, NOT PRIMARILY FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES MADE BY A PERSON ENGAGED IN THE BUSINESS OF LENDING OR ARRANGING FOR THE LENDING OF MONEY OR EXTENDING CREDIT IS INVALID, UNLESS IT, OR SOME NOTE OR MEMORANDUM THEREOF, IS IN WRITING AND SUBSCRIBED BY THE PARTY TO BE CHARGED OR BY THE PARTY'S AGENT. IF THE LOAN IS SECURED SOLELY BY RESIDENTIAL PROPERTY CONSISTING OF ONE TO FOUR DWELLING UNITS IT SHALL BE DEEMED FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES.**

If you have any questions regarding this matter, or if you would like to discuss your current status or Loans, please contact me at your earliest convenience at 206-753-2078 or by email at mark.johnson@homestreet.com.

Sincerely,

*Mark Johnson*

Mark Johnson
Vice President



May 21, 2020

Moheb, DMD, Inc. c/o Alireza Moheb
1844 San Miguel Drive, Suite 208
Walnut Creek, CA 94596
(Borrower)

Alireza Moheb
831 Acalanes
Lafayette, CA 94549
(Guarantor)

Doctor Realty, LLC c/o Alireza Moheb
1844 San Miguel Drive, Suite 208
Walnut Creek, CA 94596
(Borrower)

Media DDS, LLC c/o Alireza Moheb
1844 San Miguel Drive, Suite 208
Walnut Creek, CA 94596
(Borrower)

### NOTICE OF ACCELERATION AND RESERVATION OF RIGHTS

Re:     Loan No. 3000005910, 3050101346, 3020100037, 3020100045 and 3020100053 (the "**Loans**").

Dear Mr. Moheb:

We are writing to you in your respective capacities as principal of: Moheb, DMD, Inc.; Doctor Realty, LLC; and Media DDS, LLC, (each referred to herein individually and collectively as "**Borrower**") and as guarantor of Borrower's obligations to HomeStreet Bank ("**Lender**") successor in interest to Silvergate Bank with respect to the Loans. The purpose of this letter is to provide formal written notice of certain defaults under the Loans, and to reserve the rights of Lender. All documents and instruments pertaining to the Loans, including all amendments, modifications, extensions, renewals and restatements, are collectively referred to herein as the "**Loan Documents**."

By letter dated May 7, 2020 ("May 7th Letter"), Lender identified various payment and non-payment defaults by Borrower with respect to the Loans (collectively, the "Defaults"). Borrower has failed to cure any of the Defaults within the time frames prescribed by the Loan Documents and identified in the May 7th Letter.

Accordingly, pursuant to the rights granted to it by Borrower in the Loan Documents for each Loan, Lender hereby declares that the entire unpaid principal balance and all accrued unpaid interest as to each Loan is immediately due and payable.

### RESERVATION OF RIGHTS

Nothing contained in this letter shall be deemed to: (1) prejudice Lender's rights and remedies against any borrower or any guarantor with respect to the Loans; (2) constitute a waiver of or an election of remedies pertaining to any breaches or defaults under the Loan Documents, including the event(s) of default identified in the May 7th Letter; (3) constitute a waiver of or an election of remedies pertaining to any of Lender's rights and remedies against any borrower or any guarantor with respect to the Loans; or (4) constitute an agreement on the part of Lender to extend the time for payment or performance under such documents, or to forbear from exercising any of its rights under such documents, or to forbear from

taking any other action permitted by law or otherwise, all of which Lender hereby expressly reserves. Lender's acceptance of partial or future payments other than payment in full is without waiver.

**We may report information about your account to credit bureaus. Any insolvency, delinquency, late payment, or default on your account may be included in your credit report.**


**CALIFORNIA: A CONTRACT, PROMISE, UNDERTAKING OR COMMITMENT TO LOAN MONEY, TO GRANT, OR EXTEND CREDIT, IN AN AMOUNT GREATER THAN $100,000.00, NOT PRIMARILY FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES MADE BY A PERSON ENGAGED IN THE BUSINESS OF LENDING OR ARRANGING FOR THE LENDING OF MONEY OR EXTENDING CREDIT IS INVALID, UNLESS IT, OR SOME NOTE OR MEMORANDUM THEREOF, IS IN WRITING AND SUBSCRIBED BY THE PARTY TO BE CHARGED OR BY THE PARTY'S AGENT. IF THE LOAN IS SECURED SOLELY BY RESIDENTIAL PROPERTY CONSISTING OF ONE TO FOUR DWELLING UNITS IT SHALL BE DEEMED FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES.**


If you have any questions regarding this matter, or if you would like to discuss your current status or Loans, please contact me at your earliest convenience at 206-753-2078 or by email at mark.johnson@homestreet.com.

Sincerely,

*Mark Johnson*

Mark Johnson
Vice President

| **From:** | Zaro, David |
| **Sent:** | Tuesday, May 19, 2020 12:37 PM |
| **To:** | David Wiseblood |
| **Cc:** | alireza moheb |
| **Subject:** | - MOHEB Loans - Notice of Default |

Hi David

I hope you are having a good day.

Per your request, below are the wire instructions for the Loans where payments were due on May 1st.   Given my delay in providing you these instructions, by this email, HomeStreet Bank is extending the date to cure the defaults referenced in the May 6, 2020 letter to Mr. Moheb ("Default Letter") until the close of business tomorrow, **May 20, 2020.**

Please note that the Borrower is presently also in default with regard to the Loans ending 6105, (where Borrower owes **$3,596.35**) and
Loan ending 5795 (where Borrower owes **$5,912.17**).  The Borrower has 10 days, until May 29, 2020,  to make those payments.

The balance of the Default Letter is incorporated herein by this reference.

Should you have any questions, please feel free to contact me.

Best Regards.

David

Wire instructions are:

To HomeStreet Bank:

- THE ABA no. is ▉▉▉▉▉▉
- The account no. is ▉▉▉▉▉▉
- For the accounts of Moheb DMD, Inc.
- Attn: Mark Johnson

**F**rom: David Wiseblood [mailto:dwiseblood@wisebloodlaw.com]
**Sent:** Monday, May 18, 2020 10:44 AM
**To:** Zaro, David <dzaro@allenmatkins.com>
**Cc:** alireza moheb <usmoheb@gmail.com>
**Subject:** FINAL - MOHEB NOD ROR dated 5 7 2020-DZ Edits-MJ Rev.pdf

David, could you please ask Mark Johnson to provide directly to Ali Moheb the Bank's wire instruction(s) for the payments listed in the attached letter?   I understand that the obligors intend to provide those payments presently.   Any issues, please let me know.  Thanks much.

_____

# EXHIBIT D



BY FAX

JUN 24 REC'D

1  ALLEN MATKINS LECK GAMBLE
       MALLORY & NATSIS LLP
2  DAVID R. ZARO (BAR NO. 124334)
   MICHAEL R. FARRELL (BAR NO. 173831)
3  NORMAN M. ASPIS (BAR NO. 313466)
   865 South Figueroa Street, Suite 2800
4  Los Angeles, California 90017-2543
   Phone: (213) 622-5555
5  Fax: (213) 620-8816
   E-Mail: dzaro@allenmatkins.com
6          mfarrell@allenmatkins.com
           naspis@allenmatkins.com
7
   Attorneys for Plaintiff
8  HOMESTREET BANK

FILED
ALAMEDA COUNTY

JUN 24 2020

CLERK OF THE SUPERIOR COURT
By _____ Deputy

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                       FOR THE COUNTY OF ALAMEDA

11

12  HOMESTREET BANK, a Washington       Case No.  RG20066154
    chartered commercial bank,
13                                       COMPLAINT FOR:
                  Plaintiff,
14                                       (1) BREACH OF PROMISSORY NOTE
         v.                                  AND LOAN AGREEMENT
15                                           (LOAN # 6105)
    MOHEB, DMD, INC., a California
16  corporation; MEDIA DDS, LLC, a       (2) BREACH OF GUARANTY
    California limited liability company;     (LOAN # 6105)
17  ALIREZA MOHEB, an individual; and
    DOES 1-20, inclusive,               (3) BREACH OF PROMISSORY NOTE
18                                           AND LOAN AGREEMENT
                  Defendants.                (LOAN # 1346)
19
                                        (4) BREACH OF GUARANTY
20                                           (LOAN # 1346)

21                                       (5) SPECIFIC PERFORMANCE

22

23         Plaintiff HomeStreet Bank ("HomeStreet Bank" or "Plaintiff") hereby brings the

24  following complaint ("Complaint") against Moheb DMD, Inc., a California corporation,

25  Media DDS, LLC, a California limited liability company, Alireza Moheb, an individual,

26  and DOES 1-20, inclusive (collectively, the "Defendants"), and upon knowledge,

27  information, and belief alleges as follows:

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

## JURISDICTION AND VENUE

1.    This Court has subject-matter jurisdiction over this matter, and all causes of action asserted herein, under California Code of Civil Procedure ("CCP") Section 410.10 and Article VI, Section IV of the California Constitution.

2.    This Court may exercise personal jurisdiction over the Defendants, and each of them, by virtue of their dealings and transactions in Alameda County, and pursuant to that certain operative Omnibus Loan Modification Agreement, dated January 2020 (the "Omnibus Agreement"), whereby the Defendants consented to the jurisdiction of any court having proper venue within the State of California.

3.    Venue is proper in the above-entitled Court pursuant to CCP Sections 395, 395.5, and 410.10, and the Omnibus Agreement.

## PARTIES

4.    Plaintiff is a Washington State chartered commercial bank, and has its principal place of business in Seattle, Washington. Plaintiff is and was, at all relevant times, doing business in the State of California. Plaintiff is the successor-in-interest to Silvergate Bank ("Silvergate") under the various loan documents identified herein, and entered into the Omnibus Agreement with the Defendants.

5.    Plaintiff is informed and believes, and based thereon alleges, that Defendant Moheb, DMD, Inc. ("Moheb DMD") is a California corporation, and has its principal place of business in Walnut Creek, California, located at 1844 San Miguel Drive, Suite 208, Walnut Creek, California 94596.

6.    Plaintiff is informed and believes, and based thereon alleges, that Defendant Media DDS, LLC ("Media DDS") is a California limited liability company, and has its principal place of business in Walnut Creek, California, located at 1844 San Miguel Drive, Suite 208, Walnut Creek, California 94596.

7.    Plaintiff is informed and believes, and based thereon alleges, that Defendant Alireza Moheb ("Moheb") is an individual who resides in or around Lafayette, California.

8.     Plaintiff is ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of Doe Defendants 1 through 20, inclusive.  On information and belief, each fictitiously named Defendant was in some way responsible for, participated in, or contributed to the matters and things complained of herein, and in some manner, has legal responsibility therefor, was an alter ego of a Defendant named herein, and/or has an interest affected by the matters herein alleged.  When the identity and exact nature of such fictitious Defendants' responsibility for, participation in, interest in, or contribution to the matters and things herein alleged is ascertained, Plaintiff will seek leave to amend this Complaint and all proceedings instituted as a result to set forth the nature of the fictitious Defendants' identities.

## FACTUAL ALLEGATIONS

### I.     The Loan Documents.

9.     Defendants are indebted to Plaintiff in connection with two (2) loans that are the subject of this Complaint: Loan # 6105 and Loan # 1346.

10.     Loan # 6105 is evidenced by various documents and instruments including, but not limited to:  (i) that certain Promissory Note, dated March 12, 2018, in the original principal amount of $852,500.00, executed by Moheb DMD in favor of Silvergate (the "Loan # 6105 Note"); (ii) that certain Business Loan Agreement, dated March 12, 2018, by and between Moheb DMD and Silvergate; (iii) that certain Commercial Security Agreement, dated March 12, 2018, identifying Moheb DMD as "Grantor"; and (iv) that certain Commercial Guaranty, dated March 12, 2018, executed by Moheb in favor of Silvergate, pertaining to all of Moheb DMD's obligations to Silvergate, including its obligations in connection with Loan # 6105 (the "Loan # 6105 Guaranty") (collectively, with all other documents and instruments evidencing Loan # 6105, as modified by the Omnibus Agreement, the "Loan # 6105 Documents").

11.     As set forth in Paragraph 10, above, Moheb guaranteed all of Moheb DMD's obligations in connection with Loan # 6105, pursuant to the Loan # 6105 Guaranty.

12. Loan # 1346 is evidenced by various documents and instruments including, but not limited to: (i) that certain Promissory Note, dated March 11, 2016, in the original principal amount of $2,685,000.00, executed by Moheb DMD and other entities subsequently merged into Moheb DMD (the "Loan # 1346 Note"); (ii) that certain Business Loan Agreement, dated March 11, 2016, by and between Moheb DMD and Silvergate; (iii) that certain Commercial Security Agreement, dated March 11, 2016, identifying Unlimited Smiles LLC as "Grantor"; (iv) that certain Commercial Security Agreement, dated March 11, 2016, identifying A. Moheb DMD, Moheb DMD, Alireza Moheb DMD Inc., and Dental Health Solutions, Inc. as "Grantor"; (v) that certain Commercial Guaranty, dated March 11, 2016, executed by Dental Health Solutions, Inc. in favor of Silvergate, pertaining to all of A. Moheb DMD's, Unlimited Smiles LLC's, Moheb DMD's, and Alireza Moheb DMD Inc.'s obligations to Silvergate, including its obligation in connection with Loan # 1346; (vi) that certain Commercial Guaranty, dated March 11, 2016, executed by Moheb in favor of Silvergate, pertaining to all of A. Moheb DMD's, Unlimited Smiles LLC's, Moheb DMD's, and Alireza Moheb DMD Inc.'s obligations to Silvergate, including its obligations in connection with Loan # 1346 (the "Loan # 1346 Guaranty"); and (vii) that certain Loan Extension and Modification Agreement, dated August 9, 2017 (collectively, with all other documents and instruments evidencing Loan # 1346, as modified by the Omnibus Agreement, the "Loan # 1346 Documents").

13. As set forth in Paragraph 12, above, Moheb guaranteed all of Moheb DMD's obligations in connection with Loan # 1346, pursuant to the Loan # 1346 Guaranty.

14. In or around January of 2020, HomeStreet Bank agreed to modify certain terms of the Loan # 6105 Documents and the Loan # 1346 Documents, upon and subject to the terms and conditions, and for the purposes, set forth in the Omnibus Agreement.

15. As set forth in the Omnibus Agreement, the Defendants agreed, in pertinent part, that Moheb DMD would make interest-only payments in connection with Loan # 6105 and Loan # 1346 for the months of February through July 2020. As further set forth in the Omnibus Agreement, the monthly payments due for Loan # 6105 and Loan

1  # 1346 were to return to fully amortizing payments of principal and interest based on the
2  remaining term of the loans, respectively, beginning in August 2020.

3        16.    Additionally, and pursuant to the Omnibus Agreement:  (1) the debt service
4  coverage ratio for Loan # 6105 and Loan # 1346, as provided for in the Loan # 6105
5  Documents and the Loan # 1346 Documents, was amended and restated; (2) the covenants
6  relating to compliance certificates with respect to Loan # 6105 and Loan # 1346, as
7  provided for in the Loan # 6105 Documents and the Loan # 1346 Documents, were
8  amended; (3) certain tax return reporting obligations of Defendants to HomeStreet Bank,
9  as provided for in the Loan # 6105 Documents and the Loan # 1346 Documents, were
10 amended; and (4) Moheb DMD was permitted to incur an additional $500,000.00 of third-
11 party debt.

12       17.    The Omnibus Agreement arose out of Moheb DMD's and its affiliates'
13 ongoing failure to meet the financial covenants contained in the loan documents and
14 Moheb DMD's and Moheb's request of HomeStreet Bank to provide financial and other
15 relief.  Each of the foregoing amendments was made for the benefit of Moheb DMD and
16 Moheb; reducing monthly payments and redefining the debt coverage minimums and
17 financial reporting obligations.  Absent material consideration, these changes were
18 detrimental to the security of HomeStreet Bank, which was to receive reduced monthly
19 payments, have a reduced ability to assess the financial condition of its borrower and place
20 the borrower at greater risk of being unable to satisfy its debts.  In consideration for the
21 risks and modified terms, Moheb DMD and Moheb agreed to provide HomeStreet Bank
22 with additional security in the form of the below described deed of trust.

23       18.    In accordance with Section 6.8 of the Omnibus Agreement, Media DDS was
24 obligated and agreed to "pay for an appraisal of property located at 1716 Broadway Street,
25 Oakland, California (the 'Broadway Street Property'), to be performed by an appraiser
26 acceptable to [HomeStreet Bank] in [HomeStreet Bank's] sole discretion."

27       19.    Pursuant to Section 6.8(b) of the Omnibus Agreement, Media DDS was
28 obligated and agreed to "execute and deliver to [HomeStreet Bank] a deed of trust

Case: 24-04098-18    Doc# 147-2    Filed: 10/29/25    Entered: 10/29/25 10:17:00    Page 45
of 64

encumbering the Broadway Street Property and securing all obligations of [Defendants] to [HomeStreet Bank] (the 'Broadway Street DOT') . . . [w]ithin seven (7) days of completion of" the appraisal of the Broadway Street Property.

20. On information and belief, Moheb is the sole manager and member of Media DDS, its agent for service of process, and its chief executive officer.

21. Pursuant to Section 3.12 of the Omnibus Agreement, "[u]pon [Defendants'] breach of this Agreement or the Loan Documents, [HomeStreet Bank] is entitled to demand immediate payment of the amounts owing and collectible under the Loan Documents and to immediately enforce against [Defendants] and its property each and every one of the remedies provided herein and in the Loan Documents and available under applicable law, at [HomeStreet Bank's] election, including but not limited to recovery and sale of any collateral or leased property and collection of the entire balances owing under the Loan Documents, which are valid and fully enforceable in accordance with their terms."

22. Attached hereto as **Exhibit A** is a true and correct copy of the Omnibus Agreement.

## II. **Defaults.**

23. On or about March 19, 2020, the Broadway Street Property appraisal was completed. Thereafter, on or about April 6, 2020, HomeStreet Bank transmitted the Broadway Street DOT to Defendants, including Media DDS. As of the filing of this Complaint, the Defendants have failed to execute and deliver to HomeStreet Bank the Broadway Street DOT, pursuant to the express terms of the Omnibus Agreement.

24. On May 7, 2020, HomeStreet Bank transmitted to Defendants a notice of default, demand for cure, and reservation of rights letter (the "May 7 Notice of Default Letter"), pursuant to which HomeStreet Bank identified certain monetary and non-monetary loan defaults in connection with Loan # 6105 and Loan # 1346, among other loans. A true and correct copy of the May 7 Notice of Default Letter is attached hereto as **Exhibit B**. The May 7 Notice of Default Letter specifically identified Defendants' failure

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

to execute and deliver to HomeStreet Bank the Broadway Street DOT within the required timeframe as a material default, and further identified Defendants' failure to make timely payments under the loans identified therein, including Loan #1346.

25.     On May 21, 2020, HomeStreet Bank transmitted to Defendants a notice of acceleration and reservation of rights letter (the "May 21 Notice of Acceleration Letter"), pursuant to which HomeStreet Bank formally notified Defendants of their failure to cure the defaults identified in the May 7 Notice of Default Letter and, pursuant to its rights under the Omnibus Agreement and related loan documents, declared that the entire unpaid principal balance and all accrued unpaid interest as to each loan identified therein, including Loan # 1346, was immediately due and payable. A true and correct copy of the May 21 Notice of Acceleration Letter is attached hereto as **Exhibit C**.

26.     On May 19, 2020, HomeStreet Bank transmitted to Defendants, through counsel, a notice of default (the "May 19 Notice of Default"), pursuant to which HomeStreet Bank identified certain monetary loan defaults in connection with Loan # 6105, among other loans. A true and correct copy of the May 19 Notice of Default attached hereto as **Exhibit D**.

27.     On June 1, 2020, HomeStreet Bank transmitted to Defendants a notice of acceleration and reservation of rights letter (the "June 1 Notice of Acceleration Letter"), pursuant to which HomeStreet Bank formally notified Defendants of their failure to cure certain monetary and non-monetary defaults in connection with the loans identified therein, including Loan # 6105, and declared that the entire unpaid principal balance and all accrued unpaid interest as to each loan identified therein was immediately due and payable. A true and correct copy of the June 1 Notice of Acceleration Letter is attached hereto as **Exhibit E**.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

COMPLAINT

## COUNT I – BREACH OF PROMISSORY NOTE AND BUSINESS LOAN AGREEMENT (LOAN # 6105)

### (Against Moheb DMD and Does 1-5)

28.     Plaintiff incorporates herein each and every allegation contained in Paragraphs 1 through 27, inclusive, set forth above.

29.     On or about March 12, 2018, Moheb DMD, for good and valuable consideration, made, executed, and delivered to Plaintiff's predecessor that certain Loan # 6105 Note in favor of Plaintiff's predecessor in connection with Loan # 6105, in the original principal amount of $852,500.00.

30.     On or about March 12, 2018, Moheb DMD entered into that certain Business Loan Agreement with Plaintiff's predecessor in connection with Loan # 6105.

31.     Pursuant to the terms and conditions of the Loan # 6105 Note, Moheb DMD agreed to make consecutive monthly installment payments for 120 months, commencing in or around March 2018, at an interest rate of 5.90% per annum.

32.     Pursuant to the Omnibus Agreement, the monthly installment payment was changed to an interest-only payment for the months of February through July 2020.

33.     Pursuant to the Omnibus Agreement, the monthly installment payment was to return to fully amortizing payments of principal and interest based on the remaining term of the loan beginning in August 2020.

34.     As set forth above, and in accordance with Section 6.8 of Omnibus Agreement, Media DDS was obligated and agreed to execute and deliver to HomeStreet Bank the Broadway Street DOT, within seven (7) days of completion of the appraisal of the Broadway Street Property.  The Broadway Street DOT was to encumber the Broadway Street Property for the benefit of HomeStreet Bank.

35.     As set forth above, Defendants have defaulted under the Loan # 6105 Documents by, among other things:  (1) failing to execute and deliver to HomeStreet Bank the Broadway Street DOT within the required timeframe; and (2) failing to timely pay amounts due and owing on the Loan # 6105 Note.

36. Accordingly, by virtue of the May 7 Notice of Default Letter, the May 19 Notice of Default, the May 21 Notice of Acceleration Letter and the June 1 Notice of Acceleration Letter, and exercising its rights under the Loan # 6105 Documents, HomeStreet Bank notified Defendants of their monetary and non-monetary defaults under Loan # 6105 and declared that the entire unpaid principal balance and all accrued unpaid interest was immediately due and payable.

37. HomeStreet Bank has performed each of the acts, obligations, and promises required of it under the Loan # 6105 Documents, and is the present and lawful holder of the Loan # 6105 Documents.

38. Moheb DMD has refused, and continues to refuse, to pay the amounts owed to HomeStreet Bank in accordance with the terms of the Loan # 6105 Documents.

39. Pursuant to the terms of the Loan # 6105 Documents, as of June 19, 2020, there is now due and owing from Moheb DMD and Does 1-5 a sum of approximately $757,476.91, which total amount is comprised of an unpaid principal balance of $731,460.77, together with accrued and unpaid interest of $19,952.63, and prepayment penalties and HomeStreet Bank's unpaid loan fees, late charges, costs, and expenses in an amount not less than $6,063.51, plus all reasonable attorneys' fees and costs as provided for under the Loan # 6105 Documents.

40. As a further result of Moheb DMD's defaults of the Loan # 6105 Documents, Plaintiff has been damaged in that it has and will be required to incur attorneys' fees and costs to enforce its rights under the Loan # 6105 Documents, including the Loan # 6105 Note.

## COUNT II – BREACH OF GUARANTY (LOAN # 6105)

### (Against Alireza Moheb and Does 6-10)

41. Plaintiff incorporates herein each and every allegation contained in Paragraphs 1 through 40, inclusive, set forth above.

42. For value given, on March 12, 2018, Moheb executed the Loan # 6105 Guaranty by which he agreed, among other things, to unconditionally guarantee the prompt

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1  and unconditional payment to Plaintiff's predecessor of the obligations for which Moheb

2  DMD is liable under the Loan # 6105 Note, as amended by the Omnibus Agreement.

3      43.    Specifically, pursuant to the Loan # 6105 Guaranty, Moheb promised, upon

4  an event of default, to pay all indebtedness, liability, and obligations of Moheb DMD to

5  Plaintiff's predecessor, under the Loan # 6105 Note, as amended by the Omnibus

6  Agreement, without prior demand on Moheb. Moheb further promised to pay all costs and

7  expenses including, but not limited to, reasonable attorneys' fees incurred in the collection

8  of Moheb DMD's indebtedness to HomeStreet Bank.

9      44.    In reliance, in part, on the Loan # 6105 Guaranty, Plaintiff's predecessor

10  extended Loan # 6105 to Moheb DMD, in the original principal amount of $852,500.00.

11      45.    Plaintiff has performed all of the terms and conditions required on its part to

12  be performed under the Loan # 6105 Documents, including the Loan # 6105 Note and

13  Loan # 6105 Guaranty, as amended by the Omnibus Agreement.

14      46.    As of the filing of this Complaint, Moheb DMD has failed to pay the entire

15  unpaid principal balance and all accrued unpaid interest due under the Loan #6105 Note.

16      47.    Plaintiff has demanded that Moheb pay, pursuant to the Loan #6105

17  Guaranty, all amounts owed by Moheb DMD to HomeStreet Bank under Loan # 6105.

18  Moheb has refused, and continues to refuse, to pay the amounts owed to HomeStreet Bank

19  in accordance with the terms of the Loan # 6105 Guaranty.

20      48.    Pursuant to the terms of the # 6105 Guaranty, as of June 19, 2020, there is

21  now due and owing from Moheb and Does 6-10 a sum of approximately $757,476.91,

22  which total amount is comprised of an unpaid principal balance of $731,460.77, together

23  with accrued and unpaid interest of $19,952.63, and prepayment penalties and HomeStreet

24  Bank's unpaid loan fees, late charges, costs, and expenses in an amount not less than

25  $6,063.51, plus all reasonable attorneys' fees and costs as provided for under the Loan

26  # 6105 Guaranty.

27

28

Case: 24-04018   Doc# 147-2   Filed: 10/29/25   Entered: 10/29/25 10:17:00   Page 50 of 64

1    49.    As a further result of Moheb's defaults, Plaintiff has been damaged in that it

2   has and will be required to incur attorneys' fees and costs to enforce its rights under the

3   Loan # 6105 Guaranty.

4             **COUNT III – BREACH OF PROMISSORY NOTE AND BUSINESS LOAN**

5                              **AGREEMENT (LOAN # 1346)**

6                        **(Against Moheb DMD and Does 1-5)**

7    50.    Plaintiff incorporates herein each and every allegation contained in

8   Paragraphs 1 through 49, inclusive, set forth above.

9    51.    On or about March 11, 2016, Moheb DMD, for good and valuable

10  consideration, made, executed, and delivered to Plaintiff's predecessor that certain Loan

11  # 1346 Note in favor of Plaintiff's predecessor in connection with Loan # 1346, in the

12  original principal amount of $2,685,000.00.

13    52.    On or about March 11, 2016, Moheb DMD entered into that certain Business

14  Loan Agreement with Plaintiff's predecessor in connection with Loan # 1346.

15    53.    Pursuant to the terms and conditions of the Loan # 1346 Note, Moheb DMD

16  agreed to make consecutive monthly installment payments for 120 months, commencing in

17  or around March 2016, at an interest rate of 5.50% per annum.

18    54.    Pursuant to the Omnibus Agreement, the monthly installment payment was

19  changed to an interest-only payment for the months of February through July 2020.

20    55.    Pursuant to the Omnibus Agreement, the monthly installment payment was

21  to return to fully amortizing payments of principal and interest based on the remaining

22  term of the loan beginning in August 2020.

23    56.    As set forth above, and in accordance with Section 6.8 of Omnibus

24  Agreement, Media DDS was obligated and agreed to execute and deliver to HomeStreet

25  Bank the Broadway Street DOT, within seven (7) days of completion of the appraisal of

26  the Broadway Street Property. The Broadway Street DOT was to encumber the Broadway

27  Street Property for the benefit of HomeStreet Bank.

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

Case: 24-04017-13   Doc# 147-2   Filed: 10/29/25   COMPLAINT Entered: 10/29/25 10:17:00   Page 51 of 64

57.     As set forth above, Defendants have defaulted under the Loan # 1346 Documents by, among other things: (1) failing to execute and deliver to HomeStreet Bank the Broadway Street DOT within the required timeframe; and (2) failing to timely pay amounts due and owing on the Loan # 1346 Note.

58.     Accordingly, by virtue of the May 7 Notice of Default Letter and the May 21 Notice of Acceleration Letter, and exercising its rights under the Loan # 1346 Documents, HomeStreet Bank notified Defendants of their monetary and non-monetary defaults under Loan # 1346 and declared that the entire unpaid principal balance and all accrued unpaid interest was immediately due and payable.

59.     HomeStreet Bank has performed each of the acts, obligations, and promises required of it under the Loan # 1346 Documents, and is the present and lawful holder of the Loan # 1346 Documents.

60.     Moheb DMD has refused, and continues to refuse, to pay the amounts owed to HomeStreet Bank in accordance with the terms of the Loan # 1346 Documents.

61.     Pursuant to the terms of the Loan # 1346 Documents, as of June 19, 2020, there is now due and owing from Moheb DMD and Does 1-5 a sum of approximately $1,309,384.58, which total amount is comprised of an unpaid principal balance of $1,274,420.21, together with accrued and unpaid interest of $23,877.67, and prepayment penalties and HomeStreet Bank's unpaid loan fees, late charges, costs, and expenses in an amount not less than $11,086.70, plus all reasonable attorneys' fees and costs as provided for under the Loan # 1346 Documents.

62.     As a further result of Moheb DMD's defaults of the Loan # 1346 Documents, Plaintiff has been damaged in that it has and will be required to incur attorneys' fees and costs to enforce its rights under the Loan # 1346 Documents, including the Loan # 1346 Note.

\\\
\\\
\\\

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

-12-

COMPLAINT

## COUNT IV – BREACH OF GUARANTY (LOAN # 1346)

### (Against Alireza Moheb and Does 6-10)

63. Plaintiff incorporates herein each and every allegation contained in Paragraphs 1 through 62, inclusive, set forth above.

64. For value given, on March 11, 2016, Moheb executed the Loan # 1346 Guaranty by which he agreed, among other things, to unconditionally guarantee the prompt and unconditional payment to Plaintiff's predecessor of the obligations for which Moheb DMD is liable under the Loan # 1346 Note, as amended by the Omnibus Agreement.

65. Specifically, pursuant to the Loan # 1346 Guaranty, Moheb promised, upon an event of default, to pay all indebtedness, liability, and obligations of Moheb DMD to Plaintiff's predecessor under the Loan # 1346 Note, without prior demand on Moheb. Moheb further promised to pay all costs and expenses including, but not limited to, reasonable attorneys' fees incurred by HomeStreet Bank in the collection of Moheb DMD's indebtedness to HomeStreet Bank.

66. In reliance, in part, on the Loan # 1346 Guaranty, Plaintiff's predecessor extended Loan # 1346 to Moheb DMD, in the original principal amount of $2,685,000.00.

67. Plaintiff has performed all of the terms and conditions required on its part to be performed under the Loan # 1346 Documents, including the Loan # 1346 Note and Loan # 1346 Guaranty.

68. As of the filing of this Complaint, Moheb DMD has failed to pay the entire unpaid principal balance and all accrued unpaid interest due under the Loan # 1346 Note.

69. Plaintiff has demanded that Moheb pay, pursuant to the Loan # 1346 Guaranty, all amounts owed by Moheb DMD to HomeStreet Bank under Loan # 1346. Moheb has refused, and continues to refuse, to pay the amounts owed to HomeStreet Bank in accordance with the terms of the Loan # 1346 Guaranty.

70. Pursuant to the terms of the # 1346 Guaranty, as of June 19, 2020, there is now due and owing from Moheb and Does 6-10 sum of approximately $1,309,384.58, which total amount is comprised of an unpaid principal balance of $1,274,420.21, together

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

-13-

1  with accrued and unpaid interest of $23,877.67, and prepayment penalties and HomeStreet

2  Bank's unpaid loan fees, late charges, costs, and expenses in an amount not less than

3  $11,086.70, plus all reasonable attorneys' fees and costs as provided for under the Loan

4  # 1346 Guaranty.

5       71.   As a further result of Moheb's defaults, Plaintiff has been damaged in that it

6  has and will be required to incur attorneys' fees and costs to enforce its rights under the

7  Loan # 1346 Guaranty.

8  **COUNT V – SPECIFIC PERFORMANCE OF THE OMNIBUS AGREEMENT IN**

9  **CONNECTION WITH THE BROADWAY STREET DOT**

10  **(Against Media DDS and Does 11-20)**

11       72.   Plaintiff incorporates herein each and every allegation contained in

12  Paragraphs 1 through 71, inclusive, set forth above.

13       73.   Pursuant to Section 6.8 of the Omnibus Agreement, Media DDS was

14  obligated and agreed to pay for an appraisal of the Broadway Street Property, to be

15  performed by an appraiser acceptable to HomeStreet Bank in HomeStreet Bank's sole

16  discretion.

17       74.   Pursuant to Section 6.8(b) of the Omnibus Agreement, Media DDS was

18  obligated and agreed to execute and deliver to HomeStreet Bank the Broadway Street

19  DOT, in order to encumber the Broadway Street Property for the benefit of HomeStreet

20  Bank, within seven (7) days of completion of the appraisal of the Broadway Street

21  Property.

22       75.   As set forth above, the Broadway Street Property appraisal was completed in

23  March 2020 and a draft of the Broadway Street DOT was provided to Media DDS in April

24  2020. Media DDS has failed to execute and deliver to HomeStreet Bank the Broadway

25  Street DOT within the required timeframe under the Omnibus Agreement, which

26  constitutes a material default of the Omnibus Agreement.

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

-14-

COMPLAINT

Case: 24-04007-18    Doc# 147-2    Filed: 10/29/25    Entered: 10/29/25 10:17:00    Page 54
of 64

76.     By reason of Media DDS' default, Plaintiff has an absolute and unconditional right to receive the Broadway Street DOT as Plaintiff's collateral pursuant to the Omnibus Agreement.

77.     It is impractical and impossible for Plaintiff to enjoy the rights as granted to it under the Omnibus Agreement without Defendants' execution and delivery of the Broadway Street DOT to HomeStreet Bank.

78.     Plaintiff has no plain, speedy, and adequate remedy at law to enforce the provisions of the Omnibus Agreement, and will suffer irreparable damage, injury, and harm unless equitable relief is granted.

79.     Plaintiff is entitled to specific performance of the terms, conditions, and provisions of the Omnibus Agreement including, but not limited, Section 6.8 thereof, until such time as the indebtedness of Defendants due and owing to Plaintiff is paid in full.

80.     Does 11-20 assert an interest in the Broadway Street Property that is adverse to Plaintiff's interest in obtaining the Broadway Street DOT.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

**On Count I:**

A.     For the principal sum of $731,460.77;

B.     For accrued interest through June 19, 2020, in the sum of $19,952.63, plus interest accruing on the principal at the per diem rate of $365.73; and

C.     For HomeStreet Bank's prepayment penalties, unpaid loan fees, late charges, and other costs and expenses in an amount not less than $6,063.51.

**On Count II:**

A.     For the principal sum of $731,460.77; and

B.     For accrued interest through June 19, 2020, in the sum of $19,952.63, plus interest accruing on the principal at the per diem rate of $365.73; and

C.     For HomeStreet Bank's prepayment penalties, unpaid loan fees, late charges, and other costs and expenses in an amount not less than $6,063.51.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

-15-

COMPLAINT

1     **On Count III:**

2     A.     For the principal sum of $1,274,420.21; and

3     B.     For accrued interest through June 19, 2020, in the sum of $23,877.67, plus

4 interest accruing on the principal at the per diem rate of $371.71; and

5     C.     For HomeStreet Bank's prepayment penalties, unpaid loan fees, late charges,

6 and other costs and expenses in an amount not less than $11,086.70.

7     **On Count IV:**

8     A.     For the principal sum of $1,274,420.21; and

9     B.     For accrued interest through June 19, 2020, in the sum of $23,877.67, plus

10 interest accruing on the principal at the per diem rate of $371.71; and

11     C.     For HomeStreet Bank's prepayment penalties, unpaid loan fees, late charges,

12 and other costs and expenses in an amount not less than $11,086.70.

13     **On Count V:**

14     A.     For a Court Order decreeing that Section 6.8 of the Omnibus Agreement be

15 specifically performed by Media DDS, in its entirety, and that Media DDS execute and

16 deliver to Plaintiff the Broadway Street DOT, in a form acceptable to Plaintiff, within

17 seven (7) calendar days after entry of a Court Order compelling the same.

18     **On All Causes of Action:**

19     A.     For attorneys' fees and cost of suit incurred herein in an amount to be proven

20 at trial; and

21     B.     For such other and further relief as the Court deems just and proper.

22

23 Dated:  June 24, 2020           ALLEN MATKINS LECK GAMBLE
                        MALLORY & NATSIS LLP

24                         DAVID R. ZARO
                        MICHAEL R. FARRELL

25                         NORMAN M. ASPIS

26

27           By:  *Michael R. Farrell*

                        MICHAEL R. FARRELL

28                         Attorneys for Plaintiff
                        HOMESTREET BANK

# EXHIBIT E

Courtroom Clerk: Stefanie Gould                    CSR: Tammy Moon CSR# 13184

---

**RG20066154**                                      October 7, 2022
                                                         2:00 PM

**Homestreet Bank VS Moheb, DMD, Inc**

---

## MINUTES

**APPEARANCES:**

Plaintiff Homestreet Bank represented by Michael R. Farrell via virtual conference.
Defendant Moheb, DMD, Inc represented by Richard Lawrence Antognini via virtual conference.
Defendant Media DDS, LLC appearing via virtual conference represented by Richard Lawrence Antognini via virtual conference represented by Richard Antognini.
Defendant Alireza Moheb represented by Richard Lawrence Antognini via virtual conference represented by Richard Antognini.

**NATURE OF PROCEEDINGS: Hearing on Motion for Summary Judgment**

Matter was contested and hearing held via Zoom video conference, the Court rules as follows:

The Motion for Summary Judgment filed by Homestreet Bank on 07/27/2022 is Granted.

Plaintiff's unopposed Motion for Summary Judgment is GRANTED.

The undisputed facts (Defendants having failed to file any opposition to this motion) establish that as of October 5, 2022, Defendant Moheb DMD Inc. owes Plaintiff $1,163,945.99 in unpaid principal and interest on Loan #6105, and Plaintiff has incurred attorneys' fees of $89,365 to enforce its rights under that loan. (See Plaintiff's Separate Statements Facts ("SSF") Nos. 1-36 and the evidence cited in support.)

The undisputed facts further establish that Defendant Alireza Moheb guaranteed the obligations of Moheb DMD Inc. on Loan #6105 but has failed to pay any of that amount owing. (See SSF Nos. 37-49 and the evidence cited in support.)

The undisputed facts further establish that as October 5, 2022, Moheb DMD Inc. owes Plaintiff $1,726,887.29 in unpaid principal and interest on Loan #1346, and Plaintiff has incurred attorneys' fees of $89,365 to enforce its rights under that loan. (See SSF Nos. 50-87 and the evidence cited in support.)

The undisputed facts further establish that Alireza Moheb guaranteed the obligations of Moheb DMD Inc. on Loan #1346 but has failed to pay any of that amount owing. (See SSF Nos. 88-102

and the evidence cited in support.)

Finally, the undisputed facts establish that Defendant Media DDS LLC was party to an Omnibus Agreement in which it agreed to deliver to Plaintiff a deed of trust on real property located at 1716 Broadway Street, Oakland but has failed to do so. (See SSF Nos. 103-113 and the evidence cited in support.)

The Court construes Defendants' failure to oppose this motion as conceding the validity of the arguments and evidence presented therein.

Plaintiff is directed to submit a proposed judgment, approved as to form, for the Court's signature.

By:    S Gould, Deputy Clerk

          Minutes of: 10/07/2022

          Entered on: 10/07/2022

# EXHIBIT F

Richard L. Antognini, SBN 075711
LAW OFFICE OF RICHARD L. ANTOGNINI
2485 Notre Dame Boulevard, Suite 370-45
Chico, California 95928-71767
Telephone:   (916) 295-4896
Email:       rlalawyer@yahoo.com

Attorneys for Defendants
ALIREZA MOHEB, INDIVIDUALLY,
MEDIA DDS, LLC, and
MOHEB, DMD, INC.

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**06/20/2023 at 10:41:20 PM**
By: Tanisha Wordlow,
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ALAMEDA

| | |
|---|---|
| HOMESTREET BANK, | Case No.: RG20066154 |
| Plaintiffs, | ASSIGNED FOR ALL PURPOSES TO Judge Noel Wise |
| vs. | **DECLARATION OF RICHARD L. ANTOGNINI IN SUPPORT OF MOTION TO VACATE JUDGMENT UNDER CCP SECTION 473 (b)** |
| MOHEB, DMD, INC., MEDIA DDS, LLC, ALIREZA MOHEB, et al., | |
| Defendants. | **Date:** October 19, 2023 <br> **Time:** 3:00 p.m. <br> **Dept.:** 514 |
| | **Reservation No.: 207309941497** |

I, RICHARD L. ANTOGNINI, declare:

1.      I am an attorney admitted to practice before all the courts of the State of California. I am counsel for all defendants. I submit this declaration supporting

defendants' motion to vacate the December 20, 2022 judgment. I personally know the facts I about to state and can competently testify to those facts.

2.    I am submitting this declaration under the attorney-fault provision of Code of Civil Procedure section 473(b). I intend to rely on that statute to show I alone am responsible for failing to submit opposition to plaintiff's motion for summary judgment.

3.    Plaintiff moved for summary judgment on July 22, 2002. The hearing was set for October 7, 2022. Under CCP section 437c, I had to file opposition two weeks before, or by September 23, 2022.

4.    I did not file opposition on time. I only filed a request for a continuance on October 7, 2022, at 1:00 a.m.

5.    The main reason I could not file opposition on time is personal. I have suffered from chronic depression for many years. Sometimes it hinders me from working; sometimes, it does not.

6.    May through September, 2022 were particularly stressful months for me. I had many briefing deadlines. But I also way buying a home in Paradise. That process proved far more complicated than I thought possible. I had to struggle to obtain financing and move our household. Finally, we moved on June 30. I thought the stress had passed, but I was wrong. I went into an immediate and deep depression, far worse than I had had for decades. For nearly three months, I could not work. I cannot say if I suffered a breakdown, but I have never felt worse. I almost checked myself into a hospital to prevent me from harming myself. My depression did

not lift until early October, shortly before the hearing on the summary judgment motion.

7.    Long-COVID added to my illness. I had serious COVID in late January 2021, and the effects have lingered ever since. Sometimes they get worse, and I am exhausted and muddled. I find it nearly impossible to work. Stress also brings on the long-COVID, and it arrived in early July.

8.    Between my severe depression and long-COVID, I could not work from July 1 to early October, 2022. As a result, I could not finish the opposition to the summary judgment motion.

9.    I have taken several medications to treat depression and anxiety for several years. Those medications usually worked well together. Beginning in July 2022, however, I had severe reactions to the combination of medications, which caused symptoms from extreme sleep loss to severe depression. In late October 2022, medical professionals corrected the problems, and I improved. But because I experienced severe symptoms, I could not work, let alone on opposition to the Homestreet motion for summary judgment.

10.    My clients should not be victimized by my illnesses and should be allowed to oppose the Homestreet motion. They have several good arguments against the motion. For example, Homestreet Bank seeks a deed of trust on certain Oakland commercial property. It has, however, an adequate remedy at law, damages, followed by a judgment lien. In addition, the loan modification on which Homestreet relies was

secured by fraud or extortion. My clients should be allowed to file full opposition to the motion for summary judgment.

I declare under penalty of perjury that the preceding is true and correct. Executed on June 20, 2023, at Paradise, California.

_____
Richard L. Antognini